## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**NATIONAL ASSOCIATION OF REALTORS®,**
430 North Michigan Ave.,
Chicago, IL 60611,

        *Petitioner*,

   v.

**UNITED STATES OF AMERICA**
950 Pennsylvania Avenue, NW
Washington, DC 20530,

**U.S. DEPARTMENT OF JUSTICE,**
**ANTITRUST DIVISION**
450 Fifth Street NW, Suite 4000
Washington, DC 20530,

**RICHARD A. POWERS**, in his official capacity as
Acting Assistant Attorney General,
Antitrust Division
450 Fifth Street NW, Suite 4000
Washington, DC 20530,

        *Respondents*.

Case No. 1:21-cv-2406

## PETITION TO SET ASIDE, OR IN THE ALTERNATIVE MODIFY, CIVIL INVESTIGATIVE DEMAND NO. 30729

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

JURISDICTION AND VENUE .............................................................................. 3

BACKGROUND .................................................................................................. 5

    I.    In Late 2020, the Antitrust Division and NAR Agreed to a Settlement ................ 5

    II.    NAR Satisfied Its Obligations Under the Settlement Agreement ........................ 10

    III.    After the Administration Changed, the Antitrust Division Breached Its Commitments ........................................................................................................ 12

        A.    The First Call (April 19, 2021) ................................................................. 13

        B.    The Second Call (April 22, 2021) ............................................................ 14

        C.    The Third Call (June 2, 2021) .................................................................. 15

        C.    The June 29, 2021 Letter ........................................................................ 16

        D.    On July 1, the Antitrust Division Abruptly Withdrew from the Consent Judgment ............................................................................... 17

ARGUMENT ....................................................................................................... 20

    I.    The Antitrust Division Entered Into a Binding Commitment .............................. 20

    II.    CID No. 30729 Is Barred by the Plain Terms of the Antitrust Division's Commitments ........................................................................................................ 25

    III.    The Antitrust Division's Commitment Remains in Place Regardless of Whether It Withdraws From the Consent Judgment ............................................ 26

        A.    The Antitrust Division Has No Legal Ability to Rescind Its Commitments ....................................................................................... 26

        B.    The Antitrust Division Has No Contractual Right to Rescind Its Commitments ....................................................................................... 30

    II.    The Civil Investigative Demand Exceeds the Limits on the Antitrust Division's Statutory Authority .............................................................................. 34

        A.    The CID Violates the Grand Jury Standards ............................................ 34

        B.    The CID Violates the Federal Rules of Civil Procedure .......................... 35

PRAYER FOR RELIEF ............................................................................................................. 37

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Alabama v. North Carolina*,
  560 U.S. 330 (2010)..................................................................... 23

*Annapolis Citizens Class Overcharged for Water-Sewer, by Loudon Operations, LLC v. Stantec, Inc.*,
  No. 20-2603, 2021 WL 75766 (D.D.C. Jan. 8, 2021)............................. 38

*\*Burton v. Adm'r, Gen. Servs. Admin.*,
  No. 89-2338, 1992 WL 300970 (D.D.C. July 10, 1992) ........................... 26, 27, 28

*Callen v. Pennsylvania R. Co.*,
  332 U.S. 625 (1948).................................................................... 29

*Centex Corp. v. United States*,
  395 F.3d 1283 (Fed. Cir. 2005)........................................................ 23

*Chattanooga Pharm. Ass'n v. United States Dep't of Justice*,
  358 F.2d 864 (6th Cir. 1966) .......................................................... 36

*Gaines v. Cont'l Mortg. & Inv. Corp.*,
  865 F.2d 375 (D.C. Cir. 1989)......................................................... 29

*Gov't of Virgin Islands v. Scotland*,
  614 F.2d 360 (3d Cir. 1980)........................................................... 23

*Greco v. Dep't of the Army*,
  852 F.2d 558 (Fed. Cir. 1988)......................................................... 20

*Haggart v. United States*,
  943 F.3d 943 (Fed. Cir. 2019)......................................................... 28

*Hyster Co. v. United States*,
  338 F.2d 183 (9th Cir. 1964) .......................................................... 34

*Orange Cove Irrigation Dist. v. United States*,
  28 Fed. Cl. 790, 800 (1993) ........................................................... 23

*Ramallo v. Reno*,
  931 F. Supp. 884 (D.D.C. 1996) ...................................................... 24

*Reed v. United States*,
  717 F. Supp. 1511 (S.D. Fla. 1988) ................................................... 29

*Reed v. United States*,
  891 F.2d 878 (11th Cir. 1990) ......................................................... 29

*Shaffer v. Veneman*,
  325 F.3d 370 (D.C. Cir. 2003) ......................................................... 20

*Ulliman Schutte Const., Inc. v. Emerson Process Mgmt. Power & Water Sols.*,
No. 02-1987, 2007 WL 1794105 (D.D.C. June 19, 2007) ....................................................... 31

*United States Equal Emp. Opportunity Comm'n v. George Washington Univ.*,
No. 17-cv-1978, 2020 WL 3489478 (D.D.C. June 26, 2020) ................................................... 36

*United States ex rel. Morsell v. Symantec Corp.*,
471 F. Supp. 3d 257 (D.D.C. 2020) ................................................................................... 21, 22

*\*United States v. Garcia*,
956 F.2d 41 (4th Cir. 1992) ............................................................................................. 34, 35

*\*United States v. McInnes*,
556 F.2d 436 (9th Cir. 1977) ................................................................................................. 28

*United States v. Minnesota Min. & Mfg. Co.*,
551 F.2d 1106 (8th Cir. 1977) ............................................................................................... 23

*United States v. Pearce*,
792 F.2d 397 (3d Cir. 1986) .................................................................................................. 35

*United States v. Savage*,
978 F.2d 1136 (9th Cir. 1992) ............................................................................................... 24

*United States v. Singleton*,
47 F.3d 1177 (9th Cir. 1995) ............................................................................................ 34, 35

*\*United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two*
*Hundred Dollars ($660,200.00), More or Less*,
423 F. Supp. 2d 14 (E.D.N.Y. 2006) ..................................................................................... 27

*United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred*
*Dollars ($660,200.00), More or Less*,
242 F. App'x 750 (2d Cir. 2007) ........................................................................................... 27

*Thermalon Indus., Ltd. v. United States*,
34 Fed. Cl. 411 (1995) ..................................................................................................... 21, 22

*\*Vill. of Kaktovik v. Watt*,
689 F.2d 222 (D.C. Cir. 1982) ..................................................................................... 20, 26, 29

*\*Western Watersheds Project v. U.S. Fish & Wildlife Servs.*,
No. 06-277, 2008 WL 619336 (D. Idaho Feb. 29, 2008) ....................................................... 28

*Williams v. Washington Metro. Area Transit Auth.*,
537 F. Supp. 2d 220 (D.D.C. 2008) ....................................................................................... 31

*Wright v. Foreign Serv. Grievance Bd.*,
503 F. Supp. 2d 163 (D.D.C. 2007) ....................................................................................... 21

## Statutory Authorities

15 U.S.C. § 16 .............................................................................................................. 9, 10, 12

15 U.S.C. § 1311 .................................................................................................................... 3

iv

15 U.S.C. § 1312 ................................................................................................ 34

15 U.S.C. § 1314 ........................................................................................... 4, 34

28 U.S.C. § 1331 .................................................................................................. 4

28 U.S.C. § 1391 .................................................................................................. 4

### Rules and Regulations

28 C.F.R. § 0.160(a)(4) ..................................................................................... 22

28 C.F.R. § 50.6 ................................................................................................. 37

Fed. R. Civ. P. 26 ......................................................................................... 35, 36

### Other Authorities

U.S. Dep't of Justice, *Introduction to Antitrust Division Business Reviews* (2011).................... 37

## PRELIMINARY STATEMENT

1.      The National Association of REALTORS® brings this petition to quash a Civil Investigative Demand (CID) issued by the Antitrust Division of the United States Department of Justice because it violates a binding settlement negotiated and agreed-to by the last Senate-confirmed head of the Antitrust Division.

2.      NAR is a trade association that, among other things, promulgates policies for multiple listing services operated by local associations of REALTORS® throughout the country to ensure those multiple listing services are operated for benefit of home buyers, home sellers, and real estate professionals.

3.      Last year, as part of a heavily negotiated settlement, the Antitrust Division agreed to (a) close civil antitrust investigations concerning two of NAR's policies for multiple listing services, called the Participation Rule and the Clear Cooperation Policy; and (b) withdraw two CIDs that had been issued to NAR as part of those investigations.

4.      In exchange for the Antitrust Division's agreement to close those investigations and withdraw the related CIDs, NAR agreed to enter into a Consent Judgment, even though NAR had done nothing wrong.

5.      As NAR told the Antitrust Division during settlement negotiations, it was willing to undertake the burdens of the Consent Judgment, but only in return for the certainty provided by the Antitrust Division's commitment to close the its investigations and withdraw the related CIDs.

6.      On November 19, 2020, NAR agreed to the Consent Judgment and the Antitrust Division filed the Consent Judgment with this Court.

7.      Later that same day, the Antitrust Division sent NAR a letter, signed by the Assistant Attorney General in charge of the Antitrust Division, Makan Delrahim, which confirmed

closed the Antitrust Division had closed its investigations of the Participation Rule and Clear Cooperation Policy and withdrawn the related CIDs.

8.      But on June 30, 2021, the Antitrust Division abruptly issued an ultimatum to NAR: If NAR did not agree to change the Consent Judgment **and** stipulate that the Antitrust Division could re-open the very same investigations it agreed to close as part of the settlement agreement, the Antitrust Division would withdraw from the Consent Judgment the next day.

9.      NAR refused to relinquish the benefits of its negotiated settlement.

10.     On July 1, the Antitrust Division filed a notice of withdrawal from the Consent Judgment with this Court.

11.     That same day, the Antitrust Division publicly acknowledged that its agreement with NAR limited its ability to investigate by issuing a press release, claiming, "[t]he department is taking this action to permit a broader investigation of NAR's rules and conduct to proceed without restriction."  Glass Decl. Ex. 1.  In that press release, the Acting Assistant Attorney General in charge of the Antitrust Division, Richard Powers, stated the Antitrust Division "cannot be bound by [the] settlement" that was negotiated and accepted by the prior administration.  *Id.*

12.     But nothing in the settlement agreement with NAR allowed the Antitrust Division to rescind its commitment to close its investigations of the Participation Rule and Clear Cooperation Policy and withdraw the related CIDs.

13.     On July 6, in breach of the Antitrust Division's prior commitments to NAR, the Antitrust Division issued a new Civil Investigative Demand (CID No. 30729, Glass Decl. Ex. 2), which seeks information from NAR about the Participation Rule and the Clear Cooperation Policy and re-opens the very investigations the Antitrust Division previously agreed to close as part of its settlement with NAR.  With few exceptions, the information requests in the newly issued CID are

substantively identical (and in many places literally identical) to the CIDs the Antitrust Division agreed to withdraw as part of its agreement with NAR.

14.    These actions by the Antitrust Division are unprecedented.  NAR has not identified any other time that the Antitrust Division has sought to withdraw from a duly negotiated settlement even though the defendant had complied with all of its obligations.

15.    NAR brings this Petition, pursuant to the Antitrust Civil Process Act, 15 U.S.C. §§ 1311-1314, to set aside CID No. 30729 because the Antitrust Division has exceeded its authority by (1) re-opening investigations into NAR that the Antitrust Division agreed to close as part of a binding settlement agreement; (2) re-issuing the CIDs the Antitrust Division agreed to withdraw as part of a binding settlement agreement; and (3) making demands that are overly broad, unduly burdensome, and irrelevant to any permissible investigation.

16.    While this Petition is about NAR and NAR's recent settlement with the Antitrust Division, much more is at stake.  Subjects of government investigations must be able to rely upon the commitments, settlements, and plea agreements entered into by the federal government, particularly in law enforcement matters.  If the Antitrust Division can walk away from its agreed-to obligations in this matter, it will set a potentially catastrophic precedent that would undermine the strong public policy in favor of settlements and public confidence that the federal government will keep its word in future cases.

## JURISDICTION AND VENUE

17.    Under the Antitrust Civil Process Act, "[w]ithin twenty days after the service of any [civil investigative] demand upon any person, or at any time before the return date specified in the demand, whichever period is shorter, or within such period exceeding twenty days after service or in excess of such return date as may be prescribed in writing, subsequent to service, by any antitrust investigator named in the demand, such person may file and serve upon such antitrust

investigator, . . . a petition for an order modifying or setting aside such demand . . . in the district court of the United States for the judicial district within which such person resides, is found, or transacts business." 15 U.S.C. § 1314(b)(1)(A).

18.     NAR agreed to waive service of CID No. 30729 on July 19, 2021.  The return date provided on the CID is August 5.  Glass Decl. Ex. 2.

19.     On July 25, 2021, the Antitrust Division and NAR entered an agreement to "toll and extend the deadline for NAR to file a petition to modify or set aside CID No. 30729 pursuant to 15 U.S.C. § 1314 until (and including) September 13, 2021." *Id.* Ex. 3 at 1.  The same agreement "extend[ed] the deadline for compliance with CID No. 30729 until (and including) September 13, 2021." *Id.*  The signatory to the agreement for the United States attested that "she is an antitrust investigator who was named in CID No. 30729, as that term is defined under 15 U.S.C. § 1314, and thus is authorized to grant an extension of the deadlines under that statute on behalf of the United States." *Id.* Ex. 3 at 2.

20.     NAR is a membership organization composed of residential and commercial brokers, salespeople, property managers, appraisers, counselors, and others engaged in the real estate industry.  Among other things, NAR promulgates a Code of Ethics for REALTORS® and rules that apply to multiple listing services operated by local associations of REALTORS®.

21.     NAR maintains an office at 500 New Jersey Avenue NW, Washington, DC 20001.

22.     This Court has jurisdiction over this Petition pursuant to 15 U.S.C. § 1314(e) and 28 U.S.C. § 1331.

23.     Venue in this District is proper pursuant to 15 U.S.C. § 1314(b) and 28 U.S.C. § 1391(e).

## BACKGROUND

**I.    In Late 2020, the Antitrust Division and NAR Agreed to a Settlement**

24.    In 2019, the Antitrust Division opened an investigation concerning certain NAR practices, purportedly to determine whether they amounted to civil violations of federal antitrust law.

25.    In 2020, NAR and the Antitrust Division began negotiating the terms of a settlement that would bring an end to all ongoing investigations concerning NAR.  Those negotiations involved direct communications between NAR's counsel and then-AAG Delrahim, his delegates, and Antitrust Division Staff.

26.    On October 14, 2020, after NAR and the Antitrust Division had come to a rough understanding of the terms of a potential settlement, under which the Antitrust Division would agree to close its ongoing investigations in return for changes to a limited set of NAR rules, the Antitrust Division provided NAR with an initial draft of a proposed Consent Judgment.  Glass Decl. Ex. 4.

27.    On October 16, NAR responded to that draft with edits.  *Id*.

28.    In its October 16 revisions, NAR struck the proposed reservation of rights clause from the draft Consent Judgment, which provided:  "Nothing in this Final Judgment shall limit the right of the United States to investigate or bring future actions to prevent or enjoin violations of the antitrust laws concerning any NAR Rule, including any rules relating to the payment of Broker commissions or offers of compensation (e.g. NAR's Participation Rule) or any other Rule adopted or enforced by NAR or any Member Board, that is not already specifically enjoined by this Final Judgment."  *Id*. Ex. 4 at 16.

29.    On October 21, the Antitrust Division sent NAR a new draft of a proposed Consent Judgment, which among other changes, re-inserted a reservation of rights clause.  The new

reservation of rights clause omitted any reference to the Participation Rule. It provided: "Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule or practice adopted or enforced by NAR or any of its Member Boards." *Id*. Ex. 5 at 16.

30.     On October 26, NAR responded to the October 21 draft, including a comment indicating that:

> NAR will only agree to sign a consent decree including this provision [the reservation of rights clause] if DOJ provides written confirmation, prior to the execution of the decree, that it will issue a closing letter to NAR upon execution of the decree that confirms:
>
> 1. the Division has closed its investigation of the Participation Rule;
>
> 2. the Division has closed its investigation of the Clear Cooperation Policy;
>
> 3. NAR has no obligation to respond to CID No. 29935 (in its entirety); and
>
> 4. NAR has no obligation to respond to CID No. 30360 (in its entirety).

*Id*. Ex. 6 at 15.

31.     Those same terms were conveyed in the cover email that transmitted NAR's comments on the Antitrust Division's October 21 draft:

> When you respond to this round of comments, we would like DOJ to please confirm, in writing, that when NAR agrees to sign the consent decree, DOJ will send a closing letter to NAR that will confirm:
>
> 1. the Division has closed its investigation of the Participation Rule;
>
> 2. the Division has closed its investigation of the Clear Cooperation Policy;
>
> 3. NAR has no obligation to respond to CID No. 29935 (in its entirety); and
>
> 4. NAR has no obligation to respond to CID No. 30360 (in its entirety).

**NAR will not agree to the consent decree without prior written assurances that these provisions will be included in the closing letter from DOJ**.

*Id*. Ex. 6 at 1 (emphasis added).

32.     On October 28, the Antitrust Division accepted these terms, unconditionally, in an email from Counsel to AAG Delrahim (who was charged with negotiating with NAR).  *Id*. Ex. 7 at 1.  This email copied the Principal Deputy Assistant Attorney General for the Antitrust Division and another Counsel to AAG Delrahim.  *Id*.

33.     The proposed Consent Judgment did not provide the Antitrust Division the right to re-open the investigations it agreed to close or re-issue the CIDs the Antitrust Division agreed to withdraw.

34.     The drafts of the Consent Judgment and the final proposed Consent Judgment did not include an integration or merger clause.

35.     As is the regular practice for Antitrust Division Consent Judgments, NAR also agreed to enter a Stipulation with a number of commitments that applied to NAR during the time between the filing of the proposed Consent Judgment and its approval by the Court, including a provision that provided the Antitrust Division could withdraw from the proposed Consent Judgment—*and only the Consent Judgment*—before it was entered by the Court.  *See id*. Ex. 8, Stipulation and Order ¶ 2, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 5 (D.D.C. Nov. 20, 2020).

36.     Specifically, NAR agreed to a Stipulation (to which the proposed Consent Judgment was attached) that provided:

> [A] Final Judgment in the form attached as Exhibit A may be filed with and entered by the Court, upon the motion of the United States or upon the Court's own motion . . . provided that the United States has not withdrawn its consent.  The United States may withdraw its consent at any time before the entry of the proposed Final Judgment by serving notice on Defendant and by filing that notice with the Court.

*Id.*

37.     None of the drafts of the Stipulation or the final Stipulation allowed the Antitrust Division to re-open the investigations it agreed to close or re-issue the CIDs the Antitrust Division agreed to withdraw—they did not mention those investigations, the Participation Rule or the Clear Cooperation Policy, or the CIDs at all.

38.     None of the drafts of the Stipulation or the final Stipulation included an integration or merger clause.

39.     On November 19, the Antitrust Division filed in this Court a Complaint, the proposed Consent Judgment, and the Stipulation. *Id.* Ex. 9, Compl., *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 1 (D.D.C. Nov. 19, 2020); Ex. 10, Proposed Stipulation and Order, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 4-1 (D.D.C. Nov. 19, 2020); Ex. 11, Proposed Final Judgment, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 4-2 (D.D.C. Nov. 19, 2020).

40.     Then-AAG Delrahim signed the Complaint. *Id.* Ex. 9, Compl. at 11, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 1 (D.D.C. Nov. 19, 2020).

41.     The Complaint did not reserve the right for the Antitrust Division to re-open the investigations it agreed to close or re-issue the CIDs the Antitrust Division agreed to withdraw— it did not mention those investigations, the Participation Rule or the Clear Cooperation Policy, or the CIDs at all.

42.     The Complaint did not include an integration or merger clause.

43.     Consistent with the terms of the parties' agreement, no later than November 19, the Antitrust Division closed the investigations into the Participation Rule and Clear Cooperation

Policy and withdrew the CIDs related to these investigations, as was confirmed in a closing letter sent to NAR by the Division and signed by AAG Delrahim.

44.     That letter stated:

This letter is to inform you that the Antitrust Division has closed its investigation into the National Association of REALTORS' Clear Cooperation Policy and Participation Rule.  Accordingly, NAR will have no obligation to respond to CID Nos. 29935 and 30360 issued on April 12, 2019 and June 29, 2020, respectively.

No inference should be drawn, however, from the Division's decision to close its investigation into these rules, policies or practices not addressed by the consent decree.

*Id.* Ex. 12.

45.     The closing letter did not include a merger clause or integration clause.

46.     Therefore, no later than November 19, 2020, the Antitrust Division had committed to close the investigations concerning the Participation Rule and the Clear Cooperation Policy, and withdraw the two CIDs related to those investigations.

47.     On December 10, the Antitrust Division filed a Competitive Impact Statement with this Court, as is required by the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16.

48.     The Competitive Impact Statement provided that "[t]he proposed Final Judgment prohibits NAR and its Member Boards from undertaking certain conduct and affirmatively requires NAR to take certain actions to remedy the antitrust violations alleged in the Complaint." *Id*. Ex. 13, Competitive Impact Statement at 11, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 11 (D.D.C. Dec. 10, 2020).

49.     In the Competitive Impact Statement, the Antitrust Division wrote that the changes to NAR rules in the proposed Consent Judgment "are designed to resolve the competitive concerns . . . as alleged in the Complaint."  *Id.*

50.     The Competitive Impact Statement did not reserve the right for the Antitrust Division to re-open the investigations it agreed to close or re-issue the CIDs the Antitrust Division agreed to withdraw—it did not mention those investigations, the Participation Rule or the Clear Cooperation Policy, or the CIDs at all.

51.     The Competitive Impact Statement did not include an integration or merger clause.

52.     On December 16, the Antitrust Division published notice of the Consent Judgment in the *Federal Register*, 85 Fed. Reg. 81489, as required by the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b) ("Any proposal for a consent judgment submitted by the United States for entry in any civil proceeding brought by or on behalf of the United States under the antitrust laws shall be filed with the district court before which such proceeding is pending and published by the United States in the Federal Register at least 60 days prior to the effective date of such judgment.").

53.     The public notice did not reserve the right for the Antitrust Division to re-open the investigations it agreed to close or re-issue the CIDs the Antitrust Division agreed to withdraw— it did not mention those investigations, the Participation Rule or the Clear Cooperation Policy, or the CIDs at all.

54.     The public notice did not include an integration or merger clause.

## II.     NAR Satisfied Its Obligations Under the Settlement Agreement

55.     In reliance on the closing letter and as part of the overall settlement agreement, NAR agreed to the Consent Judgment and Stipulation.  Moreover, pending approval by the Court, NAR agreed to take further actions in reliance on the settlement agreement.

56.     In the Stipulation, NAR agreed to arrange for publication of notice of the Consent Judgment in a national newspaper no later than three business days after the Antitrust Division provided the text of the required notice, consistent with the requirements of the Antitrust Procedures and Penalties Act.  *See* 15 U.S.C. § 16(c); Glass Decl. Ex. 8, Stipulation and Order ¶ 4,

*United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 5 (D.D.C. Nov. 20, 2020).

57.     In Section VI.A of the Consent Judgment, NAR agreed: "By not later than 30 calendar days after entry of the Stipulation and Order in this matter, Defendant must (i) appoint an Antitrust Compliance Officer and (ii) identify to the United States the Antitrust Compliance Officer's name, business address, telephone number, and email address."  Glass Decl. Ex. 11, Proposed Final Judgment § VI.A, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 4-2 (D.D.C. Nov. 19, 2020).

58.     In Section V.B of the Consent Judgment, NAR agreed to "furnish notice of this action to all its Member Boards and MLS Participants." *Id.* § V.B.

59.     In Section V.A of the Consent Judgment, NAR agreed: "By not later than 45 calendar days after entry of the Stipulation and Order in this matter, NAR must submit to the United States, for the United States' approval in its sole discretion, any Rule changes that NAR proposes to adopt to comply with Paragraphs V.C-I of this Final Judgment." *Id.* § V.A.

60.     NAR satisfied all of these obligations. *Id.* ¶ 15.

61.     Relying on the commitments made by the Antitrust Division, multiple listing services affiliated with NAR and brokers who are members of NAR began to change their practices in reliance of the terms of the proposed Consent Judgment.

62.     After the Consent Judgment was filed, NAR was sued in two follow-on class actions, which copied, in parts verbatim, the allegations in the Complaint that accompanied the Consent Judgment. *See* Compl., *Leeder v. The National Association of Realtors*, No. 1:21-cv-430,

11

Dkt. No. 1 (N.D. Ill. Jan. 25, 2021); Compl., *Conti v. San Francisco Association of Realtors*, No. 3:21-cv-1934, Dkt. No. 1 (N.D. Cal. Mar. 19, 2021).[1]

63.     Without the benefit of the bargain it obtained on the settlement agreement—i.e., closure of the investigations concerning the Participation Rule and the Clear Cooperation Policy, and the withdrawal of the related CIDs—NAR would not have voluntarily undertaken any of these burdens.

### III.    After the Administration Changed, the Antitrust Division Breached Its Commitments

64.     As required by the Consent Judgment, on January 4, 2021, NAR submitted to the Antitrust Division its proposal for the rule changes required under the Consent Judgment.  Glass Decl. ¶ 15.

65.     The Antitrust Division never responded to that proposal.  *Id.* ¶ 16.

66.     The Antitrust Division also never published and filed the public comments it received concerning the Consent Judgment, and its responses to those public comments, as is required by 15 U.S.C. § 16(d).

67.     Instead, on April 15, 2021, Antitrust Division Staff contacted NAR's counsel to schedule a time to discuss the proposed Consent Judgment.  *Id.* ¶ 17.

68.     This started a series of discussions that continued at the pace dictated by the Antitrust Division, until June 30, when the Antitrust Division issued NAR an ultimatum and demanded that it give up the benefits of the settlement agreement.

---

[1]   *Conti v. San Francisco Association of Realtors* was later voluntarily dismissed without prejudice.  *See* Notice of Voluntary Dismissal, *Conti v. San Francisco Association of Realtors*, No. 3:21-cv-1934, Dkt. No. 42 (N.D. Cal. May 27, 2021).

A.     **The First Call (April 19, 2021)**

69.     On April 19, NAR's counsel and Antitrust Division Staff spoke by telephone.  *Id.* ¶ 17.

70.     During that call, Antitrust Division Staff conveyed—for the first time—that the Antitrust Division wanted to change the reservation of rights clause in the already-filed Consent Judgment.

71.     During this discussion, Antitrust Division Staff read aloud the following proposed language, which it intended to replace the agreed-to reservation of rights clause:  "The final judgment shall only terminate the claims expressly raised in the complaint.  The final judgment shall not in any way affect any other charges or claims filed by the United States subsequent to the commencement of this action."  *Id.* ¶ 18.

72.     Antitrust Division Staff also said the Antitrust Division would not discuss NAR's proposed rule changes or anything else related to the Consent Judgment with NAR until NAR agreed to change the reservation of rights language in the Consent Judgment.  *Id.* ¶ 19.

73.     NAR's counsel told Antitrust Division Staff it would discuss the Antitrust Division's request with NAR.  *Id.*

74.     NAR's counsel asked whether the request to change the reservation of rights clause in the Consent Judgment was intended to modify any aspect of the Antitrust Division's commitment to close the its prior investigations or withdraw the related CIDs.  *Id.*

75.     Antitrust Division Staff responded that it was not prepared to answer that question. *Id.*  Antitrust Division Staff also stated that the Antitrust Division generally planned to change the boilerplate reservation of rights language in all consent decrees in civil, non-merger matters.  *Id.*

B.      **The Second Call (April 22, 2021)**

76.     On April 22, NAR's counsel and Antitrust Division Staff spoke again by telephone. *Id.* ¶ 20.

77.     On that April 22 call, NAR's counsel told Antitrust Division Staff that NAR would consider modifying the reservation of rights clause, but NAR still did not understand the purpose of the change, given that the new language was so similar to the existing language in the Consent Judgment.  *Id.* ¶ 21.  (For example, the reservation was still expressly limited to the Consent Judgment.)

78.     In response, Antitrust Division Staff indicated that the new language was intended to convey that only the claims asserted in the Complaint against NAR had been released.  *Id.*

79.     NAR's counsel again asked whether the request to change the reservation of rights clause in the Consent Judgment was intended to modify any aspect of the Antitrust Division's commitment to close its investigations and withdraw the related CIDs.  *Id.* ¶ 22.

80.     In response, Antitrust Division Staff asked NAR's counsel to describe their understanding of the closing letter.  *Id.*

81.     NAR's counsel explained that the Antitrust Division's commitments to (1) close the investigations of the Participation Rule and Clear Cooperation Policy; and (2) withdraw the related CIDs were the only benefits that NAR received from the settlement agreement, and thus the closing letter, which memorialized those commitments, was a key part of NAR's decision to enter into the settlement agreement, including the Stipulation and Consent Judgment.  *Id.*

82.     NAR's counsel expressly acknowledged that the Antitrust Division's commitments did not mean NAR had immunity from all future investigations.  NAR's counsel told Antitrust Division Staff that the effect of the parties' agreement would depend on the nature and scope of any future investigation.  *Id.* ¶ 23.  In an illustrative example, NAR's counsel volunteered that if

NAR made material changes to the Participation Rule or Clear Cooperation Policy, the Antitrust Division would be able to investigate those changes. *Id.* NAR's counsel acknowledged that, if such an investigation were to be opened, it was possible there could be disagreement between NAR and the Antitrust Division about whether the new investigation breached the parties' agreement, but maintained that it made no sense to address that potential conflict before such a scenario arose. *Id.*

83. Antitrust Division Staff agreed to discuss the issue internally, and indicated that they would contact NAR's counsel within a few days. *Id.*

### C.     The Third Call (June 2, 2021)

84. Almost two months later, on June 1, Antitrust Division Staff asked for a third call, and NAR's counsel promptly agreed to have that call the next day. *Id.* ¶ 24.

85. During the June 2 call, Antitrust Division Staff claimed NAR's position was that it would only agree to modify the reservation of rights clause in the Consent Judgment if the Antitrust Division agreed that the closing letter forever barred any investigation of NAR. *Id.* ¶ 25.

86. NAR's counsel told Antitrust Division Staff, however, that NAR had never made such a demand. *Id.*

87. As NAR's counsel explained, NAR was only seeking to understand how the proposed change to the Consent Judgment's reservation of rights language might impact the Antitrust Division's commitment to close the investigations and withdraw the CIDs. *Id.*

88. NAR's counsel again affirmed that NAR would consider the change to the reservation of rights clause once it understood the Antitrust Division's position on how the change would impact the Antitrust Division's other commitments, if at all. *Id.*

15

89.     As it did on April 22, NAR's counsel suggested that the Antitrust Division focus on the proposed rule changes that NAR provided almost six months earlier, and that the parties should avoid trying to resolve a hypothetical dispute that may never arise. *Id.*

90.     Antitrust Division Staff ended the call, promising to get back to NAR promptly. *Id.*

**C.     The June 29, 2021 Letter**

91.     On June 29, the Antitrust Division sent a letter to NAR's counsel, which stated:

> Specifically, we sought consent from your client, the National Association of REALTORS® ("NAR"), to modify the Reservation of Rights provision in Section XI to eliminate any potential limitation on the future ability of the Division to investigate and challenge conduct by NAR that is not covered by the proposed Final Judgment.

> NAR, however, has conditioned its consent on the Division agreeing that a revised Reservation of Rights in no way limits NAR from arguing against any future investigation by the Division based on the letter that was sent to your colleague, Mr. William Burck, on November 19, 2020, where the Division informed you that it was closing its investigation. We cannot accept NAR's condition.

*Id.* Ex. 14 at 1.

92.     Contrary to the claims in the letter, NAR had never conditioned its consent to change the reservation of rights language on anything.

93.     Even though it took the Antitrust Division 27 days to send NAR a one-and-a-half-page letter, Antitrust Division Staff demanded to know by July 1 at noon (within forty-eight hours), whether NAR would "remove its condition and consent to modifying the Reservation of Rights provision in the proposed Final Judgment." *Id*.

94.     NAR's counsel responded to the Antitrust Division by email about 24 hours later, acknowledging receipt and stating, "we will not be able to respond substantively by your July 1 deadline. We will respond as soon as we can." *Id.* Ex. 15 at 5.

95.     The Antitrust Division replied by email, "[a]s we consider whether to grant you additional time, could you please provide us a date for when we can expect a response and an explanation for why you will not be able to respond by tomorrow?" *Id.*

96.     NAR's counsel responded: "We are not asking DOJ to consider anything; we are telling you that we need more than 48 hours to respond to your letter.  Nonetheless, the reason for more time is that your unilaterally imposed deadline is unreasonable, especially in light of the facts that it has been many months since the comment period ended, NAR has complied with all its obligations and DOJ has not responded to our 2020 submissions, and we have not heard from DOJ at all for over a month [sic]." *Id.* Ex. 15 at 4.

**D.     On July 1, the Antitrust Division Abruptly Withdrew from the Consent Judgment**

97.     On June 30, at 7:19 pm, Antitrust Division Staff wrote to NAR's counsel: "We understand NAR is insisting on a condition for its consent to which we cannot agree.  If this remains NAR's position despite our request to remove the condition or we do not receive an answer to the contrary, then the Antitrust Division will conclude that NAR does not agree to modify the decree unencumbered by its condition.  In such an event, we will take steps towards withdrawing our consent for the proposed Final Judgment starting at noon tomorrow." *Id.* Ex. 15 at 3-4.

98.     The next morning, NAR's counsel responded: "Your threat to withdraw from the proposed consent decree is not something that DOJ has mentioned prior to your email of 7:19[ ]pm last night—less than 24 hours before your noon deadline.  Due to the significance of that threat, the fact that the 'condition' you mention is simply that the DOJ abide by its agreement, and the reality that we are a membership organization that must involve several busy people in significant decisions, we cannot substantively respond to your letter today." *Id.* Ex. 15 at 3.

99.     NAR's counsel still committed that NAR would respond to the Antitrust Division Staff's demand within two weeks (even with an intervening July 4th holiday).  *Id.*

100.    NAR's counsel also requested a meeting with the Acting-AAG for the Antitrust Division, Richard Powers, "before the DOJ makes a decision on whether to withdraw from the proposed consent decree."  *Id.*

101.    At 12:39 pm on July 1, Antitrust Division Staff emailed Ethan Glass, one of NAR's attorneys, indicating it had tried to reach him by calling his cell phone, and within 10 minutes, Mr. Glass responded that he was unable to speak for approximately two hours.  *Id.* Ex. 15 at 2-3.

102.    At 1:18 pm, Antitrust Division Staff replied, stating that Acting-AAG Powers was available to meet with NAR at 9:00 am on July 2, "but before he agree[d] to the meeting, he would first like to know what the purpose of the meeting is for him to assess whether it is worth holding." *Id.* Ex. 15 at 2.  Antitrust Division Staff indicated that if NAR would not commit to accepting the Antitrust Division's demands by 2:00 pm—one hour before Mr. Glass was available to speak— Acting-AAG Powers would not give NAR an audience.  *Id.*

103.    Because Mr. Glass was temporarily unavailable, one of his partners responded to Antitrust Division Staff at 1:57 pm:

> The purpose of the Front Office meeting NAR has requested is to discuss the unprecedented step the Division is contemplating—withdrawing from a consent decree, not because of intervening changes in the market, but because the Division has second thoughts about a settlement a prior Senate-confirmed Assistant Attorney General negotiated and accepted.  As far as we are aware, this has never happened before.  And we had no idea that this course of action was being contemplated before you said so last night.  That was the first time in our months-long discussions that the prospect of DOJ withdrawal from the consent decree has even been mentioned.

*Id.* Ex. 15 at 1-2.

104.    At 2:45 pm, still before Mr. Glass was available at 3:00 pm, Antitrust Division Staff replied by email: "We explained that the current reservation does not adequately protect the

Division's ability to investigate in the future NAR rules that may harm competition. . . .  It should be no surprise to you that, as we are at an impasse on amending the proposed decree, we need to move forward to resolve this matter . . . ." *Id.* Ex. 15 at 1.

105.    At 3:57 pm, the Antitrust Division filed a notice with the district court, indicating it had withdrawn its consent to entry of the Consent Judgment, and at the same time, it voluntarily dismissed the lawsuit it had filed against NAR.  *Id.* Ex. 16; Ex. 17, Notice of Voluntary Dismissal, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 15 (D.D.C. July 1, 2021).

106.    In its notice, the Antitrust Division stated: "After filing the Complaint and proposed Final Judgment, the United States sought Defendant's consent to amend the Reservation of Rights provision in Section XI of the proposed Final Judgment to eliminate any potential limitation on the future ability of the United States to investigate and challenge additional potential antitrust violations committed by Defendant."  *Id.* Ex. 18, Notice of Withdrawal of Consent, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 14 (D.D.C. July 1, 2021).

107.    The Antitrust Division also issued a press release, which stated: "The department is taking this action to permit a broader investigation of NAR's rules and conduct to proceed without restriction." *Id.* Ex. 1.

108.    In the press release, Acting-AAG Powers is quoted: "We cannot be bound by a settlement that prevents our ability to protect competition in a market that profoundly affects Americans' financial well-being." *Id.*

109.    At or around 4:00 pm, roughly three minutes after the Antitrust Division filed its notice of withdrawal, Bloomberg published an article about the Antitrust Division's decision to withdraw from the proposed consent judgment, which also quoted Acting-AAG Powers' statement from the press release. *Id.* Ex. 19.

110.     On July 6, two business days after withdrawing from the Consent Judgment, the Antitrust Division sent NAR CID No. 30729.  This CID indicates that the Antitrust Division has re-opened the investigations it closed under the settlement agreement, including those concerning the Participation Rule and the Clear Cooperation Policy.

111.     Nearly all of the requests in CID No. 30729 were copied, often almost verbatim, from the requests in the previous CIDs the Antitrust Division agreed to withdraw under the settlement agreement.  *Id.* Ex. 20 (CID No. 29935); Ex. 21 (CID No. 30360); Ex. 22 (comparing CID requests).

## ARGUMENT

### I.     The Antitrust Division Entered Into a Binding Commitment

112.     "It is axiomatic that a settlement agreement," including a settlement agreement with a government agency, "is a contract."  *Greco v. Dep't of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988); *see also Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003) (settlement agreements with the government are enforceable contracts); *Vill. of Kaktovik v. Watt*, 689 F.2d 222, 230 & n.62 (D.C. Cir. 1982) (collecting cases).

113.     Indeed, the Antitrust Division recently affirmed that it is bound by its contractual commitments in settlement and non-prosecution agreements.  *See* Glass Decl. Ex. 23, United States' Response in Opposition to Defendant's Motion to Dismiss the Superseding Indictment ("US Opposition") at 1-2, *United States v. Rodgers*, No. 4:20-cr-358-2 (E.D. Tex. July 16, 2021).

114.     Here, the settlement agreement between NAR and the Antitrust Division was affirmed no later than November 19, 2020, when (1) the Antitrust Division sent a letter to NAR that was signed by then-AAG Delrahim, confirming the Antitrust Division had closed its investigations of the Participation Rule and Clear Cooperation Policy and withdrawn the related

20

CIDs; and (2) NAR agreed to the Consent Judgment and signed the Stipulation that the Antitrust Division filed with this Court.

115.    The settlement was formed as a result of "an offer, an acceptance, and consideration passing between the parties." *United States ex rel. Morsell v. Symantec Corp.*, 471 F. Supp. 3d 257, 278 (D.D.C. 2020) (quoting *Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 414 (1995)); *see also id.* at 280 ("A contract with terms spread across a number of documents is far from the ideal of a single mutually signed document, but it is not unheard of as a form of contract.").

116.    NAR made the offer: in exchange for the Division's commitments to close its investigations of the Participation Rule and Clear Cooperation Policy and withdraw the related CIDs, NAR would agree to a Consent Judgment and accompanying Stipulation.

117.    The Antitrust Division accepted that offer.

118.    Consideration was exchanged. *See Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 174 (D.D.C. 2007) (finding sufficient consideration for a settlement agreement because the parties "benefitted from the settlement agreement by achieving a clean resolution of the dispute" and "avoiding continuing litigation").

119.    When negotiating the settlement, NAR made clear there would be no settlement agreement and it would not agree to a Consent Judgment without a commitment from the Antitrust Division to (a) close the investigations into the Participation Rule and the Clear Cooperation Policy; and (b) withdraw the related CIDs.

120.    On October 26, 2020, NAR's counsel wrote to AAG Delrahim's Counsel:

> When you respond to this round of comments, we would like DOJ to please confirm, in writing, that when NAR agrees to sign the consent decree, DOJ will send a closing letter to NAR that will confirm:
>
> 1. the Division has closed its investigation of the Participation Rule;

2. the Division has closed its investigation of the Clear Cooperation Policy;

3. NAR has no obligation to respond to CID No. 29935 (in its entirety); and

4. NAR has no obligation to respond to CID No. 30360 (in its entirety).

**NAR will not agree to the consent decree without prior written assurances that these provisions will be included in the closing letter from DOJ.**

Glass Decl. Ex. 7 at 1 (emphasis added).

121.    Two days later, AAG Delrahim's Counsel unconditionally accepted these terms:

[O]nce the consent decree is filed, the Division will notify NAR in its closing letter that it has closed its investigation into the Participation Rule and the Clear Cooperation Policy and that NAR will have no obligation to respond to CID Nos. 29935 and 30360.

*Id.*

122.    AAG Delrahim then authorized the Antitrust Division to move forward with the settlement, signed the Complaint that accompanied the Consent Judgment, and signed the closing letter.

123.    As the Senate-confirmed Assistant Attorney General for the Antitrust Division, AAG Delrahim was "authorized, with respect to matters assigned to [his] . . . division[], to . . . [a]ccept offers in compromise in all nonmonetary cases."  28 C.F.R. § 0.160(a)(4).  Thus, he "had authority to bind the United States in contract."  *Symantec Corp.*, 471 F. Supp. 3d at 278 (quoting *Thermalon Indus.*, 34 Fed. Cl. at 414).

124.    The commitment to close the investigations and withdraw the CIDs was therefore part of a binding contract.

125.    Just prior to the filing of this Petition, Antitrust Division Staff suggested that the terms of the settlement agreement "established, at most, that the Division agreed that a letter would be issued closing the investigation."  *Id.* Ex. 24 at 1.

126.   But that position defies reason and common sense.  NAR would not have agreed to enter into a consent decree in return for a worthless piece of paper that allowed the Antitrust Division to re-open the same investigations on a whim.  Such an interpretation also would not be a good faith reading of the agreement, and the Antitrust Division is bound by the covenant of good faith and fair dealing.  *See Orange Cove Irrigation Dist. v. United States*, 28 Fed. Cl. 790, 800 (1993) ("Every contract, including those in which the Government is a party, contains an implied covenant of good faith and fair dealing."); *see also Alabama v. North Carolina*, 560 U.S. 330, 351 (2010) ("Of course every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." (cleaned up)); *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) ("The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner.").

127.   Indeed, as the communications preceding the settlement agreement made clear, the benefit to NAR was the closing of the investigations and the withdrawing of the CIDs, and NAR simply sought a letter to "confirm" the Antitrust Division had done what it promised.  *Id.* Ex. 7. The mere issuance of a letter did not discharge that commitment, as the Antitrust Division now suggests.

128.   Even in the absence of the express agreement by the Antitrust Division—for example, if there were no contemporaneous written confirmation of the commitments made by the Antitrust Division—a contract was formed when NAR detrimentally relied on the Antitrust Division's promises.  *See Gov't of Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir. 1980) ("When . . . [a] defendant detrimentally relies on the government's promise, the resulting harm from this induced reliance implicates due process guarantees."); *see also id.* at 365 n.14 (citing authorities that enforce plea proposals because a defendant performed some obligation of the

23

agreement before the government reneged); *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992) ("Even if the agreement has not been finalized by the court, a defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding." (cleaned up)); *Ramallo v. Reno*, 931 F. Supp. 884, 895 (D.D.C. 1996) ("Ramallo's reliance on the government's promise was reasonable, given that both she and the government understood the danger to her life involved with her cooperation with prosecutors and openly testifying against members of South American drug gangs.  Estoppel is necessary to overcome the grave injustice that would befall Ramallo if she is deported.  Finally, the public interest is furthered in ensuring that constitutional rights are upheld, that the government does not induce individuals to forfeit substantial rights in exchange for meaningless promises, and that persons in the American system of justice are encouraged to cooperate with the government."); *United States v. Minnesota Min. & Mfg. Co.*, 551 F.2d 1106, 1111 (8th Cir. 1977) (affirming dismissal of indictments where "the defendants acted in reliance upon the agreement to their detriment in performing the conditions required by the government").

129.    In reliance on the Antitrust Division's promises to close the investigations and withdraw the CIDs, NAR agreed to the Consent Judgment and Stipulation, invested resources in publicizing and educating its members about the Consent Judgment, developed proposed changes to its rules to comply with the Consent Judgment, and subjected itself to the risk of follow-on litigation.  Some of NAR's members, including brokers and multiple listing services operated by local associations, have changed rules and practices to align with the proposed Consent Judgment the Antitrust Division filed as part of its settlement with NAR.

130.    Because all of those actions were taken in reliance on the commitment made by the Assistant Attorney General, the Antitrust Division is bound by its promises.

**II.      CID No. 30729 Is Barred by the Plain Terms of the Antitrust Division's Commitments**

131.     In his closing letter to NAR, AAG Delrahim confirmed that the Antitrust Division had closed its investigations into the Participation Rule and Clear Cooperation Policy and withdrawn the CIDs related to those investigations.

132.     In its recent words and actions, the Antitrust Division has acknowledged that there was an agreement, and that the commitments made by AAG Delrahim would prevent the Antitrust Division from investigating the Participation Rule and Clear Cooperation Policy or issuing CIDs related to those rules.

133.     In the notice of withdrawal from the Consent Judgment that it filed with the Court, the Antitrust Division stated that its commitments created a "potential limitation on the future ability of the United States to investigate and challenge additional potential antitrust violations committed by Defendant." Glass Decl. Ex. 18, Notice of Withdrawal of Consent at 1-2, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 14 (D.D.C. July 1, 2021).

134.     The Antitrust Division's press release was even more direct, stating, "[t]he department is taking this action to permit a broader investigation of NAR's rules and conduct to proceed without restriction." *Id.* Ex. 1. The press release continued, "[t]he proposed settlement will not sufficiently protect the Antitrust Division's ability to pursue future claims against NAR," and the Antitrust Division "cannot be bound by a settlement" that restricts its ability to investigate NAR. *Id.*

135.     The Antitrust Division's June 29 letter stated that the Antitrust Division needed to change the reservation of rights language in the Consent Judgment "to eliminate any potential limitation on the future ability of the Division to investigate and challenge conduct by NAR that is not covered by the proposed Final Judgment." *Id.* Ex. 14.

136.   The Consent Judgment, however, does not apply to conduct that is not discussed in the Consent Judgment or Complaint, which means the limitation of concern must have arisen from other aspects of the settlement agreement—specifically, the commitments to close the investigations and withdraw the related CIDs, which were memorialized in the closing letter.

137.   The limitations acknowledged by the Antitrust Division remain in place today, because they came from the commitments affirmed in the closing letter, and the Antitrust Division had no right or ability to withdraw from those commitments.

138.   The Antitrust Division breached those commitments when it issued CID No. 30729, which confirms the Antitrust Division has re-opened the closed investigations and seeks the same information that was requested in the withdrawn CIDs.

139.   Indeed, CID No. 30729 repeats substantively identical, and often verbatim, the demands in the CIDs that AAG Delrahim agreed to withdraw as part of the settlement. *Id.* Ex. 22.

## III.  The Antitrust Division's Commitment Remains in Place Regardless of Whether It Withdraws From the Consent Judgment

140.   The Antitrust Division has no right, under the law or the parties' agreements, to unilaterally modify or rescind the commitments it made in return for NAR agreeing to enter into a Consent Judgment and Stipulation.

### A.  The Antitrust Division Has No Legal Ability to Rescind Its Commitments

141.   When the government enters into a settlement agreement to resolve civil claims, it is bound by the terms of the deal, just like any other litigant.

142.   As numerous courts have held, "a settlement contract may not be unilaterally rescinded," and it may be enforced against a government agency over the agency's objection. *Burton v. Adm'r, Gen. Servs. Admin.*, No. 89-2338, 1992 WL 300970, at *3, *6 (D.D.C. July 10, 1992); *see also Watt*, 689 F.2d at 230.

143.    In *United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 423 F. Supp. 2d 14, 25 (E.D.N.Y. 2006), an Assistant United States Attorney entered into an oral settlement agreement in a civil forfeiture action and sent the defendants an unexecuted stipulation, memorializing the terms of settlement. The government subsequently "decided not to finalize the settlement" and took the position it was not bound by the deal. *Id.* at 19.   On claimants' motion, the court enforced the settlement agreement, even though the government claimed it had learned of new evidence indicating the claimants intended to use the disputed funds to finance terrorism. *See id.* at 33-34.   Recognizing that, just like any other litigant, the government cannot back out of a duly authorized settlement simply because it "changed its mind," the court enforced the terms of the agreement. *Id.* (cleaned up).  That decision was upheld by the Second Circuit on appeal. *See United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 242 F. App'x 750, 752 (2d Cir. 2007).

144.    In *Burton v. Administrator, General Services Administration*, No. 89-2338, 1992 WL 300970, at *1 (D.D.C. July 10, 1992), the plaintiff filed suit against the General Services Administration under Title VII of the Civil Rights Act of 1964.   The Assistant United States Attorney who was assigned to the case made a settlement offer to the plaintiff, in writing, that was generated by the General Services Administration's Office of General Counsel. *Id.* at *1.   The plaintiff accepted that offer, and the parties stipulated to dismissal of the case. *Id*. at *2. Subsequently, the Assistant United States Attorney conveyed that the agency had "changed the terms of the settlement offer," and that, "if plaintiff was unwilling to accept the changed terms of settlement, [the government] would stipulate with plaintiff to request reopening the case." *Id.*  The plaintiff sought to enforce the settlement agreement, and the government contested the validity of

the contract. *See id.* The court enforced the settlement agreement, holding, "[n]ot only did the responsible Assistant U.S. Attorney have the authority from the GSA's Office of General Counsel to make this offer to plaintiff, but evidence suggests that the responsible agency official approved of the terms of the offer." *Id.* at \*6.

145. In *Western Watersheds Project v. U.S. Fish & Wildlife Service*, No. 06-277, 2008 WL 619336, at \*2-3 (D. Idaho Feb. 29, 2008), the Department of Justice entered into a settlement and stipulation on behalf of the United States Fish and Wildlife Service. Before the stipulation was entered by the court, the Department attempted to back out of the agreement. *See id.* at \*2. The district court rejected that maneuver, holding that, under standard contract principles, the Department was bound by the terms of the settlement agreement, and it entered the parties' stipulation. *See id.* at \*3 ("There is no dispute that Williams and Lucas reached an agreement. There is also no dispute that Williams' superiors at the DOJ approved the agreement. Finally, there is no evidence to support a claim of mutual mistake, duress, coercion, or lack of consideration.").

146. In *United States v. McInnes*, 556 F.2d 436, 437-39 (9th Cir. 1977), radiation control monitors employed by the United States Navy sued the government when their compensation was altered by newly adopted regulations. Their attorney entered an oral settlement agreement with the attorney representing the government, which was subsequently confirmed in writing by the responsible Assistant Attorney General. *Id.* at 440. But before payment was made by the government, the plaintiffs were informed that the government "had decided not to complete performance of the agreement." *Id.* The Ninth Circuit rejected that argument, holding that the settlement agreement was enforceable, even though "the parties never signed the formal stipulation." *Id.* at 441.

147.    Other courts have reached similar conclusions.  *See Haggart v. United States*, 943 F.3d 943, 946 (Fed. Cir. 2019) (affirming "conclu[sions] that 'the Settlement Agreement was and remains a binding and enforceable contract' that '[t]he [G]overnment cannot avoid . . . even if it now has had a change of heart and wishes to back out'"); *Reed v. United States*, 717 F. Supp. 1511, 1516 (S.D. Fla. 1988) (enforcing a settlement agreement and holding that "the government may not rescind the agreement while the issue of its approval is before the court"), *aff'd*, *Reed v. United States*, 891 F.2d 878, 882 n.3 (11th Cir. 1990) ("The fact that the court did not approve the settlement before Benjamin's death does not make the agreement any less binding on the government.").

148.    These cases have a unifying theme: "There is no question that a settlement agreement is a contract which, like any other contract, may not be unilaterally rescinded," and "[t]hat principle applies to the government as to any other party, and it applies irrespective of whether or not the agreement has yet been approved by the court." *Watt*, 689 F.2d at 234 (Greene, J., concurring in part and dissenting in part) (footnote omitted).

149.    Any contrary contention could not be squared with "[t]he strong policies favoring enforcement of settlements," which "require that '[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.'" *Gaines v. Cont'l Mortg. & Inv. Corp.*, 865 F.2d 375, 378 (D.C. Cir. 1989) (quoting *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948)).

150.    Thus, the Antitrust Division, like any other party to a settlement agreement, is bound by the terms of the settlement agreement, and it has no inherent right to unilaterally rescind its settlement agreement with NAR.

**B.      The Antitrust Division Has No Contractual Right to Rescind Its Commitments**

151.    None of the documents memorializing the terms of the settlement agreement allowed the Antitrust Division to unilaterally back out of the deal on a whim.

152.    The closing letter contains two paragraphs, and neither of them allows the Antitrust Division to unilaterally deprive NAR of the benefit of the settlement agreement.

153.    The first paragraph of the closing letter provides that "[t]his letter is to inform you that the Antitrust Division has closed its investigation into the National Association of REALTORS' Clear Cooperation Policy and Participation Rule.  Accordingly, NAR will have no obligation to respond to CID Nos. 29935 and 30360 issued on April 12, 2019 and June 29, 2020, respectively."  Glass Decl. Ex. 12.  This paragraph reflects the benefit of the settlement agreement to NAR: The Antitrust Division's confirmation that it had in fact complied with its commitment to close its investigations and withdraw the related CIDs.

154.    The second paragraph of the closing letter provides: "No inference should be drawn, however, from the Division's decision to close its investigation into these rules, policies or practices not addressed by the consent decree."  *Id.*  That sentence prevents NAR from arguing that the Antitrust Division had made an affirmative determination about the legality of the Participation Rule or the Clear Cooperation Policy, presumably so that NAR would not argue in pending private civil litigation that the Antitrust Division had approved of either rule.

155.    As is commonplace in settlement agreements, NAR maintained that in settling and agreeing to the Consent Judgment, it was not "admitting liability, wrongdoing, or the truth of any allegations in the Complaint."  *Id.* Ex. 11, Proposed Final Judgment at 1, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 4-2 (D.D.C. Nov. 19, 2020).

156.    Similarly, in its closing letter, the Antitrust Division stated that "no inference should be drawn from the Division's decision to close its investigation into these rules, policies or

practices not addressed by the consent decree," *id.* Ex. 12, to maintain that the letter was not intended as an admission or affirmative determination about any potential liability relating to the Participation Rule and Clear Cooperation Policy.

157.   The second paragraph does not alter or limit the Antitrust Division's commitment to close the investigations identified in the letter and withdraw the related CIDs.

158.   The second paragraph also does not give the Antitrust Division the right to re-open the same investigations it agreed to close or re-issue the CIDs it agreed to withdraw.

159.   To interpret the "inference" paragraph in any other way, as may be suggested by the Antitrust Division, would render the first paragraph (and thus the Antitrust Division's prior commitments) meaningless.

160.   Moreover, that paragraph in the closing letter was never discussed before the Antitrust Division sent it to NAR, *see id.* Ex. 7, so it cannot change the meaning of the settlement agreement, *see Williams v. Washington Metro. Area Transit Auth.*, 537 F. Supp. 2d 220, 222 (D.D.C. 2008) (holding that "misgivings about his acceptance of" a settlement "do not constitute grounds for relieving a party of his obligations to comply with the terms of [it]"); *Ulliman Schutte Const., Inc. v. Emerson Process Mgmt. Power & Water Sols.*, No. 02-1987, 2007 WL 1794105, at *7 (D.D.C. June 19, 2007) ("A party cannot avoid the effects of a valid oral settlement agreement because of second thoughts or because one of the company's principals decides to go in a different direction than the other.").

161.   When the Antitrust Division negotiates an agreement that preserves its ability to pursue further investigations, it expressly includes such a reservation in the agreement.  *See* Glass Decl. Ex. 23, US Opposition at 6, *United States v. Rodgers*, No. 4:20-cr-358-2 (E.D. Tex. July 16,

2021) ("The NDUs thus unambiguously contemplated a future prosecution of Rodgers and expressly provided that the United States *could* prosecute such a case.").

162.    No such provision was negotiated as part of the Antitrust Division's settlement with NAR.

163.    Under such circumstances, the Antitrust Division also includes a merger clause or integration clause in the agreement, making clear that all aspects of the agreement have been reduced to a single document.  *Id.* at 7-8 ("Moreover, each agreement included a merger clause. The first NDU stated: 'This letter constitutes the entire understanding between the United States and you.'  The second NDU stated: 'This letter and attached Addendum [with video teleconference provisions] constitute the entire understanding between the United States and you in connection with this interview.'"  (footnote and citations omitted)).

164.    The government similarly includes merger or integration clauses in civil consent decrees when such clauses are applicable.  *See, e.g.*, *id.* Ex. 25, Consent Decree § XXII, *United States v. Empire Iron Mining Partnership*, No. 2:19-cv-95, Dkt. No. 8 (W.D. Mich. Sept. 4, 2019) ("This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree."); Ex. 26, Consent Decree § XXI, *United States v. Dyno Nobel, Inc.*, No. 3:19-cv-984, Dkt. No. 11 (D. Or. Sept. 20, 2019) (same).

165.    There is no merger or integration clause in any of the documentation surrounding NAR's settlement agreement with the Antitrust Division.

166.    While the proposed Consent Judgment does contain a reservation of rights clause, by its terms that clause only purported to reserve the Antitrust Division's rights as to the relief discussed in the ***Consent Judgment itself***: "Nothing ***in this Final Judgment*** shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule or practice adopted or enforced by NAR or any of its Member Boards." Glass Decl. Ex. 11, Proposed Final Judgment § IX, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 4-2 (D.D.C. Nov. 19, 2020) (emphasis added).

167.    The Consent Judgment does not mention the Participation Rule, the Clear Cooperation Policy, the Antitrust Division's commitment to close the investigations concerning those rules, or its commitment to withdraw the related CIDs.

168.    Similarly, the Stipulation also provided the Antitrust Division with the ability to back out of the relief afforded in the ***Consent Judgment*** only, but like the reservation of rights provision, it did not give the Antitrust Division the ability to back out of the settlement agreement or the closing letter:

> [A] ***Final Judgment*** in the form attached as Exhibit A may be filed with and entered by the Court, upon the motion of the United States or upon the Court's own motion . . . provided that the United States has not withdrawn its consent.  The United States may withdraw its consent at any time before the entry of the proposed Final Judgment by serving notice on Defendant and by filing that notice with the Court.

*Id.* Ex. 8, Stipulation and Order ¶ 2, *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356, Dkt. No. 5 (D.D.C. Nov. 20, 2020).

169.    The Stipulation does not mention the Participation Rule, the Clear Cooperation Policy, the Antitrust Division's commitment to close the investigations concerning those rules, or its commitment to withdraw the related CIDs.

## II.      The Civil Investigative Demand Exceeds the Limits on the Antitrust Division's Statutory Authority

170.      Under the Antitrust Civil Process Act, the government may not seek information through a CID that "would be protected from disclosure under . . . the standards applicable to subpenas or subpenas duces tecum issued . . . in aid of a grand jury investigation," or "the standards applicable to discovery requests under the Federal Rules of Civil Procedure, to the extent that the application of such standards to any such demand is appropriate."  15 U.S.C. § 1312(c)(1) (spelling in original).  The Court may set aside or modify any CID that fails to satisfy those standards.  *See* 15 U.S.C. § 1314(b), (e).  The Act gives courts "broad discretion to protect [CID recipients] from an unreasonable demand."  *Hyster Co. v. United States*, 338 F.2d 183, 186 (9th Cir. 1964).

### A.      The CID Violates the Grand Jury Standards

171.      CID No. 30729 violates the grand jury standards incorporated into the Antitrust Civil Process Act.

172.      For example, when "the government promise[s], as a part of [a] plea agreement, that it [will] not require [a party] to 'cooperate with law enforcement,'" it may not "[j]ust short of a month later, . . . ha[ve] [the same party] subpoenaed to testify before a grand jury."  *United States v. Garcia*, 956 F.2d 41, 42, 44 (4th Cir. 1992).

173.      Courts have recognized that such subpoenas, if permitted, would effectively allow the government to unilaterally unwind the terms of an agreement.

174.      "If the Government were allowed to issue [a] grand jury subpoena to [a party] and hold him in contempt for refusing to testify, [the party] would not get the full benefit of" a "plea agreement [that] included an affirmative right to refuse to cooperate with the Government."  *United States v. Singleton*, 47 F.3d 1177, at *2, *4 (9th Cir. 1995) (unpublished table decision).

175.    Grand jury subpoenas issued in those circumstances are not enforceable.  *See id.* at *4; *Garcia*, 956 F.2d at 45-46; *see also United States v. Pearce*, 792 F.2d 397, 400 (3d Cir. 1986) ("If the terms of the plea bargain protected Pearce from having to testify, then the order compelling him to testify [before a grand jury] was invalid.").

176.    CID No. 30729 contravenes these principles.  The CID seeks to re-issue the very CIDs that the Antitrust Division agreed to withdraw.  And just as the government cannot seek information through a grand jury subpoena that it promised to forego as part of a binding agreement, *see Garcia*, 956 F.2d at 44-46; *Singleton*, 47 F.3d 1177, at *2-4, the Antitrust Division cannot re-open civil antitrust investigations it agreed to close, unconditionally, as part of a settlement agreement.

**B.        The CID Violates the Federal Rules of Civil Procedure**

177.    CID No. 30729 also violates the civil discovery standards that are incorporated into the CID statute because information requests served under the Federal Rules of Civil Procedure are limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

178.    Judged by that standard, most of the demands in CID No. 30729, including all of the handful that fall outside the scope of the CIDs the Antitrust Division agreed to withdraw as part of the settlement agreement, are far overbroad and would impose substantial, unjustifiable burdens on NAR.[2]

---

[2] This Petition does not address Request No. 10 in CID No. 30729 because that request was withdrawn by the Antitrust Division on August 27, 2021.  *See* Glass Decl. Ex. 24 at 1.

179.    ***Requests for "all documents" are overbroad and seek privileged information.***
Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 17, and 18 seek "all documents" concerning a broad array of subject matters.

180.    The problem with requests for "all documents" is "such obviously overbroad discovery . . . [requests] are not designed to capture relevant, unique information; rather, they are designed to capture great swaths of information without regard to whether that information is likely relevant and unique." *United States Equal Emp. Opportunity Comm'n v. George Washington Univ.*, No. 17-cv-1978, 2020 WL 3489478, at *7 (D.D.C. June 26, 2020).

181.    That is also the problem with CID No. 30729.  Even if Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 17, and 18 sweep in some information that would arguably be relevant to an antitrust investigation, they are designed to "capture great swaths of information without regard to" the information's relevance.  *Id.*

182.    ***Request No. 4 simply harasses NAR and seeks privileged information.***  Request No. 4 demands documents about NAR's use of an Antitrust Division program called the Business Review.  This request is apparently intended to harass NAR, which is not permissible under the Federal Rules.  *See Annapolis Citizens Class Overcharged for Water-Sewer, by Loudon Operations, LLC v. Stantec, Inc.*, No. 20-2603, 2021 WL 75766, at *9 (D.D.C. Jan. 8, 2021) (discovery requests may "not [be] interposed for any improper purpose, such as to harass" (quoting Fed. R. Civ. P. 26(g))); *see also Chattanooga Pharm. Ass'n v. United States Dep't of Justice*, 358 F.2d 864, 866-67 (6th Cir. 1966) (setting aside a CID the Antitrust Division issued "to intimidate" and "harass").

183.    The Business Review process is intended to "provide[] a way for businesses to determine how the Division may respond to proposed joint ventures or other business conduct."

U.S. Dep't of Justice, *Introduction to Antitrust Division Business Reviews* at 1 (2011), https://www.justice.gov/sites/default/files/atr/legacy/2011/11/03/276833.pdf (citing 28 C.F.R. § 50.6).

184.     There is no reasonable basis for the Antitrust Division to seek internal documents about a person's decision to seek a business review, and certainly not where, as here, the request for a business review was withdrawn.

185.     ***Request Nos. 14 and 15 are unduly burdensome and seek privileged information.*** Request No. 14 seeks "all documents relating to any former or potential withdrawal of any broker from an MLS," *id.* Ex. 2, Spec. 14, and Request No. 15 asks NAR to "[d]escribe all instances in the past 15 years in which any broker has withdrawn from an MLS, and identify each broker," *id.* Ex. 2, Spec. 15.

186.     There are hundreds of REALTOR®-association owned multiple listing services spread throughout the country.  *Id.* ¶ 39.  Some have tens of thousands of members.  *Id.*

187.     The burdens associated with these requests are untenable, assuming any such information is even within NAR's control.

## PRAYER FOR RELIEF

188.     NAR respectfully requests that this Court:

    a.  Set aside CID No. 30729 in its entirety, because it is barred by the Antitrust Division's commitments to close the investigations into the Participation Rule and Clear Cooperation Policy and withdraw the CIDs related to those investigations, and because it exceeds the Antitrust Division's statutory authority; or

    b.  in the alternative, modify CID No. 30729 to remove all of the overly broad, unduly burdensome, or harassing requests; and

c.   grant such other and further relief as is just and proper.

Dated: September 13, 2021                    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*Ethan Glass*

Ethan C. Glass (D.D.C. Bar No. 1034207)
William A. Burck (D.C. Bar No. 979677)
Michael D. Bonanno (D.C. Bar No. 998208)
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
Tel: (202) 538-8000
Fax: (202) 538-8100
ethanglass@quinnemanuel.com
williamburck@quinnemanuel.com
mikebonanno@quinnemanuel.com

*Attorneys for Petitioner National Association of REALTORS®*