**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL ASSOCIATION OF REALTORS®,**<br>430 North Michigan Ave.,<br>Chicago, IL 60611,<br><br>   *Petitioner*,<br><br>  v.<br><br>**UNITED STATES OF AMERICA**<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530,<br><br>**U.S. DEPARTMENT OF JUSTICE, ANTITRUST DIVISION**<br>450 Fifth Street NW, Suite 4000<br>Washington, DC 20530,<br><br>**RICHARD A. POWERS**, in his official capacity as Acting Assistant Attorney General, Antitrust Division<br>450 Fifth Street NW, Suite 4000<br>Washington, DC 20530,<br><br>   *Respondents*. | Case No. 1:21-cv-2406 |

**DECLARATION OF ETHAN GLASS IN SUPPORT OF THE NATIONAL
ASSOCIATION OF REALTORS'® PETITION TO SET ASIDE, OR IN THE
ALTERNATIVE MODIFY, CIVIL INVESTIGATIVE DEMAND NO. 30729**

## DECLARATION OF ETHAN GLASS

I, Ethan Glass, declare as follows under 28 U.S.C. § 1746:

1. I am a partner at the law firm of Quinn, Emanuel, Urquhart & Sullivan, LLP, counsel to Petitioner National Association of REALTORS® ("NAR") in the above-captioned matter.

2. Attached hereto as **Exhibit 1** is a true and correct copy of Press Release No. 21-620, issued by the United States Department of Justice on July 1, 2021, and titled, "Justice Department Withdraws from Settlement with the National Association of Realtors." The press release is available at: https://www.justice.gov/opa/pr/justice-department-withdraws-settlement-national-association-realtors.

3. Attached hereto as **Exhibit 2** is a true and correct copy of Civil Investigative Demand No. 30729, issued by the Antitrust Division on July 6, 2021.

4. Attached hereto as **Exhibit 3** is a true and correct copy of a tolling agreement, dated July 25, 2021, and entered into by the Antitrust Division and NAR.

5. Attached hereto as **Exhibit 4** is a true and correct copy of an October 16, 2020 email I sent to attorneys at the Antitrust Division, attaching edits to a draft proposed final judgment.

6. Attached hereto as **Exhibit 5** is a true and correct copy of an October 21, 2020 email from Samer Musallam, Senior Counsel, Office of the Assistant Attorney General, Antitrust Division, to counsel for NAR, attaching edits to a draft proposed final judgment.

7. Attached hereto as **Exhibit 6** is a true and correct copy of an October 26, 2020 email from Mike Bonanno, counsel for NAR, to attorneys at the Antitrust Division, attaching edits to a draft proposed final judgment.

8. Attached hereto as **Exhibit 7** is a true and correct copy of an October 28, 2020 email from Samer Musallam, Senior Counsel, Office of the Assistant Attorney General, Antitrust Division, to counsel for NAR, attaching edits to a draft proposed final judgment.

9. Attached hereto as **Exhibit 8** is a true and correct copy of the Stipulation and Order (Dkt. No. 5) from *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C. Nov. 19, 2020).

10. Attached hereto as **Exhibit 9** is a true and correct copy of the Complaint (Dkt. No. 1) from *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C. Nov. 19, 2020).

11. Attached hereto as **Exhibit 10** is a true and correct copy of the Proposed Stipulation and Order (Dkt. No. 4-1) from *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C. Nov. 19, 2020).

12. Attached hereto as **Exhibit 11** is a true and correct copy of the Proposed Final Judgment (Dkt. No. 4-2) from *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C. Nov. 19, 2020).

13. Attached hereto as **Exhibit 12** is a true and correct copy of a November 19, 2020 letter from Makan Delrahim, Assistant Attorney General, Antitrust Division, to counsel for NAR.

14. Attached hereto as **Exhibit 13** is a true and correct copy of the Competitive Impact Statement (Dkt. No. 11) from *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C. Dec. 10, 2020).

15. By January 4, 2021, NAR had "(i) appoint[ed] an Antitrust Compliance Officer and (ii) identif[ied] to the United States the Antitrust Compliance Officer's name, business address, telephone number, and email address." Ex. 11 § VI.A. NAR had "furnish[ed] notice of [the

Complaint and Consent Judgment in *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C.)] to all its Member Boards and MLS Participants." *Id.* § VI.B.  And NAR had "submit[ted] to the United States . . . Rule changes that NAR propose[d] to adopt to comply with Paragraphs V.C-I of [the Consent Judgment in *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C.)]." *Id.* § V.A.

16. The Antitrust Division has not approved, rejected, or sought changes to NAR's proposed rule changes.

17. On April 15, 2021, Antitrust Division Staff contacted me and other counsel for NAR to schedule a time to discuss the Consent Judgment.  I participated in the requested discussion by telephone on April 19, 2021.

18. On April 19, 2021, Antitrust Division Staff conveyed, for the first time, that the Antitrust Division wanted to change the reservation of rights clause in the proposed Consent Judgment that had been filed in *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-03556 (D.D.C.).  Antitrust Division Staff asked for NAR's consent to change the reservation of rights clause, and read aloud the following replacement language: "The final judgment shall only terminate the claims expressly raised in the complaint.  The final judgment shall not in any way affect any other charges or claims filed by the United States subsequent to the commencement of this action."

19. During the April 19 call, Antitrust Division Staff also indicated that the Antitrust Division would not discuss NAR's proposed rule changes or anything else related to the Consent Judgment with NAR until NAR agreed to change the reservation of rights language in the Consent Judgment.  NAR's counsel agreed to discuss the request with NAR, and asked whether the request to change the reservation of rights clause was intended to modify any aspect of the overall

3

settlement or the Antitrust Division's agreement to close the investigations or withdraw the CIDs. Antitrust Division Staff responded that it was not prepared to answer that question. Antitrust Division Staff also stated that the Antitrust Division generally planned to change the boilerplate reservation of rights language in all consent decrees in civil, non-merger matters.

20. I, along with other counsel for NAR, spoke to Antitrust Division Staff again on April 22, 2021.

21. During the April 22 call, NAR's counsel told Antitrust Division Staff that NAR would consider modifying the reservation of rights clause, but NAR still did not understand the purpose of the change, given that the new language was so similar to the existing language in the Consent Judgment. In response, Antitrust Division Staff indicated that the new language was intended to convey that only the claims asserted in the Complaint against NAR had been released.

22. Also during the April 22 call, NAR's counsel again asked whether the request to change the reservation of rights clause in the Consent Judgment was intended to modify any aspect of the Antitrust Division's commitment to close its investigations or withdraw the related CIDs. In response, Antitrust Division Staff asked NAR's counsel to describe NAR's understanding of the closing letter. NAR's counsel explained that the Antitrust Division's commitments to close the investigations and withdraw the related CIDs were the only benefits that NAR received from the settlement agreement, and thus were a key part of NAR's agreement to enter into the settlement agreement and consent to the Stipulation and Consent Judgment.

23. NAR's counsel also expressly acknowledged that the Antitrust Division's commitments did not mean NAR had immunity from all future investigations. NAR's counsel told Antitrust Division Staff that the effect of the parties' agreement would depend on the nature and scope of any future investigation. NAR's counsel volunteered that if NAR made material

changes to the Participation Rule or Clear Cooperation Policy, the Antitrust Division would be able to investigate those changes.  And NAR's counsel acknowledged that, if such an investigation were to be opened, it was possible there could be disagreement between NAR and the Antitrust Division about whether the new investigation breached the parties' agreement, but maintained that it made no sense to address that potential conflict in the abstract.  In response, Antitrust Division Staff agreed to discuss the issue internally and indicated that they would contact NAR's counsel within a few days.

24. Almost two months later, on June 1, 2021, the Antitrust Division asked for a third call, and NAR's counsel promptly agreed to have that call the next day.  I participated in the June 2 call.

25. During the June 2 call, Antitrust Division Staff claimed that NAR's position was that it would only agree to modify the reservation of rights clause in the Consent Judgment if the Antitrust Division agreed that the closing letter forever barred any investigation of NAR.  NAR's counsel explained that NAR never made such a demand.  NAR was only seeking to understand how the proposed change to the Consent Judgment's reservation of rights language might impact the closing letter or the Antitrust Division's commitment to close the investigations and withdraw the CIDs.  NAR's counsel again affirmed that NAR would consider the change to the reservation of rights clause once it understood the Antitrust Division's position on how that change would impact its commitment, if at all.  And NAR's counsel suggested that the Antitrust Division focus on the proposed rule changes that NAR provided approximately six months earlier, and that the parties should avoid trying to resolve a hypothetical dispute that may never arise.  Antitrust Division Staff again told NAR's counsel that they would internally discuss NAR's position and get back to NAR promptly.

26. Attached hereto as **Exhibit 14** is a true and correct copy of a June 29, 2021 letter from Miriam Vishio, Assistant Chief, Civil Conduct Task Force, Antitrust Division, to counsel for NAR.

27. Attached hereto as **Exhibit 15** is a true and correct copy of an email thread that includes emails exchanged between counsel for NAR and Antitrust Division Staff from June 29, 2021, though July 1, 2021.

28. Attached hereto as **Exhibit 16** is a true and correct copy of the Notice of Electronic Filing associated with the Notice of Withdrawal of Consent (Dkt. No. 14) from *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C. July 1, 2021).

29. Attached hereto as **Exhibit 17** is a true and correct copy of the Notice of Voluntary Dismissal (Dkt. No. 15) from *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C. July 1, 2021).

30. Attached hereto as **Exhibit 18** is a true and correct copy of the Notice of Withdrawal of Consent (Dkt. No. 14) from *United States v. Nat'l Ass'n of REALTORS®*, No. 1:20-cv-3356 (D.D.C. July 1, 2021).

31. Attached hereto as **Exhibit 19** is a true and correct copy of an article by David McLaughlin, titled "DOJ Ditches Realtor Antitrust Pact Citing Need for Probe," and dated July 1, 2021, 4:00 PM EDT.  The article is available at: https://www.bloomberg.com/news/articles/2021-07-01/doj-pulls-out-of-realtor-antitrust-pact-citing-need-for-probe.

32. Attached hereto as **Exhibit 20** is a true and correct copy of Civil Investigative Demand No. 29935, issued by the Antitrust Division on April 12, 2019.

33. Attached hereto as **Exhibit 21** is a true and correct copy of Civil Investigative Demand No. 30360, issued by the Antitrust Division on June 29, 2020.

34. Attached hereto as **Exhibit 22** is a true and correct copy of a chart that compares the information requests in Civil Investigative Demand No. 30729 to the information requests in Civil Investigative Demand Nos. 29935 and 30360.

35. Attached hereto as **Exhibit 23** is a true and correct copy of the United States' Response in Opposition to Defendant's Motion to Dismiss the Superseding Indictment (Dkt. No. 48) from *United States v. Rodgers*, No. 4:20-cr-358-2 (E.D. Tex. July 16, 2021).

36. Attached hereto as **Exhibit 24** is a true and correct copy of an August 30, 2021 email from Miriam Vishio, Assistant Chief, Civil Conduct Task Force, Antitrust Division, to counsel for NAR. The attachments to the email are omitted.

37. Attached hereto as **Exhibit 25** is a true and correct copy of the Consent Decree (Dkt. No. 8) from *United States v. Empire Iron Mining Partnership*, No. 2:19-cv-96 (W.D. Mich. Sept. 4, 2019).

38. Attached hereto as **Exhibit 26** is a true and correct copy of the Consent Decree (Dkt. No. 11) from *United States v. Dyno Nobel, Inc.*, No. 3:19-cv-984 (D. Or. Sept. 20, 2019).

39. According to an interactive map accessible at https://www.nar.realtor/mls-map-of-the-national-association-of-realtors, there are hundreds of REALTOR®-association owned multiple listing services in the United States, and some of the larger multiple listing services have tens of thousands of members.

8

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This declaration was executed on September 13, 2021, in the District of Columbia.

_Ethan Glass_
Ethan Glass