# EXHIBIT 2

# United States Department of Justice

**Antitrust Division**
Washington, DC 20530

| | |
|---|---|
| To:  National Association of REALTORS® | Civil Investigative |
| 430 N. Michigan Ave. | Demand Number:   **30729** |
| Chicago, IL 60611-4087 | |
| c/o Katie Johnson, General Counsel | |

    This civil investigative demand is issued pursuant to the Antitrust Civil Process Act, 15 U.S.C. §§ 1311-1314, in the course of an antitrust investigation to determine whether there is, has been, or may be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by conduct, activities, or proposed action of the following nature: policies, guidelines, rules, or practices that may unreasonably restrain competition in the provision of residential real estate brokerage services in metropolitan areas throughout the United States.

    You are required by this demand to produce all documentary material described in the attached schedule that is in your possession, custody, or control, and to make it available at your address indicated above for inspection and copying or reproduction by a custodian named below. You are also required to answer the interrogatories on the attached schedule. Each interrogatory must be answered separately and fully in writing, unless it is objected to, in which event the reasons for the objection must be stated in lieu of an answer. Such production of documents and answers to interrogatories shall occur on the 5th day of August, 2021 at 5:00 p.m.

    The production of documentary material and the interrogatory answers in response to this demand must be made under a sworn certificate, in the form printed on the reverse side of this demand, by the person to whom this demand is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances relating to such production and/or responsible for answering each interrogatory.

    For the purposes of this investigation, the following are designated as the custodian and deputy custodian(s) to whom the documentary material shall be made available and the interrogatory answers shall be submitted: Owen Kendler (custodian) and Miriam Vishio (deputy custodian), U.S. Dept. of Justice, Antitrust Division, Financial Services, Fintech, and Banking Section, 450 Fifth Street NW, Suite 4000, Washington, DC 20530.

    Inquiries concerning compliance should be directed to Ethan Stevenson at 202-615-4564 or Miriam Vishio at 202-460-6680.

    Your attention is directed to 18 U.S.C. § 1505, printed in full on the reverse side of this demand, which makes obstruction of this investigation a criminal offense. The information you provide may be used by the Department of Justice in other civil, criminal, administrative, or regulatory cases or proceedings.

    Issued in Washington, D.C., this 6th day of July, 2021.

/s/   Richard A. Powers
*Acting Assistant Attorney General*

**18 U.S.C. § 1505. Obstruction of proceedings before departments, agencies, and committees**

Whoever, with intent to avoid, evade, prevent, or obstruct compliance, in whole or in part, with any civil investigative demand duly and properly made under the Antitrust Civil Process Act, willfully withholds, misrepresents, removes from any place, conceals, covers up, destroys, mutilates, alters, or by other means falsifies any documentary material, answers to written interrogatories, or oral testimony, which is the subject of such demand; or attempts to do so or solicits another to do so; or

Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress -

Shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both.

## Form of Certificate of Compliance*

I/We have read the provisions of 18 U.S.C. § 1505 and have knowledge of the facts and circumstances relating to the production of the documentary material and have responsibility for answering the interrogatories propounded in Civil Investigative Demand No. _____.  I/We do hereby certify that all documentary material and all information required by Civil Investigative Demand No. _____ which is in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted to a custodian named therein.

If any documentary material otherwise responsive to this demand has been withheld or any interrogatory in the demand has not been fully answered, the objection to such demand and the reasons for the objection have been stated in lieu of production or an answer.

Signature _____

Title _____

Sworn to before me this _____ day of _____, 20\_\_\_.

_____
                Notary Public

*In the event that more than one person is responsible for producing the documents and answering the interrogatories, the certificate shall identify the documents and interrogatories for which each certifying individual was responsible. In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided by 28 U.S.C. § 1746.

# CIVIL INVESTIGATIVE DEMAND FOR DOCUMENTS AND INFORMATION ISSUED TO NATIONAL ASSOCIATION OF REALTORS®

Unless otherwise indicated or modified by the Department of Justice, each specification of this Demand requires a complete search of the Association. In the Department's experience, modifications to this Demand may reduce the burden of searching for responsive documents and information in a way that is consistent with the Department's needs. The Association is encouraged to propose such modifications, but all modifications must be agreed to in writing by the Department.

## SPECIFICATIONS

1. Submit all minutes (including attachments) of meetings of (a) the Association's Board of Directors or any committees thereof relating to MLS rules or NAR's code of ethics and (b) NAR's Multiple Listing Issues & Policies Committee and any predecessor thereof.

2. Submit all documents relating to any policy, guideline, rule, or practice:

   a. requiring listing brokers to make an offer of compensation to buyer brokers to list a home on an MLS;

   b. conditioning MLS membership or participation on offering or accepting compensation to and from other MLS participants;

   c. prohibiting, restricting, or inhibiting display or publication to consumers (including potential home buyers, clients, or customers) of the compensation offered by listing brokers to cooperating brokers;

   d. prohibiting buyer brokers from making the submission of an executed offer to purchase contingent on the listing broker's agreement to modify the offer of compensation or using the terms of an offer to purchase to attempt to modify the listing broker's offer of compensation;

   e. permitting Realtors® to represent their services as free or without cost;

   f. encouraging or requiring MLS members, syndicators, purchasers, or users of MLS data or operators of IDX sites or VOWs, when displaying MLS listings, to separate MLS and non-MLS listings or to treat MLS and non-MLS listings differently any other way;

   g. permitting listing brokers to make offers of compensation to other MLS participants that vary based on the identity of the cooperating broker; and

   h. regulating, inhibiting, restricting, prohibiting, or impeding the negotiation of offers of cooperative compensation between brokers.

For documents responsive to this Specification relating to any possible or actual rationale, reason, or basis for the adoption, approval, maintenance, or retention of any policy, guideline, rule, or practice, submit all documents regardless of the date that such documents were prepared, created, sent, altered, or received. For all other documents responsive to this Specification, please follow the default Timing instruction articulated below.

3. Submit all documents relating to any policy, guideline, rule, practice, or software enabling or permitting brokers to search for, filter, or exclude MLS listings based on the level or type of cooperative compensation offered by a listing broker.

    For documents responsive to this Specification relating to any possible or actual rationale, reason, or basis for the adoption, approval, maintenance, or retention of any policy, guideline, rule, practice, or software, submit all documents regardless of the date that such documents were prepared, created, sent, altered, or received. For all other documents responsive to this Specification, please follow the default Timing instruction articulated below.

4. Submit all documents relating to any possible, proposed, or adopted policy, guideline, rule, or practice that restricts a brokers' marketing of off-MLS listings (such as NAR's Clear Cooperation Policy) or increases the incentives for brokers to list all properties with MLSs (such as the proposed policy described in NAR's September 18, 2018, request for a Business Review Letter to the Department of Justice Antitrust Division (subsequently withdrawn)).

    For documents responsive to this Specification relating to any possible or actual rationale, reason, or basis for the adoption, approval, maintenance, or retention of any policy, guideline, rule, or practice, submit all documents regardless of the date that such documents were prepared, created, sent, altered, or received. For all other documents responsive to this specification, please follow the default Timing instruction articulated below.

5. Submit all documents relating to the purpose or the expected or actual effect of any change in Northwest MLS's rules announced in July 2019 and implemented on October 1, 2019, including all communications relating to any change.

6. Submit all documents relating to brokers steering potential buyers toward or away from homes for sale based on the amount of cooperative compensation offered by a listing broker.

7. Submit all documents relating to any possible or actual rebates of any broker commission or any offer of any gift card or other benefit to any home seller or buyer, including all communications relating to such rebates or offers between NAR and (a) any personnel of any state regulatory agency or legislature or (b) any personnel of any association of Realtors®.

8. Submit all documents relating to the benefits of membership in MLSs and the role of MLSs in the market for real estate brokerage services.

9. Submit all documents relating to or produced by NAR in the *Moehrl* Antitrust Litigation or the *Sitzer* Antitrust Litigation.

10. Submit all documents relating to *United States v. National Association of Realtors®*, Case No. 1:20-sv-3356 (D.D.C.), including all communications with NAR members about the filed Complaint or proposed Final Judgment and any contemplated changes to any NAR policy, guideline, rule, or practice related to the Antitrust Division's investigation into or settlement with NAR.

11. Submit documents sufficient to show all of NAR's policies, guidelines, rules, and practices existing currently or at any time during 2018 or thereafter, relating to:

    a. the retention and destruction of documents, including the retention, storage, deletion, and archiving of electronically stored information, including e-mail; or

    b. the use of personal electronic devices or personal email for NAR business.

12. Submit all documents relating to any allegation that the Association is behaving or has behaved in an anticompetitive manner.

13. Identify all local associations of Realtors® and local MLSs currently affiliated with the Association.

14. Submit all documents relating to any former or potential withdrawal of any broker from an MLS.

15. Describe all instances in the past 15 years in which any broker has withdrawn from an MLS, and identify each broker.

16. Describe any rationale for any policy, guideline, rule, or practice requiring listing brokers to make an offer of compensation to buyer brokers to list a home on an MLS.

17. Submit all studies either performed or commissioned by NAR relating to broker commissions and any underlying data.

18. Submit all documents discussing, relating to, analyzing, or relying on any study produced in response to Specification 17.

## DEFINITIONS

The following definitions apply for the purposes of this Demand:

1. The terms "**the Association**" or "**NAR**" means National Association of Realtors®, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of

3

the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25 percent or more) or total ownership or control between the Association and any other person.

2. The term "**broker**" means a person licensed by a state to provide real-estate brokerage services to either a buyer or seller in a real-estate transaction and includes any listing agent or buyer agent or sales associate who is affiliated with a broker.

3. The term "**Collaborative Work Environment**" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include Microsoft SharePoint sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis, and blogs.

4. The term "**Data Dictionary**" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Department, including, for each table of information: (a) the name of the table; (b) a general description of the information contained; (c) the size in both number of records and megabytes; (d) a list of fields; (e) the format, including variable type and length, of each field; (f) a definition for each field as it used by the Association, including the meanings of all codes that can appear as field values; (g) the fields that are primary keys for the purpose of identifying a unique observation; (h) the fields that are foreign keys for the purpose of joining tables; and (i) an indication of which fields are populated.

5. The term "**documents**" means all written, printed, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Association, including information stored on social media accounts like Twitter or Facebook, chats, instant messages, text messages, other Messaging Applications, and documents contained in Collaborative Work Environments and other document databases. "Documents" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document. Unless otherwise specified, "documents" excludes bills of lading, invoices in non-electronic form, purchase orders, customs declarations, and other similar documents of a purely transactional nature; architectural plans and engineering blueprints; and documents solely relating to environmental, tax, human resources, OSHA, or ERISA issues.

6. The term "**documents sufficient to show**" means documents sufficient to provide the Department with a true and correct disclosure of the factual matter requested.

7. The term "**identify**" means to state:

    a. in the case of a person other than a natural person: name, principal address, and telephone number; and

4

      b.      in the case of a natural person: name, employer, business address, business telephone number, business email, and title or position.

8. The term "**IDX**" means Internet Data Exchange.

9. The term "**Messaging Application**" refers to any electronic method used by the Association and its employees to communicate with each other or entities outside the Association for business purposes. "Messaging Application" include platforms for email, chats, instant messages, text messages, and other methods of group and individual communication (e.g., Microsoft Teams, Slack). "Messaging Application" may overlap with "Collaborative Work Environment."

10. The term "**MLS**" means multiple-listing service.

11. The term "***Moehrl* Antitrust Litigation**" means the lawsuit brought in the United States District Court for the Northern District of Illinois captioned *Moehrl v. National Association of Realtors®*, 19-1610 & 19-2544.

12. The term "**Northwest MLS**" means the Northwest Multiple Listing Service based in Washington.

13. The term "**person**" includes the Association and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

14. The term "**plans**" includes proposals, recommendations, or considerations, whether finalized or adopted.

15. The term "**policy, guideline, rule, or practice**" includes both optional or recommended policies, guidelines, rules, or practices.

16. The terms "**Sensitive Personally Identifiable Information**" or "**Sensitive PII**" mean information or data that would identify an individual, including a person's Social Security Number; or a person's name, address, or phone number in combination with one or more of their (a) date of birth; (b) driver's license number or other state identification number, or a foreign country equivalent; (c) passport number; (d) financial account number; or (e) credit or debit card number.

17. The terms "**Sensitive Health Information**" or "**SHI**" mean information or data about an individual's health, including medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

18. The term "***Sitzer* Antitrust Litigation**" means the lawsuit brought in the United States District Court for the Western District of Missouri captioned *Sitzer v. National Association of Realtors®*, 19-332.

5

19. The term "**VOW**" means Virtual Office Website.

## INSTRUCTIONS

*Timing*

1. All references to year refer to calendar year. Unless otherwise specified, this Demand calls for documents, data, and other information created, altered, or received since January 1, 2018. For interrogatory responses, submit a separate response for each year or year-to-date unless otherwise specified. If calendar-year data are not available, supply fiscal-year data indicating the twelve-month period covered, and submit the best estimate of calendar-year data.

*Production Format*

2. Department representatives must approve the format and production method of any documents, data, or other information before the Association makes an electronic production in response to this Demand. Before preparing its production, the Association must contact the Department to explain what materials are available and how they are stored. This discussion must include Association personnel who are familiar with its electronically stored information and databases/data sets.

3. Before using software or technology (including search terms, predictive coding, de-duplication, or similar technologies) to identify or eliminate documents, data, or information potentially responsive to this Demand, the Association must submit a written description of the method(s) used to conduct any part of its search. In addition, for any process that relies on search terms to identify or eliminate documents, the Association must submit: (a) a list of proposed terms; (b) a tally of all the terms that appear in the collection and the frequency of each term; (c) a list of stop words and operators for the platform being used; and (d) a glossary of industry and Association terminology. For any process that instead relies on predictive coding to identify or eliminate documents, you must include (a) confirmation that subject-matter experts will be reviewing the seed set and training rounds; (b) recall, precision, and confidence-level statistics (or an equivalent); and (c) a validation process that allows for Department review of statistically significant samples of documents categorized as non-responsive documents by the algorithm.

4. If the Department agrees to narrow the scope of this Demand to a limited group of custodians, a search of each custodian's files must include files of their predecessors; files maintained by their assistants or under their control; and common or shared databases or data sources maintained by the Association that are accessible by each custodian, their predecessors, or assistants.

5. Submit responses to this Demand in a reasonably usable format as required by the Department in the letter sent in connection with this Demand. Documents must be complete and unredacted, except for privilege and for any Sensitive Personally Identifiable Information or Sensitive Health Information redacted pursuant to Instruction

      6. Documents must be submitted as found and ordered in the Association's files and must not be shuffled or otherwise rearranged. The Association is encouraged to submit copies of hard-copy documents electronically (with color hard copies where necessary to interpret the document) in lieu of producing original hard-copy documents. Unless otherwise agreed to by the Department, produce electronic documents in electronic form only. Electronic productions must be free of viruses. The Department will return any infected media for replacement, which may delay the Association's date of compliance with this Demand.

6.    Do not produce any Sensitive PII or SHI before discussing the information with Department representatives. If any document responsive to a particular specification contains Sensitive PII or SHI that is not responsive to that specification, redact the unresponsive Sensitive PII or SHI before producing the document. Provide any index of documents prepared by any person in connection with your response to this Demand that lists such redacted documents by document control number. If the index is available in electronic form, provide it in that form.

7.    Provide any index of documents prepared by any person in connection with your response to this Demand. If the index is available in electronic form, provide it in that form.

8.    Data called for by this Demand must be submitted electronically in a reasonably useable compilation that will allow the Department to access the information it contains. Producing a database or data set in its entirety often does not satisfy this requirement. For the Department to be able to access and interpret data, the Association must provide, for each database, a description of each database or data set to be produced, including: (1) its software platform; (2) its type (e.g., flat, relational, or enterprise); (3) the sources (e.g., other databases or individuals) used to populate the database; (4) for relational or enterprise databases, documents specifying the relationships among tables (e.g., an entity relationship diagram); (5) any query forms; (6) any regularly prepared reports produced from that database; (7) the entity within the Association that maintains and updates the data; and (8) a Data Dictionary and any other keys that decode or interpret the data, including, for each table in the database:

    a.    the name of the table;

    b.    a general description of the information contained;

    c.    the size in both number of records and megabytes;

    d.    a list of fields;

    e.    the format, including variable type and length, of each field;

    f.    a definition for each field as it is used by the Association, including the meanings of all codes that can appear as field values;

    g.    the fields that are primary keys for the purpose of identifying a unique observation;

    h.    the fields that are foreign keys for the purpose of joining tables; and

    i.    an indication of which fields are populated.

It is likely that only a subset or compilation of the contents of any particular database or data set will need to be produced. After providing the information above, counsel and knowledgeable personnel from the Association should discuss with Department representatives what constitutes a sufficient production from the database or data set in a reasonably useable format.

9.    The Association must continue to preserve documents or data contained in disaster recovery systems or backup media that may contain information responsive to this Demand. If you have any questions, please contact the Department representative identified below to discuss your obligation to preserve or search backup media.

10.    Produce all non-privileged portions of any responsive document (including non-privileged or redacted attachments) for which a privilege claim is asserted. Each document withheld in whole or in part from production based on a claim of privilege must be assigned a unique privilege identification number and separate fields representing the beginning and ending document control numbers and logged as follows:

    a.    Each log entry must contain, in separate fields: privilege identification number; beginning and ending document control numbers; parent document control numbers; attachments document control numbers; family range; number of pages; all authors; all addressees; all blind copy recipients; all other recipients; date of the document; an indication of whether it is redacted; the basis for the privilege claim (e.g., attorney-client privilege), including the anticipated litigation for any work-product claim and the underlying privilege claim if subject to a joint-defense or common-interest agreement; and a description of the document's subject matter sufficiently detailed to enable the Department to assess the privilege claim and the facts relied upon to support that claim.

    b.    Include a separate legend containing an alphabetical list (by last name) of each name on the privilege log, identifying titles, company or association affiliations, the members of any group or email list on the log (e.g., the Board of Directors) and any name variations used for the same individual.

    c.    On the log and the legend, list all attorneys acting in a legal capacity with the designation ESQ after their name (include a space before and after the "ESQ").

    d.    Produce the log and legend in electronic form that is both searchable and sortable. Upon request, the Association must submit a hard copy of the log and legend.

    e.    Department representatives will provide an exemplar and template for the log and legend upon request.

    f.    Any document created by the Association's in-house counsel or the Association's outside counsel that has not been distributed outside the Association's in-house counsel's office or the Association's outside counsel's law firm does not have to be logged. But if the document was distributed to any attorney who does not work exclusively in the Association's in-house counsel's office or who has any business responsibilities, it must be logged. Unlogged documents are subject to any preservation obligations the Association or counsel may have.

11.    If the Association is unable to answer a question fully, it must supply all available information; explain why such answer is incomplete; describe the efforts made by the Association to obtain the information; and list the sources from which the complete answer may be obtained. If the information that allows for accurate answers is not available, submit best estimates and describe how the estimates were derived. Estimated data should be followed by the notation "est." If there is no reasonable way for the Association to estimate, provide an explanation.

12.    If documents, data, or other information responsive to a particular specification no longer exists for reasons other than the Association's document retention policy, describe the circumstances under which it was lost or destroyed, describe the information lost, list the specifications to which it was responsive, and list persons with knowledge of such documents, data, or other information.

13.    If the Association previously produced a document responsive to this Demand to the Department, it is not required to produced that document again; however, for any such documents, the Association must identify the document control numbers or other identifying information, if document control numbers are not available.

14.    To complete this Demand, the Association must submit the certification on the reverse of the Civil Investigative Demand form, executed by the official supervising compliance with this Demand, and notarized.

Direct any questions the Association has relating to the scope or meaning of anything in this Demand or suggestions for possible modifications thereto Ethan Stevenson at 202-615-4564 or Miriam Vishio at 202-460-6680. The response to this Demand must be addressed to the attention of Miriam Vishio and delivered between 8:30 a.m. and 5:00 p.m. on any business day to 450 Fifth Street, NW, Suite 11100, Washington, DC 20001. If the Association wishes to submit its response by U.S. mail, please call Ethan Stevenson or Miriam Vishio for mailing instructions.