# EXHIBIT 20

# United States Department of Justice

**Antitrust Division**
Washington, DC 20530

To:  National Association of Realtors®  
c/o Katie Johnson, General Counsel  
430 N. Michigan Ave.  
Chicago, IL 60611-4087

Civil Investigative  
Demand Number: -29935

This civil investigative demand is issued pursuant to the Antitrust Civil Process Act, 15 U.S.C. §§ 1311-1314, in the course of an antitrust investigation to determine whether there is, has been, or may be a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by conduct, activities, or proposed action of the following nature: Policies, bylaws, rules, guidelines, or practices that may unreasonably restrain competition in the provision of residential real-estate brokerages services in Las Vegas, Nevada and in other metropolitan areas throughout the United States.

You are required by this demand to produce all documentary material described in the attached schedule that is in your possession, custody, or control, and to make it available at your address indicated above for inspection and copying or reproduction by a custodian named below. You are also required to answer the interrogatories on the attached schedule. Each interrogatory must be answered separately and fully in writing, unless it is objected to, in which event the reasons for the objection must be stated in lieu of an answer. Such production of documents and answers to interrogatories shall occur on the  13th  day of   May   , 2019  at 5:00 p.m.

The production of documentary material and the interrogatory answers in response to this demand must be made under a sworn certificate, in the form printed on the reverse side of this demand, by the person to whom this demand is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances relating to such production and/or responsible for answering each interrogatory.

For the purposes of this investigation, the following are designated as the custodian and deputy custodian(s) to whom the documentary material shall be made available and the interrogatory answers shall be submitted: Owen Kendler (custodian) and Steven Kramer and Ethan Stevenson (deputy custodians), U.S. Dept. of Justice, Antitrust Division, Media, Entertainment, and Professional Services Section, 450 Fifth Street NW, Suite 4000, Washington, DC 20530.

Inquiries concerning compliance should be directed to Steven Kramer at 202-307-0997 or Ethan Stevenson at 202-598-8091.

Your attention is directed to 18 U.S.C. § 1505, printed in full on the reverse side of this demand, which makes obstruction of this investigation a criminal offense.

Issued in Washington, D.C., this  12th  day of   April   , 2019 .

_____  
*Assistant Attorney General*

**18 U.S.C. § 1505. Obstruction of proceedings before departments, agencies, and committees**

Whoever, with intent to avoid, evade, prevent, or obstruct compliance, in whole or in part, with any civil investigative demand duly and properly made under the Antitrust Civil Process Act, willfully withholds, misrepresents, removes from any place, conceals, covers up, destroys, mutilates, alters, or by other means falsifies any documentary material, answers to written interrogatories, or oral testimony, which is the subject of such demand; or attempts to do so or solicits another to do so; or

Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress -

Shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both.

**Form of Certificate of Compliance***

I/We have read the provisions of 18 U.S.C. § 1505 and have knowledge of the facts and circumstances relating to the production of the documentary material and have responsibility for answering the interrogatories propounded in Civil Investigative Demand No. _____. I/We do hereby certify that all documentary material and all information required by Civil Investigative Demand No. _____ which is in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted to a custodian named therein.

If any documentary material otherwise responsive to this demand has been withheld or any interrogatory in the demand has not been fully answered, the objection to such demand and the reasons for the objection have been stated in lieu of production or an answer.

Signature _____

Title _____

Sworn to before me this _____ day of _____, 20___.

_____
Notary Public

*In the event that more than one person is responsible for producing the documents and answering the interrogatories, the certificate shall identify the documents and interrogatories for which each certifying individual was responsible. In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided by 28 U.S.C. § 1746.

# CIVIL INVESTIGATIVE DEMAND FOR DOCUMENTS AND ANSWERS TO INTERROGATORIES
# ISSUED TO NATIONAL ASSOCIATION OF REALTORS

Unless otherwise indicated or modified by the Department of Justice, each document demand and interrogatory included in this Civil Investigative Demand requires a complete search of the documents and information in your possession, custody, or control. In the Department's experience, modifications to this Demand may reduce the burden of searching for responsive documents and information in a way that is consistent with the Department's needs. The Association is encouraged to propose such modifications, but all modifications must be agreed to in writing by the Department.

## DOCUMENT DEMANDS

1. Submit all documents relating to the Department's investigation of GLVAR and the Civil Investigative Demand (CID) to the GLVAR , including all communications with GLVAR, the Nevada Association of Realtors®, or any other person relating to the CID or investigation.

2. Submit all documents relating to any Guidance or software:
   (a) prohibiting, restricting, or inhibiting display or publication to consumers (including potential sellers, buyers, clients, or customers) of compensation offered by listing brokers to cooperating brokers;
   (b) requiring listing brokers to make an offer of compensation to buyer brokers in order to list a home on an MLS or conditioning MLS membership or participation on offering or accepting compensation to and from other MLS participants;
   (c) prohibiting buyer brokers from making the submission of an executed offer to purchase contingent on the listing broker's agreement to modify the offer of compensation or using the terms of an offer to purchase to attempt to modify the listing broker's offer of compensation;
   (d) permitting listing brokers, after full disclosure and informed consent of both parties, to simultaneously represent a seller and buyer in a single transaction and receive the offer of compensation;
   (e) permitting realtors® to represent their services as free, provided that the potential for the realtor® to obtain a benefit from a third party is clearly defined;
   (f) restricting or inhibiting any relationship or interaction between MLSs and third-party real-estate platforms that provide information to consumers, such as Zillow;
   (g) enabling or permitting brokers to search for, filter, or exclude MLS listings based on the level or type of cooperative compensation offered by a listing broker;
   (h) prohibiting or restricting brokers from including identification of the listing broker in photographs of a residence listed for sale or in client views of listings;
   (i) inhibiting, restricting, prohibiting, or impeding the negotiation of offers of cooperative compensation between brokers;
   (j) requiring MLS members or participants to be a member of a local association of realtors®;
   (k) restricting, limiting, or prohibiting the copyrighting, distribution, sale, resale or syndication of MLS data;
   (l) encouraging or requiring syndicators, purchasers, or users of MLS data or

  operators of IDX sites, when displaying MLS listings, to separate MLS and non-MLS listings or discriminate between MLS and non-MLS listings;
(m) restricting, limiting, or allowing the restriction or limitation of information contained in listings or entire listings displayed by IDX sites or VOWs; or
(n) affecting any fiduciary duty owed by brokers to customers (including potential buyers, sellers, clients, or customers).

The Association's response to this document demand must include all documents relating to (a) any possible or actual reason, rationale, or basis for adoption, approval, maintenance, revision, or retention of any such Guidance regardless of the date that such documents were prepared, created, sent, altered, or received by the Association; (b) any complaint about or any request to change, eliminate, or not enforce any such Guidance; (c) any possible or actual implementation or enforcement of any such Guidance; (d) any possible or actual benefit, drawback, advantage, disadvantage, or effect of any such Guidance; (e) any discussion or communication relating to any such Guidance; (f) any training session, video, or materials relating to any such Guidance; or (g) any possible or actual antitrust or other legal or ethical issue relating to any such Guidance.

3. Submit all documents relating to lower, reduced, or discounted real-estate brokers' offers of compensation or commissions, or to any particular real-estate broker's lower, reduced, or discounted offer of compensation or commissions, whether the lower, reduced, or discounted commission pertains to a listing broker or to a buyer broker, or to both, including all documents relating to:
   (a) discouraging or inhibiting lowering, reducing, or discounting commissions, including suggesting that a particular compensation amount is appropriate;
   (b) boycotting, refusing or declining to deal with brokers that offer lower, reduced, or discounted offers of compensation to buyer brokers;
   (c) any buyer broker declining or refusing to display, present, or provide information on any property to any buyer client because of the amount of compensation the buyer broker would receive; or
   (d) any buyer broker using a residential purchase agreement to demand or require that the listing broker increase or otherwise change the listing commission or amount of compensation offered.

4. Submit all documents relating to encouraging or recommending that buyer brokers contract or reach agreement with any client who is a potential buyer of real estate, including all documents relating to any:
   (a) possible or actual reason, rationale, or basis for encouraging or recommending that buyer brokers contract or reach agreement with any client who is a potential buyer of real estate; or
   (b) training session, video, or materials relating to encouraging or recommending that buyer brokers contract or reach agreement with any client who is a potential buyer of real estate.

5. Submit all documents relating to possible or actual rebates of any listing- or buyer-broker commission or any offer of any gift card to any home seller or buyer, including all documents relating to communications relating to such rebates or gift-card offers with any personnel of any state regulatory agency or legislature, or of any personnel of any association of realtors®.

6. Submit all documents prepared, sent, or received since January 1, 2014, relating to any prohibition, restriction, or inhibition by REcolorado of the display or publication to consumers (including potential sellers, buyers, clients, or customers) of compensation offered by listing brokers to cooperating brokers.

7. Submit all communications between NAR and REcolorado, sent or received since January 1, 2014, regarding REcolorado's enforcement of MLS rules to prohibit, restrict, or inhibit the display or publication to consumers (including potential sellers, buyers, clients, or customers) of compensation offered by listing brokers to cooperating brokers.

8. Submit one copy of each edition of NAR's publication titled, "The Answer Book – The Source for Realtor® Association Management Leaders" published or in effect since January 1, 2012.

9. For each MLS or association of realtors® affiliated with the Association identified in your answer to Interrogatory 1, submit the latest documents in your Association's possession, custody, or control stating, estimating, or analyzing the percentage of real-estate brokers in the MLS's or association's service area that are either members of that association of realtors® or participants in the that local MLS.

10. Submit all studies either performed or commissioned by NAR relating to broker commissions and all documents discussing or relying on any such study.

11. Submit all documents, regardless of the date that they were prepared, created, sent, altered, or received by the Association, relating to possibly or actually decoupling or uncoupling the listing broker and buyer broker, or to the necessity or purpose of coupling the listing broker and buyer broker.

12. Submit documents sufficient to show all of NAR's rules, policies, and practices existing currently or at any time during 2018 and 2019, relating to:
    (a) the retention and destruction of documents, including the retention, storage, deletion, and archiving of electronically stored information, including e-mail; or
    (b) the use of personal electronic devices for NAR business.

## WRITTEN INTERROGATORIES

1. Identify all local associations of realtors® and local MLSs currently affiliated with the Association, including the address for each local association identified.

2. To the extent not fully reflected in documents produced in response to this Demand, describe NAR's rules, policies, and practices existing currently or at any time during 2018 and 2019, relating to:

    (a) the retention and destruction of documents, including the retention, storage, deletion, and archiving of electronically stored information, including e-mail; or
    (b) the use of personal electronic devices for NAR business.

# DEFINITIONS

The following definitions apply for the purposes of this Demand:

A. The terms **"the Association,"** or **"NAR"** mean the National Association of Realtors®, and all present and former officers, directors, agents, employees, consultants, or other persons acting for or on behalf of any of it.

B. The term **"agreement"** means any understanding, formal or informal, written or unwritten.

C. The term **"any"** means each and every.

D. The term **"broker"** means a person licensed by a state to provide real-estate brokerage services to either a buyer or seller in a real-estate transaction and includes any listing agent or buyer agent or sales associate who is affiliated with a broker.

E. The term **"collaborative work environment"** means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, collaborative work environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative work environments include Microsoft Sharepoint sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems (CMS) (e.g., Drupal), wikis, and blogs.

F. The term **"communication"** means any formal or informal disclosure, transfer, or exchange of information or opinion, however made.

G. The term **"documents"** means all written, printed, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Association, including information stored on social media accounts like Twitter or Facebook, chats, instant messages, and documents contained in collaborative work environments and other document databases. "Documents" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document. Unless otherwise specified, "documents" excludes bills of lading, invoices in non-electronic form, purchase orders, customs declarations, and other similar documents of a purely transactional nature; architectural plans and engineering blueprints; and documents solely relating to environmental, tax, human resources, OSHA, or ERISA issues.

H. The term **"documents sufficient to show"** means documents sufficient to provide the Department with a true and correct disclosure of the factual matter requested.

I. The term **"GLVAR"** means the Greater Las Vegas Association of Realtors, each of its subsidiaries, and affiliates, each other person directly or indirectly, wholly or in part,

5

owned or controlled by it, including the Greater Las Vegas Association of Realtor Multiple Listing Service, Inc. (GLVARMLS), and each partnership or joint venture to which any of them is a party, and all present and former officers, directors, agents, employees, consultants, or other persons acting for or on behalf of any of them.

J. The term "**Guidance**" means any policy, guideline, bylaw, rule, or practice.

K. The term "**IDX**" means Internet Data Exchange.

L. The term "**including**" means including but not limited to.

M. The term "**MLS**" means multiple-listing service.

N. The term "**person**" includes the Association and means any natural person, corporate entity, partnership, firm, association, sole proprietorship, joint venture, governmental entity, or trust.

O. The term "**REcolorado**" means REcolorado, each of its subsidiaries, and affiliates, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each partnership or joint venture to which any of them is a party, and all present and former officers, directors, agents, employees, consultants, or other persons acting for or on behalf of any of it.

P. The term "**relating to**" means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, reflecting, commenting or reporting on, mentioning, identifying, stating, or referring or alluding to.

Q. The term "**VOW**" means Virtual Office Website.

R. The terms "**and**" and "**or**" have both conjunctive and disjunctive meanings. The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted.

## INSTRUCTIONS

*Timing*

A. All references to year refer to calendar year. Unless otherwise specified, this Demand calls for documents, data, and other information prepared, created, sent, altered, or received by the Company since January 1, 2017.

For interrogatory responses, submit a separate response for each year or year-to-date unless otherwise specified. If calendar-year data are not available, supply the Association's fiscal-year data indicating the twelve-month period covered, and submit the Association's best estimate of calendar-year data.

6

***Production Format***

B. Department representatives must approve the format and production method of any documents, data, or other information before the Association makes an electronic production in response to this Demand. Before preparing its production, the Association must contact the Department to explain what materials are available and how they are stored. This discussion must include Association personnel who are familiar with its electronically stored information and databases/data sets.

C. Before using software or technology (including search terms, predictive coding, de-duplication, or similar technologies) to identify or eliminate documents, data, or information potentially responsive to this Demand, the Association must submit a written description of the method(s) used to conduct any part of its search. In addition, for any process that relies on search terms to identify or eliminate documents, the Association must submit: (a) a list of proposed terms; (b) a tally of all the terms that appear in the collection and the frequency of each term; (c) a list of stop words and operators for the platform being used; and (d) a glossary of industry and Association terminology. For any process that instead relies on predictive coding to identify or eliminate documents, you must include (a) confirmation that subject-matter experts will be reviewing the seed set and training rounds; (b) recall, precision, and confidence-level statistics (or an equivalent); and (c) a validation process that allows for Department review of statistically significant samples of documents categorized as non-responsive documents by the algorithm.

D. If the Department agrees to narrow the scope of this Demand to a limited group of custodians, a search of each custodian's files must include files of their predecessors; files maintained by their assistants or under their control; and common or shared databases or data sources maintained by the Association that are accessible by each custodian, their predecessors, or assistants.

E. Submit responses to this Demand in a reasonably usable format as required by the Department in the letter sent in connection with this investigation. Documents must be complete and unredacted, except for privilege. Documents must be submitted as found and ordered in the Association's files and must not be shuffled or otherwise rearranged. The Association is encouraged to submit copies of hard-copy documents electronically (with color hard copies where necessary to interpret the document) in lieu of producing original hard-copy documents. Absent a Department request, produce electronic documents in electronic form only. Electronic productions must be free of viruses. The Department will return any infected media for replacement, which may delay the Association's date of compliance with this Demand.

F. Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") before discussing the information with the Department representatives. If any document responsive to a particular request contains Sensitive PII or SHI that is not responsive to that request, redact the unresponsive Sensitive PII or SHI before producing the document. To avoid any confusion about the reason for the redaction, produce a list of such redacted

documents by document control number. Sensitive PII includes a person's Social Security Number; or a person's name, address, or phone number in combination with one or more of their: (a) date of birth; (b) driver's license number or other state identification number, or a foreign country equivalent; (c) passport number; (d) financial account number; or (e) credit or debit card number. Sensitive Health Information includes medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

G. Provide any index of documents prepared by any person in connection with your response to this Demand. If the index is available in electronic form, provide it in that form.

H. The Association must continue to preserve documents or data contained in disaster recovery systems or back-up media that may contain information responsive to this Demand. Please contact the Division's representative to discuss your obligation to preserve back up media.

I. Produce all non-privileged portions of any responsive document (including non-privileged or redacted attachments) for which a privilege claim is asserted. Each document withheld in whole or in part from production based on a claim of privilege must be assigned a unique privilege identification number and separate fields representing the beginning and ending document control numbers and logged as follows:

   a. Each log entry must contain, in separate fields: privilege identification number; beginning and ending document control numbers; parent document control numbers; attachments document control numbers; family range; number of pages; all authors; all addressees; all blind copy recipients; all other recipients; date of the document; an indication of whether it is redacted; the basis for the privilege claim (e.g., attorney-client privilege), including the anticipated litigation for any work-product claim and the underlying privilege claim if subject to a joint-defense or common-interest agreement; and a description of the document's subject matter sufficiently detailed to enable the Department to assess the privilege claim and the facts relied upon to support that claim.

   b. Include a separate legend containing an alphabetical list (by last name) of each name on the privilege log, identifying titles, company affiliations, the members of any group or email list on the log (e.g., the Board of Directors) and any name variations used for the same individual.

   c. On the log and the legend, list all attorneys acting in a legal capacity with the designation ESQ after their name (include a space before and after the "ESQ").

   d. Produce the log and legend in electronic form that is both searchable and sortable. Upon request, the Association must submit a hard copy of the log and legend.

   e. Department representatives will provide an exemplar and template for the log and legend upon request.

Any responsive document asserted to be privileged in its entirety created by the Association's in-house counsel or the Association's outside counsel that has not been distributed outside the Association's in-house counsel's office or the Association's outside counsel's law firm does not have to be logged. But if the document was distributed to any attorney who does not work exclusively in the Association's in-house counsel's office or who has any business responsibilities, it must be logged. Unlogged documents are subject to any preservation obligations the Association or counsel may have.

J. If the Association is unable to answer a question fully, it must supply all available information; explain why such answer is incomplete; describe the efforts made by the Association to obtain the information; and list the sources from which the complete answer may be obtained. If the information that allows for accurate answers is not available, submit best estimates and describe how the estimates were derived. Estimated data should be followed by the notation "est." If there is no reasonable way for the Association to estimate, provide an explanation.

K. If documents, data, or other information responsive to a particular request no longer exists for reasons other than the Association's document-retention policy, describe the circumstances under which it was lost or destroyed, describe the information lost, list the specifications to which it was responsive, and list persons with knowledge of such documents, data, or other information.

L. To complete this Demand, the Association must submit the certification on the reverse of the Civil Investigative Demand form, executed by the official supervising compliance with this Demand, and notarized.

Direct any questions you have relating to the scope or meaning of anything in this Demand or suggestions for possible modifications thereto to Steven Kramer at (202) 307-0997 or Ethan Stevenson at (202) 598-8091. The response to this Demand must be addressed to the attention of Steven Kramer and delivered between 8:30 a.m. and 5:00 p.m. on any business day to 450 Fifth Street, NW, Suite 4000, Washington, DC 20001. If the Association wishes to submit its response by U.S. mail, please call Steven Kramer or Ethan Stevenson for mailing instructions.