**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF REALTORS, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-cv-2406 (TJK) |
| | ) | |
| UNITED STATES, et al. | ) | |
| | ) | |
| Respondents | ) | |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITION TO SET ASIDE,**
**OR IN THE ALTERNATIVE MODIFY, CIVIL INVESTIGATIVE DEMAND NO. 30729**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 2

    I.      Statutory and regulatory background ..................................................................... 2

    II.     Factual background ................................................................................................ 3

          A.     The Antitrust Division's investigation of NAR ......................................... 3

          B.     Settlement discussions between the Division and NAR ............................ 5

          C.     The Division's withdrawal of the Proposed Final Judgment ..................... 9

          D.     The Division's new investigation of NAR's practices .............................. 9

ARGUMENT ...................................................................................................................... 10

    I.      Legal standard applicable to a motion to quash an administrative subpoena ....... 10

    II.     The Division had authority to issue the CID and never made any commitment that would preclude the present investigation. ............................................................... 11

          A.     The Division made no commitment to refrain from opening a new investigation into NAR's practices. ......................................................... 11

          B.     The Division repeatedly informed NAR that it would not make any commitment to refrain from investigating NAR in the future in accordance with DOJ policy. ........................................................................................ 12

    III.    The CID is sufficiently definite and seeks information relevant to the Division's investigation. .................................................................................................... 15

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Associated Container Transp. (Austl.) Ltd. v. United States*,
   705 F.2d 53 (2d Cir. 1983) .................................................................................. 16

*Austl./E. U.S.A. Shipping Conf. v. United States*,
   Civil Action No. 80-1830, 1981 WL 2048 (D.D.C. Apr. 10, 1981) ........................ 1

*EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*,
   719 F.2d 1426 (9th Cir. 1983) (en banc) .............................................................. 16

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
   898 F. Supp. 2d 171 (D.D.C. 2012) ....................................................................... 19

\* *FTC v. Invention Submission Corp.*,
   965 F.2d 1086 (D.C. Cir. 1992) ................................................................... 15, 16, 17

*FTC v. Ken Roberts Co.*,
   276 F.3d 583 (D.C. Cir. 2001).............................................................................. 15

\* *FTC v. Texaco, Inc.*,
   555 F.2d 862 (D.C. Cir. 1977) (en banc) .......................................................... 10, 16

*In re High Fructose Corn Syrup Antitrust Litig.*,
   295 F.3d 651 (7th Cir. 2002) .................................................................................. 3

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997)............................................................................... 17

*Moehrl v. Nat'l Ass'n of Realtors*,
   492 F. Supp. 3d 768 (N.D. Ill. 2020) ..................................................................... 4

*Phx. Bd. of Realtors, Inc. v. U.S. Dep't of Just.*,
   521 F. Supp. 828 (D. Ariz. 1981).......................................................................... 19

*Reifert v. S. Cent. Wis. MLS Corp.*,
   450 F.3d 312 (7th Cir. 2006) ................................................................................... 5

*Resol. Tr. Corp. v. Frates*,
   61 F.3d 962 (D.C. Cir. 1995)................................................................................. 17

*Resol. Tr. Corp. v. Walde*,
   18 F.3d 943 (D.C. Cir. 1994)................................................................................. 16

*SEC v. Lavin*,
   111 F.3d 921 (D.C. Cir. 1997)................................................................................. 1

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
  988 F.3d 690 (4th Cir. 2021) ............................................................ 2

*U.S. EEOC v. George Washington Univ.*,
  Case No. 17-cv-1978 (CKK/GMH), 2020 WL 3489478 (D.D.C. June 26, 2020) 17

\* *U.S. Int'l Trade Comm'n v. ASAT, Inc.*,
  411 F.3d 245 (D.C. Cir. 2005) ..........................................................10

*United States v. Armour & Co.*,
  402 U.S. 673 (1971) ......................................................................... 15

\* *United States v. Hill*,
  319 F. Supp. 3d 44 (D.D.C. 2018) ....................................................10

*United States v. Inst. for Coll. Access & Success*,
  27 F. Supp. 3d 106 (D.D.C. 2014) .................................................... 10

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950) ......................................................................... 15

*United States v. R. Enters., Inc.*,
  498 U.S. 292 (1991) ......................................................................... 16

**FEDERAL STATUTES**

15 U.S.C. § 1312 ....................................................................................1, 2, 11

15 U.S.C. § 1314 .................................................................................... 1, 2

Antitrust Civil Process Act (ACPA), 15 U.S.C. §§ 1311–1314 ..................... 1, 2

Antitrust Procedures and Penalties Act (Tunney Act), 15 U.S.C. § 16.............................. 9

Sherman Act, 15 U.S.C. §§ 1–7 ............................................................... 2

**FEDERAL REGULATIONS**

28 C.F.R. § 50.6 ................................................................................... 18

**LOCAL RULES**

Loc. Civ. R. 40.3(a)(1) ............................................................................ 1

**OTHER AUTHORITIES**

Antitrust Div., U.S. Dep't of Just., Antitrust Division Manual (5th ed. 2012) ...... 2

Nat'l Ass'n of Realtors, Handbook on Multiple Listing Policy (2021) ................ 4

Nat'l Ass'n of Realtors, MLS Clear Cooperation Policy ......................................... 4

Noah Buhayar, *Real Estate Agents Target Record $100 Billion as Home Sales Boom*, Bloomberg News, July 9, 2021 ............................................................ 3

Panle Jia Barwick & Maisy Wong, Competition in the Real Estate Brokerage Industry: A Critical Review (2019) .................................................. 3

Press Release, Dep't of Just., Justice Department Withdraws from Settlement with the National Association of Realtors (July 1, 2021) .................................... 9

Real Estate Standards Org., Frequently Asked Questions About MLSs.............. 3

Swanepoel T3 Grp., D.A.N.G.E.R. Report .................................................. 18

## PRELIMINARY STATEMENT

The Antitrust Division of the U.S. Department of Justice ("Antitrust Division" or "Division") properly issued Civil Investigative Demand 30729 ("the CID") in support of an investigation into potentially anticompetitive practices in the real estate industry. Petitioner National Association of Realtors (NAR) does not meet its heavy burden to demonstrate reason to set aside or modify the CID.

The CID is not barred by any prior agreement between the United States and NAR. In 2020, the United States and NAR discussed, and the United States eventually filed, a proposed settlement that would have culminated in entry of a consent judgment by the Court. But no consent judgment was ever entered. In the course of discussing settlement, the Division did agree to issue a closing letter confirming to NAR that it had closed an investigation of two NAR practices. But that closing letter did not preclude any future investigation by the United States, nor did the Division agree to any limitation on future investigations. Indeed, the Division made clear to NAR at the time that it was unable to agree to any such limitation.

The CID also complies with the standards of § 1312 of the Antitrust Civil Process Act (ACPA), 15 U.S.C. §§ 1311–1314, because it properly seeks information relevant to the Division's antitrust investigation into NAR's and other real estate associations' rules, policies, and practices and is reasonable in scope.[1]

The Court should deny NAR's petition.

---

[1] As discussed in Background section I below, the ACPA prescribes a process for petitioning to set aside or modify CIDs. *See* 15 U.S.C. § 1314(b), (e); *infra* p. 2. An action of this kind typically takes the form of a summary proceeding and is docketed as a miscellaneous action. *Cf.* Loc. Civ. R. 40.3(a)(1) n.1; *SEC v. Lavin*, 111 F.3d 921, 926 (D.C. Cir. 1997) ("[S]ubpoena enforcement proceedings are generally summary in nature . . . ."); *Austl./E. U.S.A. Shipping Conf. v. United States*, Civil Action No. 80-1830, 1981 WL 2048, at *2 (D.D.C. Apr. 10, 1981) (holding that the ACPA calls for the kind of summary proceedings typical of administrative subpoena enforcement).

**BACKGROUND**

I.    **Statutory and regulatory background**

The Antitrust Division promotes competition in the U.S. economy through enforcement of the Federal antitrust laws and other laws relating to the protection of competition, including by investigating possible violations of the Sherman Act, 15 U.S.C. §§ 1–7, issuing and enforcing civil investigative demands (CIDs), and prosecuting all litigation that arises out of such investigations. *See* ANTITRUST DIV., U.S. DEP'T OF JUST., ANTITRUST DIVISION MANUAL I-2 (5th ed. 2012) [*hereinafter* ANTITRUST DIVISION MANUAL], https://www.justice.gov/atr/division-manual. A CID is a form of administrative subpoena used in civil antitrust investigations. The Antitrust Civil Process Act (ACPA), 15 U.S.C. §§ 1311–1314, governs CIDs.

Under the ACPA, the Division may serve a CID on any person if there is "reason to believe" that the person may have documentary material or information "relevant to a civil antitrust investigation." *Id.* § 1312(a). The ACPA also sets forth procedures for petitioning for enforcement of, or for an order modifying or setting aside, a CID and provides for federal district court jurisdiction over such petitions. *Id.* § 1314.

In the course of a civil investigation, the Division may decide that it should close an investigation. At the request of parties who are the subject of an investigation, the Division may issue a "closing letter" to confirm that the parties no longer have obligations to preserve documents or actively respond to currently pending CIDs. *See* ANTITRUST DIVISION MANUAL III-21 ("When the matter is closed, staff should notify the subjects of the investigation . . . ."). But closure of an investigation does not reflect any conclusion by the Division on the merits of the practices or conduct under investigation. *Cf. Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 713–14 (4th Cir. 2021) (holding that a decision by the Department of Justice not to bring enforcement action did not amount to a determination that the contested merger was

lawful); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664 (7th Cir. 2002)
(holding that lack of action by the Department of Justice against an alleged price-fixing
conspiracy did not amount to a determination that the disputed conduct was lawful).

## II.   Factual background

### A.   The Antitrust Division's investigation of NAR

The CID requests documents and responses to interrogatories about NAR rules, policies,
and practices that, among other things, restrict how real estate agents can market properties,
dictate how real estate commissions are set, and impede commission negotiations. These rules
may have anticompetitive effects such as raising the fees that homebuyers pay in commission to
real estate agents and limiting consumer choice. This is important because every year, millions of
Americans hire real estate agents to help them purchase homes. In 2021, real estate agents are
expected to collect more than $100 billion in commissions. *See, e.g.*, Noah Buhayar, *Real Estate
Agents Target Record $100 Billion as Home Sales Boom*, BLOOMBERG NEWS, July 9, 2021,
https://www.bloomberg.com/news/articles/2021-07-09/real-estate-agents-eye-record-100-billion
-as-home-sales-boom. Recent technological advances have spurred innovation and price
competition across other sectors of the economy. Yet real estate commissions have barely budged
as a percentage of home prices and have actually *increased* as home prices have outpaced
inflation. *See* PANLE JIA BARWICK & MAISY WONG, COMPETITION IN THE REAL ESTATE
BROKERAGE INDUSTRY: A CRITICAL REVIEW 6–7 (2019), https://www.brookings.edu/wp-content
/uploads/2019/12/ES-12.12.19-Barwick-Wong.pdf. Even a modest injection of competition into
real estate brokerage could save consumers billions of dollars per year.

In most U.S. real estate markets, nearly all homes sold are listed on a NAR-affiliated
multiple listing service (MLS). *See, e.g.*, REAL ESTATE STANDARDS ORG., FREQUENTLY ASKED
QUESTIONS ABOUT MLSS, https://www.reso.org/blog/mls-faq/ (stating that "[m]ore than 80

percent of homes sold in the U.S. are on the MLS," that there were 597 MLSs in the United States as of 2020, and that "[m]ost MLSs are owned by the REALTOR® [that is, NAR-affiliated] association that formed them"). NAR issues rules that affiliated MLSs and, in turn, member real estate agents follow. *See Moehrl v. Nat'l Ass'n of Realtors*, 492 F. Supp. 3d 768, 773–74 (N.D. Ill. 2020).

Among those rules and policies are NAR's Participation Rule and its Clear Cooperation Policy. NAR's Participation Rule requires agents listing homes on an MLS to "make blanket unilateral offers of compensation to the other MLS participants." NAT'L ASS'N OF REALTORS, HANDBOOK ON MULTIPLE LISTING POLICY 115 (2021), https://cdn.nar.realtor/sites/default/files /documents/2021_NAR_HMLP_210112.pdf. An agent representing a buyer collects the offered compensation when the buyer purchases the home. This means that listing agents (that is, seller agents) and home sellers set the price of buyer-agent services. Because the price-setting is taken out of the buyer agent's hands and therefore the buyer agents do not compete on price, this rule raises antitrust concerns, including that buyer-agent fees may be higher than they would otherwise be in conditions of competition, and buyer agents may "steer" their clients away from properties with low buyer-agent commissions.

NAR's Clear Cooperation Policy requires members of an MLS to list a home on the MLS within "one . . . business day of marketing a property to the public." NAT'L ASS'N OF REALTORS, MLS CLEAR COOPERATION POLICY, https://www.nar.realtor/about-nar/policies/mls-clear -cooperation-policy. NAR's Clear Cooperation Policy restricts the choices sellers have in marketing their properties. Sellers may have many reasons to list a home off the MLS, including that doing so may allow them to avoid paying higher commission rates or to protect their privacy. But under the Clear Cooperation Policy, real estate brokers often cannot market

properties outside the MLS unless they leave the MLS entirely, which agents are reluctant to do. *See, e.g.*, *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 317 (7th Cir. 2006) ("[I]t is impossible to perform the tasks of a real estate agent . . . in the relevant geographic area without using SCWMLS.").

The Antitrust Division began to investigate NAR in March 2019. In April 2019 and June 2020, the Division issued CIDs in connection with its investigation, numbered 29935 and 30360, respectively. The CIDs included inquiries concerning several NAR policies, including the Participation Rule and the Clear Cooperation Policy.

> **B.** **Settlement discussions between the Division and NAR**

At various points during the Division's 2019–2020 investigation of NAR, the Division and NAR engaged in settlement talks. *See, e.g.*, NAR Pet. ¶ 25. Throughout these discussions, the Division repeatedly made clear that it could not agree to any settlement that purported to curtail its authority to investigate potentially anticompetitive NAR policies in the future.

The round of settlement talks that resulted in the now-withdrawn Proposed Final Judgment began on July 6, 2020, when NAR's counsel sent Assistant Attorney General for Antitrust Makan Delrahim a settlement proposal. *See* Ex. 1 (Letter from William Burck to Makan Delrahim (July 6, 2020)). Among NAR's requested terms were demands that the Division "stipulate that NAR's Participation Rule would not be subject to further investigation any time in the next ten years" and publicly state that it was closing its present investigations "because it has not concluded that the Participation Rule or the Clear Cooperation Policy causes harm to competition." Ex. 1 at 5.

Deputy Assistant Attorney General Michael Murray replied to NAR's counsel on July 13, 2020. DAAG Murray explained that "aspects of your offer, such as a commitment to not challenge NAR rules and policies in the future, are a nonstarter, especially in light of

longstanding Department policies concerning settlements that affect future potential

investigations." Ex. 2 at 1 (Letter from Michael Murray to William Burck (July 13, 2020)).

On July 14, 2020, NAR modified its settlement proposal, demanding that the Division

agree, among other things, that "any changes to the Participation Rule and/or the Clear

Cooperation Policy, along with the other commitments by NAR discussed [previously in the

letter], will completely address all of the Division's concerns and that the Division will close its

investigation." Ex. 3 at 2 (Letter from William A. Burck to Michael Murray (July 14, 2020)). In

the Division's July 29, 2020, response, DAAG Murray stated that the Division was willing to

close its investigation into the Participation Rule but stressed that it was *not* willing to commit to

refrain from further investigation or action against NAR:

> Should NAR be willing to accept these terms and the Court enters a resulting
> consent decree as a final judgment, the Division is willing to close its
> investigation into NAR's Participation Rule. Consistent with what we have
> previously noted, however, we cannot commit to never challenge NAR rules and
> policies in the future in light of longstanding Department policies on such
> commitments.

Ex. 4 at 1 (Letter from Michael Murray to William Burck (July 29, 2020)).

On August 6, 2020, NAR wrote with revised demands, including a request that the

Division:

> issue a public closing statement indicating that (i) the Division investigated both
> the Participation Rule and the Clear Cooperation Policy; and (ii) the relief
> reflected in the consent decree addresses all of the concerns the Division
> identified with respect to those policies (emphasizing what would be reflected in
> the competitive impact statement submitted as a part of the Tunney Act
> proceedings).

Ex. 5 at 4 (Letter from William Burck to Michael Murray (Aug. 6, 2020)). The Division

responded on August 12, 2020, rejecting this new proposal:

> We cannot, however, agree to the third (and new) term of a public closing
> statement. Doing so would imply that the Division has conducted a complete
> investigation into the competitive effects of the Participation Rule and that NAR

has substantially complied with its CID obligations addressing this issue. Neither is correct and the Division cannot so publicly state. Moreover, as I have written previously, the Division cannot commit to never investigating or challenging NAR's rules and policies in the future.

Ex. 6 at 2 (Letter from Michael Murray to William Burck (Aug. 12, 2020)).

After further negotiations, NAR and the Division agreed to enter into a Stipulation and Proposed Final Judgment that would be filed with the Court. NAR informed the Division that it:

would like DOJ to please confirm, in writing, that when NAR agrees to sign the consent decree, DOJ will send a closing letter to NAR that will confirm:

1. the Division has closed its investigation of the Participation Rule;

2. the Division has closed its investigation of the Clear Cooperation Policy;

3. NAR has no obligation to respond to CID No. 29935 (in its entirety); and

4. NAR has no obligation to respond to CID No. 30360 (in its entirety).

NAR will not agree to the consent decree without prior written assurances that these provisions will be included in the closing letter from DOJ.

NAR Pet. Ex. 6 at 1 (E-mail from Mike Bonanno to Samer Musallam (Oct. 26, 2020, 18:29 EDT)).

The Division responded, "In terms of process, once the consent decree is filed, the Division will notify NAR in its closing letter that it has closed its investigation into the Participation Rule and the Clear Cooperation [Policy] and that NAR will have no obligation to respond to CID Nos. 29935 and 30360." NAR Pet. Ex. 7 at 1 (E-mail from Samer Musallam to Mike Bonanno (Oct. 28, 2020, 16:12 EDT)). Notably, NAR did not request at this time, and the Division did not agree to, any limitation on future investigation of those policies or any other NAR policies.

On November 19, 2020, the Antitrust Division filed a Complaint, Stipulation and Order, and Proposed Final Judgment with the Court. *United States v. Nat'l Ass'n of Realtors*, No. 20-3356 (D.D.C.). The Complaint and Proposed Final Judgment addressed certain NAR practices, but not the Participation Rule or the Clear Cooperation Policy. *See, e.g.*, Complaint ¶ 1, *United States v. Nat'l Ass'n of Realtors*, Case No. 1:20-cv-3356 (D.D.C. Nov. 19, 2020), ECF No. 1; Proposed Final Judgment § IV, *Nat'l Ass'n of Realtors*, Case No. 1:20-cv-3356 (D.D.C. Nov. 19, 2020), ECF No. 4 (addressing NAR rules regarding (a) the display of buyer-agent compensation in the MLS database, (b) representations by buyer agents that their services are free, (c) filtering out lower-commission properties, and (d) access to lockboxes). The Stipulation provided that both parties consented to entry of the Proposed Final Judgment, but it expressly stated that "[t]he United States may withdraw its consent at any time before the entry of the proposed Final Judgment." Stipulation and Order ¶ 2, *Nat'l Ass'n of Realtors*, Case No. 1:20-cv-3356 (D.D.C. Nov. 19, 2020), ECF No. 5.

The Proposed Final Judgment contained a reservation of rights provision that made clear that the United States remained free to conduct future investigations into NAR:

> Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule or practice adopted or enforced by NAR or any of its Member Boards.

Proposed Final Judgment § XI, *Nat'l Ass'n of Realtors*, Case No. 1:20-cv-3356 (D.D.C. Nov. 19, 2020).

On the same day that the Division filed the Complaint and Proposed Final Judgment, the Antitrust Division sent a closing letter to NAR. That letter read as follows:

> This letter is to inform you that the Antitrust Division has closed its investigation into the National Association of REALTORS' Clear Cooperation Policy and Participation Rule. Accordingly, NAR will have no obligation to

respond to CID Nos. 29935 and 30360 issued on April 12, 2019 and June 29, 2020, respectively.

No inference should be drawn, however, from the Division's decision to close its investigation into these rules, policies or practices not addressed by the consent decree.

NAR Pet. Ex. 12 at 1 (Letter from Makan Delrahim to William Burck (Nov. 19, 2020)).

### C.      The Division's withdrawal of the Proposed Final Judgment

The Antitrust Procedures and Penalties Act (Tunney Act), 15 U.S.C. § 16, required a public notice and comment period before any settlement with NAR could be concluded. During the Tunney Act process, the Antitrust Division concluded that the reservation of rights provision in the Proposed Final Judgment should be revised to avoid potential confusion about whether the judgment would foreclose further action by the Division on matters not covered by the judgment. NAR did not agree to the Division's requested modification. The Division consequently withdrew from the Proposed Final Judgment, as permitted under paragraph 2 of the Stipulation, and filed a notice of voluntary dismissal of the complaint. *See* Notice of Withdrawal of Consent to Entry of Proposed Final Judgment, *Nat'l Ass'n of Realtors*, Case No. 1:20-CV-03356-TJK (D.D.C. July 1, 2021), ECF No. 14; Notice of Voluntary Dismissal, *Nat'l Ass'n of Realtors*, Case No. 1:20-CV-03356-TJK (D.D.C. July 1, 2021), ECF No. 15; Press Release, Dep't of Just., Justice Department Withdraws from Settlement with the National Association of Realtors (July 1, 2021), https://www.justice.gov/opa/pr/justice-department-withdraws-settlement-national -association-realtors, *reproduced in* NAR Pet. Ex. 1. Thus, the case ended without entry of a consent judgment or any other judgment.

### D.      The Division's new investigation of NAR's practices

The Division resumed its investigative efforts and, in the course of investigation, issued the CID that is the subject of the present petition, CID 30729. The CID requests information

concerning the Participation Rule, the Clear Cooperation Policy, and other NAR rules, policies, and practices that raise antitrust concerns. The Division invited NAR—both within the text of the CID and in later communications—to discuss any questions or concerns about the scope or meaning of the CID. NAR never identified any request that it found to be unreasonable except for Request 10, which the Division offered to withdraw once NAR explained its concerns. *See* NAR Pet. ¶ 178 n.2.

On September 13, 2021, NAR filed the present petition to set aside or modify the CID. The petition asserts that the Division agreed to refrain from investigating NAR's Participation Rule or Clear Cooperation Policy in the future, and consequently the Division lacked the authority to issue the CID.

## ARGUMENT

### I.  Legal standard applicable to a motion to quash an administrative subpoena

"The subpoenaed party bears the burden of showing that the administrative subpoena is unreasonable; a burden 'not easily met.'" *United States v. Hill*, 319 F. Supp. 3d 44, 47 (D.D.C. 2018) (quoting *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977) (en banc)). The court's role "is a strictly limited one," *id.* (quoting *Texaco, Inc.*, 555 F.2d at 871–72), in light of the "important governmental interest in the expeditious investigation of possible unlawful activity," *Texaco, Inc.*, 555 F.2d at 872.

In evaluating whether to uphold a challenged CID, the court determines whether "'the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant'" to the agency's investigation. *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). If these three requirements are met, the CID remains in force unless it is unduly burdensome. *See, e.g.*, *Texaco, Inc.*, 555 F.2d at 882; *see also United States v. Inst. for Coll.*

10

*Access & Success*, 27 F. Supp. 3d 106, 111 (D.D.C. 2014) ("[A]n administrative agency's power to issue subpoenas as it performs its investigatory function is a broad-ranging one which courts are reluctant to trammel." (alteration in original) (quoting *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.,* 878 F.2d 875, 878 (5th Cir. 1989))).

## II.   The Division had authority to issue the CID and never made any commitment that would preclude the present investigation.

The Antitrust Division had authority to issue the challenged CID under 15 U.S.C. § 1312. *See id.* § 1312(a) ("Whenever the Attorney General . . . has reason to believe that any person . . . may have any information, relevant to a civil antitrust investigation . . . , he may . . . cause to be served upon such person, a civil investigative demand . . . ."). The Division made no commitment, in the November 19, 2020, closing letter or otherwise, that would preclude the Division from investigating NAR's potentially anticompetitive practices or issuing new CIDs in connection with any such investigation. Throughout settlement negotiations for the now-withdrawn Proposed Final Judgment, the Division made clear to NAR that, in accordance with Division policy, it would not make such a commitment. In keeping with its mission to enforce federal antitrust laws, the Division has the statutory authority to investigate any of NAR's anticompetitive practices, for purposes of its investigation of NAR and its investigations of regional MLSs, and NAR has not met its high burden to show that the November 19, 2020, letter limits that authority or shields NAR from having to comply with a CID.

### A.   The Division made no commitment to refrain from opening a new investigation into NAR's practices.

Contrary to NAR's suggestions, the Division never committed to refrain from further investigation into NAR and its practices. The Antitrust Division committed only to issue NAR a letter stating that it had closed its investigation into two rules and that it would not require NAR to comply with the CIDs (29935 and 30360) that it had issued in connection with its

investigation. *See* NAR Pet. Ex. 7 at 1 (E-mail from Samer Musallam to Mike Bonanno (Oct. 28, 2020, 16:12 EDT)).

The three-sentence closing letter contained no commitment to refrain from future investigations of NAR or its practices or from issuing new CIDs in conjunction with such investigations. While the closing letter stated that "the Antitrust Division has closed its investigation" into NAR's Participation Rule and Clear Cooperation Policy, NAR Pet. Ex. 12 (Letter from Makan Delrahim to William Burck (Nov. 19, 2020)), it made no promise not to investigate in the future. On the contrary, the letter emphasized, "No inference should be drawn, however, from the Division's decision to close its investigation into these rules, policies or practices [that are] not addressed by the consent decree." NAR Pet. Ex. 12 at 1.

**B.    The Division repeatedly informed NAR that it would not make any commitment to refrain from investigating NAR in the future in accordance with DOJ policy.**

Indeed, in the discussions leading up to the closing letter, the Division repeatedly made clear to NAR that it would not commit to refrain from further investigation of NAR.

In his July 13, 2020, response to NAR's initial settlement proposal, DAAG Murray stressed that NAR's request for "a commitment to not challenge NAR rules and policies in the future" was "a nonstarter, especially in light of longstanding Department policies concerning settlements that affect future potential investigations." Ex. 2 at 1 (Letter from Michael Murray to William Burck (July 13, 2020)).

In the parties' later correspondence, the Division continued to refuse NAR's requests to agree to a prohibition on future investigation, repeating that its policies prohibit binding the United States from taking future action in closing letters or public closing statements. In his July 29, 2020, letter, DAAG Murray stated that the Division was potentially willing to close its

investigation into the Participation Rule but stressed that it could *not* commit to refrain from

further investigation or action against NAR:

> Should NAR be willing to accept these terms and the Court enters a resulting
> consent decree as a final judgment, the Division is willing to close its
> investigation into NAR's Participation Rule. Consistent with what we have
> previously noted, however, we cannot commit to never challenge NAR rules and
> policies in the future in light of longstanding Department policies on such
> commitments.

Ex. 4 at 1 (Letter from Michael Murray to William Burck (July 29, 2020)). And in his August 12,

2020, letter, DAAG Murray repeated that "as I have written previously, the Division cannot

commit to never investigating or challenging NAR's rules and policies in the future." Ex. 6 at 2

(Letter from Michael Murray to William Burck (Aug. 12, 2020)).

Thus, the Division never made any commitment to refrain from further investigation of

NAR. On the contrary, the Division repeatedly stressed that it would not make such a

commitment.

NAR's letters at the time further demonstrate that, throughout the parties' discussions,

NAR understood that closure of the Division's investigations of the Participation Rule and Clear

Cooperation Policy would not preclude future investigation, including future investigation of

those same policies. In its July 6, 2020, letter communicating its initial settlement proposal, NAR

set forth four discrete demands pertaining to the present investigation:

> 2. In return, the Department of Justice would:
>
> > a.  close its investigation regarding NAR's rules and policies;
> >
> > b.  stipulate that NAR's Participation Rule would not be subject to further
> >     investigation any time in the next ten years;
> >
> > c.  send a closing letter to NAR confirming that it has no obligation to
> >     provide additional information or documents in response to CID No.
> >     29935 or CID No. 30360; and

> d. issue a public closing statement indicating that (i) the Division has investigated the Participation Rule and the Clear Cooperation Policy; and (ii) it has decided to close those investigations because it has not concluded that the Participation Rule or the Clear Cooperation Policy causes harm to competition.

Ex. 1 at 5 (Letter from William Burck to Makan Delrahim (July 6, 2020)). In items a and c, NAR requested closure of the investigation and withdrawal of the extant CIDs. In a separate item, item b, NAR requested a promise not to conduct further investigation of the Participation Rule.

Similarly, NAR's August 6, 2020, letter made three discrete demands:

> [T]o obtain complete closure regarding the Division's open investigations, NAR asks the Division to agree that it will:
>
> 1. close its investigations regarding NAR's rules and policies;
>
> 2. send a closing letter to NAR confirming that it has closed its investigations and that NAR has no obligation to provide additional information or documents in response to CID No. 29935 or CID No. 30360; and
>
> 3. issue a public closing statement indicating that (i) the Division investigated both the Participation Rule and the Clear Cooperation Policy; and (ii) the relief reflected in the consent decree addresses all of the concerns the Division identified with respect to those policies (emphasizing what would be reflected in the competitive impact statement submitted as a part of the Tunney Act proceedings).

Ex. 5 at 3–4 (Letter from William Burck to Michael Murray (Aug. 6, 2020)). Items 1 and 2 requested closure of the investigation, issuance of a closing letter, and withdrawal of the extant CIDs. A separate item, item 3, requested that the Division state that the consent decree "addresse[d] all the concerns the Division identified" with respect to the Participation Rule and Clear Cooperation Policy. This confirms that NAR clearly understood that what the Division ultimately agreed to provide—closure of the existing investigation of the two policies and issuance of a closing letter—did not include assurances against future investigation or action.

14

NAR also suggests that without a promise that the Division would refrain from future investigation, it would have had no incentive to agree to the Proposed Final Judgment. *See* NAR Pet. ¶ 126. But NAR clearly stood to gain from entry of the consent decree. Entering a consent decree would allow NAR to negotiate a remedy for the violations alleged in the Complaint and avoid the risk and expense of litigation regarding those violations. *See United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) (noting that parties agreeing to be bound by a consent decree stand to benefit by "[s]aving themselves the time, expense and inevitable risk of litigation"). Moreover, while closure of the investigation did not have legal effect, the closure of the investigation and the withdrawal of the earlier CIDs did relieve NAR of its obligation to respond to those CIDs. And NAR appears to have believed the closure of the investigation had at least some import, because NAR immediately brought it to the attention of the court in an antitrust suit it was litigating against a private plaintiff. *See* NAR's Response to Plaintiff's Notice of Supplemental Authority at 1, Ex. B, *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 516 F. Supp. 3d 1047 (C.D. Cal. 2021) (Case No. 2:20-cv-04790-JWH-RAO), ECF No. 88.

III.    **The CID is sufficiently definite and seeks information relevant to the Division's investigation.**

"A district court must enforce a federal agency's investigative subpoena if the information sought is reasonably relevant—or, put differently, not plainly incompetent or irrelevant to any lawful purpose of the agency—and not unduly burdensome to produce." *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (citations omitted). "The gist of the protection is in the requirement . . . that the disclosure sought shall not be unreasonable." *Morton Salt Co.*, 338 U.S. at 652–53.

"[A]dministrative agencies must be given wide latitude in asserting their power to investigate by subpoena." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001); *see also*

*Associated Container Transp. (Austl.) Ltd. v. United States*, 705 F.2d 53, 58 (2d Cir. 1983) (recognizing the "broad investigatory powers granted to the Justice Department by the Antitrust Civil Process Act" and stating that "ACPA's legislative history indicates that the Justice Department is to be given wide latitude when issuing CID's"). "[A]n agency's investigatory authority is far-reaching, analogous to that of a grand jury, which 'can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Resol. Tr. Corp. v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994) (quoting *Morton Salt Co.*, 338 U.S. at 642–43). A court assessing an administrative subpoena does not consider whether the agency will ultimately be able to prove a claim. *See Invention Submission Corp.*, 965 F.2d at 1090 ("At the investigatory stage, the Commission does not seek information necessary to prove specific charges; it merely has a suspicion that the law is being violated in some way and wants to determine whether or not to file a complaint."); *Texaco, Inc.*, 555 F.2d at 874 ("[I]n the pre-compliant stage, an investigating agency is under no obligation to propound a narrowly focused theory of a *possible* future case. . . . The court must not lose sight of the fact that the agency is merely exercising its legitimate right to determine the facts, and that a complaint may not, and need not, ever issue."); *see also EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1427–28 (9th Cir. 1983) (en banc) (holding that an argument that claims were barred by res judicata based on an earlier consent decree was not properly addressed in the context of a request for enforcement of an administrative subpoena).

Just as a grand jury "may compel the production of evidence or the testimony of witnesses as it considers appropriate," *United States v. R. Enters., Inc.*, 498 U.S. 292, 298 (1991), the Antitrust Division can compel the production of any potentially relevant information by issuing CIDs. Courts "defer to the agency's appraisal of relevancy, which must be accepted so

16

long as it is not obviously wrong." *Resol. Tr. Corp. v. Frates*, 61 F.3d 962, 964 (D.C. Cir. 1995) (quoting *Walde*, 18 F.3d at 946). Furthermore, a grand jury subpoena, and by extension an administrative subpoena, "is presumed to be reasonable and the burden is on the subpoena's opponent to disprove this presumption." *In re Sealed Case*, 121 F.3d 729, 755 (D.C. Cir. 1997); *see also Invention Submission Corp.*, 965 F.2d at 1090 ("[I]n light of the broad deference we afford the investigating agency, it is essentially the respondent's burden to show that the information is irrelevant.").

NAR argues that several requests are overbroad because they seek "all documents" relating to certain subjects. *See* NAR Pet. ¶¶ 179–181. These requests are appropriately tailored to obtain documents relating to specified subjects highly relevant to the Division's inquiry into NAR's potentially anticompetitive conduct. *U.S. EEOC v. George Washington University*, Case No. 17-cv-1978 (CKK/GMH), 2020 WL 3489478 (D.D.C. June 26, 2020), is not on point. That case dealt with a civil discovery request for the entire contents of three individuals' email boxes, regardless of subject matter. *See id.* at *7. NAR has not met its burden to show that the Division's requests are overbroad.

NAR also argues that the CID inappropriately seeks privileged information. It does not. The CID instructs NAR to "[p]roduce . . . non-privileged portions of any responsive document . . . for which a privilege claim is asserted," and to provide a privilege log for privileged material. *See* NAR Pet. Ex. 2 at 8.

NAR asserts that Request 4, which seeks documents related to a "business review" request that NAR made to the Antitrust Division—is intended to harass NAR. NAR Pet. ¶ 182. The request seeks information relevant to the Division's investigation and is entirely proper. Business review is a process in which private parties can explain proposed conduct, such as a

17

joint venture, to the Division and request that the Division "state its enforcement intentions" in a business review letter. 28 C.F.R. § 50.6. A business review letter communicates the Antitrust Division's current intentions concerning a practice but does not limit future action by the Division. *See id.* ("A business review letter states only the enforcement intention of the Division as of the date of the letter, and the Division remains completely free to bring whatever action or proceeding it subsequently comes to believe is required by the public interest.").

In September 2018, NAR requested a business review letter from the Antitrust Division concerning a proposed practice in which NAR would have encouraged agents to list all their properties with a NAR-affiliated MLS. The considerations animating that proposed policy—such as NAR's reasons to limit off-MLS listings or potential effects of limiting off-MLS listings—are relevant to the Antitrust Division's investigation of the Clear Cooperation Policy, which similarly encourages agents to use NAR-affiliated multiple-listing services.

NAR also argues that Requests 14 and 15—requesting information regarding instances in which real estate agents withdraw from multiple listing services—are "unduly burdensome." NAR Pet. ¶ 185. These requests are important to the Division's investigation of the Participation Rule because NAR has previously asserted that such rules are necessary to maintain MLS membership and continues to argue that brokers may withdraw from MLSs if competitive developments, such as the authorized use of MLS data by nontraditional brokers who offer alternative pricing models that lower commissions, threaten their profits. *See* SWANEPOEL T3 GRP., D.A.N.G.E.R. REPORT 47, https://member.sabor.com/wp-content/uploads/2021/01/Danger -Report-small.pdf. The Division seeks this information to understand NAR's professed defenses and to determine whether NAR has accurately represented why real estate agents withdraw from membership in NAR-affiliated MLSs.

A further reason to reject NAR's petition to narrow the CID is that NAR has not met and confer with the Division to attempt to narrow any claimed burden, even though the Antitrust Division has repeatedly indicated its willingness to negotiate with NAR to narrow the scope of the CID. *See supra* p. 10 (Background section II.D). Except with respect to Request 10, which the Division agreed to withdraw, NAR has not engaged in negotiations over these issues. Because it was unwilling to meet and confer with the Division to discuss any burden associated with complying with the CID, the Court should reject NAR's request to modify the CID based on vague and unsupported assertions. *See Phx. Bd. of Realtors, Inc. v. U.S. Dep't of Just.*, 521 F. Supp. 828, 832 (D. Ariz. 1981) (declining to set aside a CID because "[t]he Government ha[d] repeatedly indicated its willingness to negotiate with petitioner regarding the 'burden and scope' of the demands"); *FTC v. Boehringer Ingelheim Pharms., Inc.*, 898 F. Supp. 2d 171, 174–75 (D.D.C. 2012) (noting that the parties' dispute concerning an administrative subpoena had been significantly narrowed after discussions between the parties).

## CONCLUSION

Because the CID is proper and reasonable in scope, and because the CID is not precluded by any Division commitment to NAR, the Court should deny the Petition.

Date: October 13, 2021                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Acting Assistant Attorney General

                                          RICHARD A. POWERS
                                          Acting Assistant Attorney General

                                          BRIGHAM J. BOWEN
                                          Assistant Branch Director

                                          /s/ JAMES C. LUH
                                          JAMES C. LUH
                                          Senior Trial Counsel
                                          United States Department of Justice

Civil Division, Federal Programs Branch
1100 L St NW
Washington DC 20530
Tel: (202) 514-4938
E-mail: James.Luh@usdoj.gov

MIRIAM R. VISHIO (D.C. Bar No. 482282)
Assistant Chief, Civil Conduct Task Force
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 11100
Washington, DC 20530
Tel: (202) 307-0158
E-mail: Miriam.Vishio@usdoj.gov
Attorneys for Respondents