**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL ASSOCIATION OF REALTORS®,

        *Petitioner*,

   v.

UNITED STATES OF AMERICA, et al.,

        *Respondents*.

Case No. 1:21-cv-2406 (TJK)

**RESPONSE TO THE GOVERNMENT'S OPPOSITION TO NAR'S PETITION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.     The Antitrust Division Ignores the Limitations on Its CID Authority and
            Tries to Increase NAR's Burden ......................................................................... 3

    II.    CID Request Nos. 2-7, 11, 13, and 16-18 Were Issued in Furtherance of
            the Investigation the Antitrust Division Agreed to Close ..................................... 8

          A.    The Plain Meaning of the Agreement Shows That the Antitrust
                Division Agreed to "Close" Its Investigation............................................ 8

          B.    The Extrinsic Evidence Confirms That the Antitrust Division and
                NAR Understood That "Close" Means "Close"....................................... 9

                1.    The Antitrust Division's Words and Actions Confirm That
                       the Settlement Limited Its Ability to Investigate NAR .............. 10

                2.    The Antitrust Division's Puffery in Early Negotiations
                       Does Not Change the Clear Meaning of the Settlement
                       Agreement ............................................................................... 11

                3.    The Antitrust Division Can (and Does) Agree to Limit
                       Investigations by Future Administrations................................... 13

                  4.    The Antitrust Division Did Not and Could Not Reserve Its
                       Ability to Pursue Further Investigation in the Closing Letter ...... 15

                  5.    NAR Would Be Deprived of the Benefit of Its Bargain if
                       "Close" Did Not Mean "Close".................................................. 16

    III.   CID Request Nos. 1-9, 12, 14, 15, 17, and 18 Are Facially Overbroad ............. 17

CONCLUSION.......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Pharm. Ass'n v. U.S. Dep't of Just.*,
 467 F.2d 1290 (6th Cir. 1972) ............................................................. 5

*United States v. Bolton*,
 496 F. Supp. 3d 146 (D.D.C. 2020) ...................................................... 9

*\*Burton v. Adm'r, Gen. Servs. Admin.*,
 1992 WL 300970 (D.D.C. July 10, 1992) .............................................. 6

*Class Overcharged for Water-Sewer, by Loudon Operations, LLC v. Stantec, Inc.*,
 2021 WL 75766 (D.D.C. Jan. 8, 2021) .................................................. 6

*Deutsche Bank Nat'l Tr. Co. v. Fed. Deposit Ins. Corp.*,
 109 F. Supp. 3d 179 (D.D.C. 2015) ...................................................... 9

*Farmland Industries, Inc. v. Grain Bd. of Iraq*,
 904 F.2d 732 (D.C. Cir. 1990) ........................................................... 10

*FTC v. Texaco, Inc.*,
 555 F.2d 862 (D.C. Cir. 1977) ............................................................. 7

*\*United States v. Garcia*,
 956 F.2d 41, 44 (4th Cir. 1992) ........................................................... 6

*Haggart v. United States*,
 943 F.3d 943 (Fed. Cir. 2019) ............................................................. 6

*United States v. Hill*,
 319 F. Supp. 3d 44 (D.D.C. 2018) ........................................................ 7

*In re Ingram*,
 2012 WL 6840542 (E.D. La. Feb. 29, 2012) ....................................... 17

*United States v. Inst. for Coll. Access & Success*,
 27 F. Supp. 3d 106 (D.D.C. 2014) ........................................................ 7

*\*United States v. McInnes*,
 556 F.2d 436 (9th Cir. 1977) ............................................................... 6

*United States ex rel. Morsell v. Symantec Corp.*,
 471 F. Supp. 3d 257 (D.D.C. 2020) ...................................................... 9

*United States v. Morton Salt Co.*,
 338 U.S. 632 (1950).............................................................................. 7

*United States v. Pearce*,
 792 F.2d 397 (3d Cir. 1986)................................................................. 6

*Phx. Bd. of Realtors, Inc. v. U.S. Dep't of Just.*,
 521 F. Supp. 828 (D. Ariz. 1981)......................................................... 5

*Reed v. United States*,
    717 F. Supp. 1511 (S.D. Fla. 1988) ................................................................ 6

*Shoshone-Bannock Tribes of Fort Hall Rsrv. v. Bernhard*,
    486 F. Supp. 3d 61 (D.D.C. 2020) ................................................................ 8

*United States v. Singleton*,
    47 F.3d 1177 (9th Cir. 1995) ................................................................ 6

*United States v. Time Warner, Inc.*,
    1997 WL 118413 (D.D.C. Jan. 22, 1997) ................................................................ 4

*\*United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two
    Hundred Dollars, ($660,200.00), More or Less*,
    423 F. Supp. 2d 14, 25 (E.D.N.Y. 2006) ................................................................ 6

*U.S. Int'l Trade Comm'n v. ASAT, Inc.*,
    411 F.3d 245 (D.C. Cir. 2005) ................................................................ 7

*Ulliman Schutte Constr., Inc. v. Emerson Process Mgmt. Power & Water Sols.*,
    2007 WL 1794105 (D.D.C. June 19, 2007) ................................................................ 16

*United States Equal Emp. Opportunity Comm'n v. George Washington Univ.*,
    2020 WL 3489478 (D.D.C. June 26, 2020) ................................................................ 6

*W. Watersheds Project v. U.S. Fish & Wildlife Service*,
    2008 WL 619336 (D. Idaho Feb. 29, 2008) ................................................................ 6

*Williams v. Wash. Metro. Area Transit Auth.*,
    537 F. Supp. 2d 220 (D.D.C. 2008) ................................................................ 16

## Statutory Authorities

5 U.S.C. app. 3 § 6 ................................................................ 7

15 U.S.C. § 46 ................................................................ 7

15 U.S.C. § 49 ................................................................ 7

15 U.S.C. § 1312 ................................................................ 6, 18

15 U.S.C. § 1314 ................................................................ 4

19 U.S.C. § 1333 ................................................................ 7

## Rules and Regulations

28 C.F.R. § 0.40(a) ................................................................ 15

Fed. R. Civ. P. 7 ................................................................ 4

### **Legislative Materials**

S. Rep. No. 500, 96th Cong., 1st Sess. 23-25 (1979)...................................................... 7

### **Additional Authorities**

*Auth. of the United States to Enter Settlements Limiting the Future Exercise of Exec.
  Branch Discretion*,
  23 Op. OLC 126 (June 15, 1999)....................................................................... 3, 14

Restatement (Second) of Contracts............................................................................ 16

## PRELIMINARY STATEMENT

The Antitrust Division has now confirmed that it entered into a binding settlement with NAR, under which it "*did* agree to issue a closing letter confirming to NAR that it had *closed* an investigation of two NAR practices." The Antitrust Division's *open* investigation of those same practices—NAR's Participation Rule and Clear Cooperation Policy—is a material breach of that settlement agreement. That means CID No. 30729, which the Antitrust Division issued as part of its open investigation, is invalid.

The Antitrust Division offers three arguments in response to NAR's Petition. Each of these arguments is meritless. *First*, the Antitrust Division argues that it "committed only to issue NAR a letter stating that it had closed its investigation into two rules and that it would not require NAR to comply with the CIDs (29935 and 30360)," which left it free to pursue the same investigation of those two rules any time after it transmitted the letter. The plain language of the settlement agreement, however, requires the Antitrust Division to "close" its investigation concerning the Participation Rule and Clear Cooperation Policy, and it is a breach of the agreement for that investigation to remain "open." The Antitrust Division has admitted as much. Before this litigation, the Antitrust Division acknowledged, in a press release, that the settlement "prevented the department from pursuing other antitrust claims relating to NAR's rules" and limited the Antitrust Division's ability to "investigate and challenge additional conduct by NAR." In fact, the Antitrust Division's Acting Assistant Attorney General, Richard Powers, conceded that the settlement "prevents [the Antitrust Division's] ability to" investigate certain NAR practices. These statements, along with the plain text of the agreement, show that the Antitrust Division's current position—that it is free to pursue the same investigation of Participation Rule and Clear Cooperation Policy it agreed to close—is wrong.

1

***Second***, to modify the settlement's unambiguous terms, the Antitrust Division points to comments it made when rejecting an early proposal from NAR—months before the parties entered the settlement agreement. But contrary to what it suggests, the Antitrust Division cannot change the plain meaning of the settlement agreement by pointing back to its own puffery during the negotiations that preceded the settlement. In July 2020, NAR made a settlement offer that would have required the Antitrust Division to close its open investigation, issue a closing letter to NAR, make a public closing statement, ***and*** commit "that NAR's Participation Rule would not be subject to further investigation any time in the next ten years," even if it was modified or amended by NAR. While the Antitrust Division rejected that offer, after further negotiations, NAR gave up its request for a commitment that the Antitrust Division would not investigate the Participation Rule under any circumstances, even if it changed. NAR made that compromise to obtain other relief, including the Antitrust Division's commitment to close its open investigation of the Clear Cooperation Policy, in addition to its investigation of the Participation Rule. Neither party obtained everything it sought at the outset of settlement discussions, and the Antitrust Division is bound by the agreement that resulted from the parties' compromise.

***Third***, the Antitrust Division tries to modify the plain language of the settlement by claiming the Antitrust Division is "unable to agree" to a settlement that limits investigations by future administrations. The Antitrust Division cannot prevail by simply asserting—without citation to law, rule, or policy—that it cannot enter into settlements that limit investigations by future administrations. The Antitrust Division routinely enters agreements that limit future investigations, including through its Leniency Program, guilty pleas, and non-prosecution agreements. And the Department of Justice's Office of Legal Counsel has confirmed such agreements are within Antitrust Division's authority, expressly acknowledging: "The Attorney

General may enter into settlements that would limit the future exercise of executive branch discretion." Ex. A, *Auth. of the United States to Enter Settlements Limiting the Future Exercise of Exec. Branch Discretion* ("Moss Memo"), 23 Op. OLC 126, 126-30 (June 15, 1999).[1]  In antitrust matters, the Attorney General has delegated that settlement authority to the Antitrust Division's Assistant Attorney General.  The Antitrust Division is therefore simply wrong to suggest the Assistant Attorney General in charge of the Antitrust Division who approved NAR's settlement was "unable" to agree to limitations on future investigations.

For all these reasons, and those set forth in its Petition, NAR respectfully asks the Court to set aside CID No. 30729, in its entirety.  The Antitrust Civil Process Act prohibits the Antitrust Division from issuing CIDs that would not be permissible under grand jury or civil discovery standards, and both standards bar discovery that is sought in violation of a binding settlement agreement.  The Antitrust Division issued CID No. 30729 from an open investigation concerning the Participation Rule and Clear Cooperation Policy, which it previously agreed to close, resulting in a breach of its settlement agreement with NAR.

## ARGUMENT

I.   **The Antitrust Division Ignores the Limitations on Its CID Authority and Tries to Increase NAR's Burden**

The Antitrust Division mischaracterizes this matter as a "summary proceeding" to impose a "heavy burden" on NAR in this litigation and discourage scrutiny of its own conduct.  ECF 20 at 1 & n.1, 10-11.  That view, however, ignores the applicable procedural rules and statutory limitations on the Antitrust Division's CID authority.

---

[1] *Available at* https://www.justice.gov/sites/default/files/olc/opinions/1999/06/31/op-olc-v023-p0126_0.pdf.

This is not a summary proceeding in which the Antitrust Division's actions should not receive a close look—it is a regular civil matter, and the Court has ample authority to compel the Antitrust Division to abide by its commitments. The Antitrust Civil Process Act, which provides the Antitrust Division's authority to issue CIDs, states that "[t]o the extent that such rules . . . are not inconsistent with the provisions of this chapter, the Federal Rules of Civil Procedure shall apply to any petition under this chapter." 15 U.S.C. § 1314(f). Under the Federal Rules, a complaint is the only pleading that is permitted to initiate civil proceedings in federal district court, Fed. R. Civ. P. 7, and the comments to Rule 7 specifically note that "all statutes which use the words 'petition,'" such as the Antitrust Civil Process Act, "are modified in form by [Rule 7]." Fed. R. Civ. P. 7 advisory committee's notes (1937). Thus, NAR's Petition to quash CID No. 30729 must be treated like any other complaint that is filed in federal district court.

Before now, including in CID enforcement proceedings where the Antitrust Division was the petitioner, the Antitrust Division has agreed with this principle. In fact, citing *United States v. Time Warner, Inc.*, 1997 WL 118413 (D.D.C. Jan. 22, 1997), the Antitrust Division's own manual acknowledges that a petition regarding a CID "is a miscellaneous proceeding that enjoys no special immunity." Ex. B, U.S. Department of Justice, *Antitrust Division Manual*, at III-78 (5th Ed. 2012).[2] In *Time Warner*, the Antitrust Division filed a petition to enforce a group of CIDs, and its petition included numbered paragraphs and a prayer for relief, just like any other complaint filed in federal district court. *See* Ex. C, Pet. to Enforce Civil Investigative Demands, *United States v. Time Warner, Inc.*, 94-mc-338, Dkt. 1 (D.D.C. Nov. 3, 1994).[3] The defendants filed answers in response to the petition, admitting or denying each of the allegations, before the court adjudicated

---

[2] *Available at* https://www.justice.gov/atr/file/761166/download.

[3] *Available at* https://www.justice.gov/atr/case-document/file/513476/download.

the merits of the Antitrust Division's petition. *See* Ex. D, Time Warner Inc.'s Answer to Pet. to Enforce Civil Investigative Demands, *United States v. Time Warner, Inc.*, 94-mc-338, Dkt. 9 (D.D.C. Dec. 8, 1994).[4]  That same process has been followed by the Antitrust Division in many other CID enforcement proceedings. *See, e.g.*, Ex. E, Pet. to Enforce Civil Investigative Demand, *United States v. Bain & Company, Inc.*, No. 1:20-mc-91572, Dkt. 1 (D. Mass. Oct. 27, 2020);[5] Ex. F, Pet. to Enforce Civil Investigative Demands, *United States v. Jost*, No. 04-cv-1854, Dkt. 1 (N.D. Ill. Mar. 10, 2004);[6] Ex. G, Cross-Pet. to Enforce and Answer, *Cohen & Co. v. United States*, No. 1:96-cv-1396, Dkt. 5 (N.D. Oh. July 26, 1996).[7]

The Antitrust Division has not followed that process here, and instead it seeks to impose a standard of review that is deferential to the government. *Compare* ECF 20 *with* Ex. G, Cross-Pet. to Enforce and Answer, at 7-8, *Cohen & Co. v. United States*, No. 1:96-cv-1396, Dkt. 5 (admitting or denying each numbered paragraph in a Petition); Ex. H, Mot. to Dismiss Pet., *Sioux Sales/Sioux City Night Patrol, Inc. v. Price*, No. 5:00-cv-4013, Dkt. 3 (N.D. Iowa Feb. 11, 2000)[8] (responding to a Petition by moving to dismiss); *see also Phx. Bd. of Realtors, Inc. v. U.S. Dep't of Just.*, 521 F. Supp. 828, 830 (D. Ariz. 1981) ("The Government answered the petition by filing a response . . . ."); *Am. Pharm. Ass'n v. U.S. Dep't of Just.*, 467 F.2d 1290, 1291 (6th Cir. 1972) ("The Department of Justice filed [an] answer to the foregoing and petitioned for enforcement of its Civil Investigative Demand."). But that is inconsistent with what is required by statute. Under the Antitrust Civil Process Act, the Court is empowered to review—without any deference to the

---

[4] *Available at* https://www.justice.gov/atr/case-document/file/513441/download.

[5] *Available at* https://www.justice.gov/atr/case-document/file/1345031/download.

[6] *Available at* https://www.justice.gov/atr/case-document/file/500221/download.

[7] *Available at* https://www.justice.gov/atr/case-document/file/492146/download.

[8] *Available at* https://www.justice.gov/atr/case-document/file/511076/download.

Antitrust Division—whether the Antitrust Division exceeded its authority under either "(A) the standards applicable to subpenas [sic] or subpenas [sic] duces tecum issued by a court of the United States in aid of a grand jury investigation, or (B) the standards applicable to discovery requests under the Federal Rules of Civil Procedure, to the extent that the application of such standards to any such demand is appropriate and consistent with the provisions and purposes of this chapter." 15 U.S.C. § 1312(c).

In this case, both of those standards are relevant because the Antitrust Division agreed—in a binding settlement agreement—that it would close its investigation concerning the Participation Rule and Clear Cooperation Policy.  Under both grand jury standards and the standards of civil discovery, such a settlement agreement is binding on the government. *See United States v. Garcia*, 956 F.2d 41, 42, 44 (4th Cir. 1992) (government cannot compel grand jury testimony in contravention of binding plea agreement); *United States v. Pearce*, 792 F.2d 397, 400 (3d Cir. 1986) (same); *United States v. Singleton*, 47 F.3d 1177, at *2, *4 (9th Cir. 1995) (unpublished) (same); *Haggart v. United States*, 943 F.3d 943, 946 (Fed. Cir. 2019) (government is bound by civil settlement); *United States v. McInnes*, 556 F.2d 436, 437-39 (9th Cir. 1977) (same); *W. Watersheds Project v. U.S. Fish & Wildlife Service*, 2008 WL 619336, at *2-3 (D. Idaho Feb. 29, 2008) (same); *United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 423 F. Supp. 2d 14, 25 (E.D.N.Y. 2006) (same); *Burton v. Adm'r, Gen. Servs. Admin.*, 1992 WL 300970, at *3, *6 (D.D.C. July 10, 1992) (same); *Reed v. United States*, 717 F. Supp. 1511, 1516 (S.D. Fla. 1988) (same); *United States Equal Emp. Opportunity Comm'n v. George Washington Univ.*, 2020 WL 3489478, at *7 (D.D.C. June 26, 2020) (describing requests "not designed to capture relevant, unique information" as "obviously overbroad"); *Annapolis Citizens Class Overcharged for Water-Sewer, by Loudon*

*Operations, LLC v. Stantec, Inc.*, 2021 WL 75766, at *9 (D.D.C. Jan. 8, 2021) (discovery requests may "not [be] interposed for any improper purpose, such as to harass" (quoting Fed. R. Civ. P. 26(g))).  NAR raised these limitations on the Antitrust Division's CID authority in its Petition and cited these same cases, ECF 1 ¶¶ 142-47, 172-87, but the Antitrust Division has simply ignored them.

The cases cited by Antitrust Division involved administrative subpoenas issued under ***different*** statutes.  *See United States v. Hill*, 319 F. Supp. 3d 44, 47 (D.D.C. 2018) (seeking to quash a subpoena issued under the Inspector General Act, 5 U.S.C. app. 3 § 6); *FTC v. Texaco, Inc.*, 555 F.2d 862, 868 (D.C. Cir. 1977) (seeking to quash a subpoena issued by the FTC under Section 9 of the FTC Act, 15 U.S.C. § 49); *United States v. Morton Salt Co.*, 338 U.S. 632, 648 (1950) (seeking to quash a subpoena issued by the FTC pursuant to Section 6 of the FTC Act, 15 U.S.C. § 46); *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 247 (D.C. Cir. 2005) (seeking to quash a subpoena issued by the ITC pursuant to 19 U.S.C. § 1333); *United States v. Inst. for Coll. Access & Success*, 27 F. Supp. 3d 106, 110 (D.D.C. 2014) (seeking to quash a subpoena issued under the Inspector General Act, 5 U.S.C. app. 3 § 6).  Not one of those other statutes, however, contains the same limitations that are present in the Antitrust Civil Process Act.  In fact, the Antitrust Division's reliance on pre-1980 cases concerning FTC subpoenas is particularly misplaced.  Congress enacted the FTC's current CID authority in 1980 (following the *Texaco* decision) after hearing "testimony on the issuance of overly broad industrywide subpenas." S. Rep. No. 500, 96th Cong., 1st Sess. 23-25 (1979), *reprinted in* 1980 U.S.C.C.A.N. 1102, 1124-26.  To compensate for the overbreadth of the FTC's subpoenas, Congress enacted the current statute, with limitations based on "the civil investigative demand (CID) procedure now utilized by the Department of Justice under the Antitrust Civil Process Act."  *Id.*  Therefore, prior to 1980,

administrative subpoenas issued by the FTC were not subject to same limitations imposed by the Antitrust Civil Process Act. And neither were the subpoenas at issue in the other cases cited in the Antitrust Division's brief.

Thus, under the Federal Rules and the Antitrust Civil Process Act, the Antitrust Division is entitled to no deference when the Court is interpreting the scope of its obligations under its settlement agreement with NAR.

## II. CID Request Nos. 2-7, 11, 13, and 16-18 Were Issued in Furtherance of the Investigation the Antitrust Division Agreed to Close

The Antitrust Division does not dispute that it entered into a valid and enforceable settlement agreement with NAR. In its own words, it "did agree to issue a closing letter *confirming* to NAR that it had ***closed* *an investigation of two NAR practices*** ." ECF 20 at 1 (emphasis added). It tries to claim that it complied with that agreement by simply sending a closing letter because it "committed only to issue NAR a letter stating that it had closed its investigation into two rules and that it would not require NAR to comply with the CIDs (29935 and 30360) that it had issued in connection with its investigation." *Id.* at 11-12. In other words, the Antitrust Division suggests that after it transmitted the closing letter it was free to maintain the same, open investigation into the Participation Rule and Clear Cooperation Policy. That is wrong. Such an interpretation of the settlement agreement conflicts with the plain meaning of the words the parties used in the agreement and the unchallenged evidence of the parties' understanding of the terms of the deal.

### A. The Plain Meaning of the Agreement Shows That the Antitrust Division Agreed to "Close" Its Investigation

"Courts interpret a settlement agreement under contract law." *Shoshone-Bannock Tribes of Fort Hall Rsrv. v. Bernhard*, 486 F. Supp. 3d 61, 64 (D.D.C. 2020) (cleaned up) (applying federal common law to settlements with the United States). And "[c]ontract interpretation begins

with the plain meaning of the text." *United States v. Bolton*, 496 F. Supp. 3d 146, 153 (D.D.C. 2020).  "In interpreting a contract, courts must begin with the plain language and give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *United States ex rel. Morsell v. Symantec Corp.*, 471 F. Supp. 3d 257, 281 (D.D.C. 2020).

In October 2020, the Antitrust Division unconditionally accepted NAR's settlement offer, which required a commitment from the Antitrust Division to "close" its investigation of the Participation Rule and Clear Cooperation Policy.  ECF 1 ¶¶ 30-32.  In this context, the word "close" is a verb that means "to bring to an end."  Ex. I (*Close*, Merriam-Webster's Collegiate Dictionary (10th ed. 2002)).  That term must be construed according to its "ordinary meaning," and the Antitrust Division's position, that it was free to "open" that same investigation at any time, contradicts the clear meaning of the parties' agreement.  By its plain meaning, the verb "open" means "to move (as a door) from a closed position" or "to begin a course or activity."  Ex. J (*Open*, Merriam-Webster's Collegiate Dictionary (10th ed. 2002)).  Thus, what the Antitrust Division has done is the exact opposite of what the word "close" contemplates in the parties' agreement.

The settlement agreement's plain meaning cannot be construed to allow the Antitrust Division to pursue the same "open" investigation into the Participation Rule and Clear Cooperation Policy that it agreed to "close."

### B.   The Extrinsic Evidence Confirms That the Antitrust Division and NAR Understood That "Close" Means "Close"

In the event the Court finds the term "close" in the parties' settlement agreement was ambiguous, the Court may "consider such extrinsic evidence as 'statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties' when the meaning of a contract provision is facially uncertain." *Deutsche Bank Nat'l Tr. Co. v. Fed. Deposit*

*Ins. Corp.*, 109 F. Supp. 3d 179, 197 (D.D.C. 2015) (quoting *Farmland Industries, Inc. v. Grain Bd. of Iraq*, 904 F.2d 732, 736 (D.C. Cir. 1990)).  The extrinsic evidence here is consistent with the plain meaning of the parties' agreement and confirms that the Antitrust Division has breached its obligations under the settlement by having an open investigation concerning the Participation Rule and Clear Cooperation Policy.

> **1.    The Antitrust Division's Words and Actions Confirm That the Settlement Limited Its Ability to Investigate NAR**

The Antitrust Division's public statements about the settlement show that it had agreed to close its investigation of the Participation Rule and Clear Cooperation Policy, and that it could not have open investigations concerning either rule.  As it stated publicly, the Antitrust Division tried to withdraw from the settlement agreement because:

- It was concerned the settlement "prevents our [the Antitrust Division's] ability to protect competition in a market that profoundly affects Americans' financial well-being."  ECF 1-2, NAR Ex. 1.

- "The proposed settlement sought to remedy those illegal practices [alleged in the Antitrust Division's Complaint] and encourage greater competition among realtors, but it also prevented the department from pursuing other antitrust claims relating to NAR's rules," specifically, the Participation Rule and Clear Cooperation Policy. *Id.*

- The settlement "d[id] not adequately protect the Division's ability to investigate in the future NAR rules that may harm competition."  ECF 1-16, NAR Ex. 15, at 1.

With these statements, the Antitrust Division publicly acknowledged that the settlement limits its ability to investigate NAR's Participation Rule and Clear Cooperation Policy.

The Antitrust Division's actions also confirm that it understood "close" means "close." Before trying to withdraw from the settlement, the Antitrust Division asked NAR to modify the settlement agreement to allow it to investigate the Participation Rule and Clear Cooperation Policy. ECF 1-15, NAR Ex. 14, at 1 ("Specifically, we sought consent from your client, the National Association of REALTORS® ('NAR'), to modify the Reservation of Rights provision in Section

10

XI to eliminate any potential limitation on the future ability of the Division to investigate and challenge conduct by NAR that is not covered by the proposed Final Judgment."). The fact that the Antitrust Division sought a modification of the settlement agreement is a concession that the settlement, unless modified, does in fact place limits on the Antitrust Division's ability to investigate NAR's Participation Rule and Clear Cooperation Policy.

The words and actions of the Antitrust Division therefore refute its claim that the settlement agreement imposes no limitation on further investigation of the Participation Rule and Clear Cooperation Policy.

### 2. The Antitrust Division's Puffery in Early Negotiations Does Not Change the Clear Meaning of the Settlement Agreement

Instead of addressing the evidence in the Petition about the agreement, the Antitrust Division focuses on the negotiating tactics it employed months before the parties reached agreement. Specifically, the Antitrust Division now points to statements it made in the summer of 2020, in the early stages of the parties' negotiations, to try to modify the clear terms of the settlement agreement. As is the case in every settlement negotiation, however, the Antitrust Division and NAR each asked for more than the other party was willing to give in early discussions (which started in December 2019), before they eventually compromised to reach agreement (in October 2020). The Antitrust Division cannot invoke its early puffery to change the clear terms of the parties' agreement where those early positions were not part of the settlement agreement.

At the beginning of the parties' settlement discussions, NAR and the Antitrust Division both anchored high. In a July 2020 settlement proposal, for example, NAR asked the Antitrust Division to agree to (1) "close its investigation regarding NAR's rules and policies;" (2) send a closing letter to NAR, confirming its two outstanding CIDs had been rescinded; (3) issue a public closing statement, indicating it concluded neither the Participation Rule nor the Clear Cooperation

11

Policy harmed competition; and (4) provide further assurances that the Antitrust Division would not investigate the Participation Rule ***under any circumstances***—even if it was changed, amended, or modified—for ten years.  ECF 20-1, Gov. Ex. 1, at 5.  A week later, the Antitrust Division rejected all four of those terms, posturing them as a "nonstarter, especially in light of longstanding Department policies concerning settlements that affect future potential investigations," and claiming "it is not clear to us whether further discussions would be fruitful."  ECF 20-2, Gov. Ex. 2, at 1-2.  The Antitrust Division nonetheless did continue negotiating with NAR, and in subsequent discussions, NAR agreed to additional concessions requested by the Antitrust Division.  The Antitrust Division in turn relented on its puffery, ultimately agreeing to close its investigation of the Participation Rule and Clear Cooperation Policy ***and*** issue a closing letter to NAR.  It had previously characterized those demands as a "nonstarter," including in its "best and final offer," which, as it turns out, was not actually the Antitrust Division's best and final offer.  ECF 20-2, Gov. Ex. 2, at 1; ECF 20-6, Gov. Ex. 6, at 2.

The Antitrust Division is wrong to suggest that NAR's decision to drop its request for broader relief around the Participation Rule "confirm[s] that NAR clearly understood that what the Division ultimately agreed to provide—closure of the existing investigation of the two policies and issuance of a closing letter—did not include assurances against future investigation or action."  ECF 20 at 14.  NAR's actions merely show it was willing to compromise.  NAR dropped its demand for a commitment that the Participation Rule would not be investigated if it was changed or modified in order to obtain other benefits, such as a commitment that the Antitrust Division's open investigation (including its inquiry concerning the Clear Cooperation Policy) would be closed.  NAR's actions after the settlement confirm that was always NAR's understanding of the settlement.  When the Antitrust Division approached NAR in 2021 to seek a modification of the

agreement, NAR expressly told the Antitrust Division that the settlement agreement did not cover future, material changes to the Participation Rule or Clear Cooperation Policy. ECF 1 ¶ 82. But that does not matter here, because neither the Participation Rule nor the Clear Cooperation Policy has been changed, modified, or amended since the Antitrust Division closed its investigation in late 2020. *See* Glass Declaration in Support of Response ¶ 15.

### 3.    The Antitrust Division Can (and Does) Agree to Limit Investigations by Future Administrations

To avoid the plain terms of the settlement agreement, the Antitrust Division also claims (now, as it did in early negotiations) that it lacks the authority to enter into a settlement agreement that would "curtail its authority to investigate potentially anticompetitive NAR policies in the future." ECF 20 at 5. But the Antitrust Division has not cited any legal authority for this alleged restriction on its settlement authority—or even a public policy statement issued by the Antitrust Division under *any* administration that endorses its current view. That is because, contrary to the Antitrust Division's repeated claims that such a "longstanding" policy exists, there is no such restriction on its settlement authority.

The Antitrust Division in fact regularly agrees to settlement agreements that limit future investigations, including through its Leniency Policy, plea agreements, and non-prosecution agreements. *See* Ex. K, Model Leniency Letter § 3 ("[T]he Antitrust Division agrees not to bring any criminal prosecution against Applicant for any act or offense [he/she] may have committed prior to the date of this letter in furtherance of the anticompetitive activity being reported." (footnote omitted));[9] Ex. L, Model Annotated Corporate Plea Agreement ¶¶ 15-18 ("[T]he United States agrees that it will not bring further criminal charges against the defendant . . . for any act or

---

[9]    *Available at* https://www.justice.gov/atr/page/file/1113031/download.

offense committed before the date of signature of this Plea Agreement . . . .");[10] Ex. M, Letter from Sharis A. Pozen, Acting Asst. Att'y Gen., U.S. Dep't of Justice Antitrust Div., to Karen Patton Seymour, Sullivan & Cromwell LLP, ¶¶ 3 (Dec. 8, 2011)[11] ("[T]he Antitrust Division of the United States Department of Justice ('the Division') agrees that it will not bring any action against the Company for any act or offense arising out of the conduct described in paragraph 5(a) or otherwise relating to the bidding on or provision of relevant municipal contracts on or before December 31, 2006.").

Beyond its own practices, the Antitrust Division's argument is inconsistent with broader Department of Justice policies. The Department of Justice has expressly acknowledged that settlements limiting investigations by future administrations are permissible and within the scope of the Department's authority. In a formal, published legal opinion, the Office of Legal Counsel has concluded: "[T]he Attorney General is free to enter into settlements that would limit the future exercise of executive branch discretion when that discretion has been conferred upon the executive branch pursuant to statute and there exists no independent statutory limitation on the authority of the executive branch to so limit the future exercise of that discretion." Ex. A, Moss Memo, 23 Op. OLC 126, 127-28. Indeed, as recently as 2020, the Department of Justice quoted the Moss Memo when it argued that "the Attorney General's congressionally authorized settlement power extends to 'a settlement that would bind a subsequent administration's exercise of that same statutorily conferred executive discretion.'" Mem. in Supp. of the Fed. Defs.' Mot. to Dismiss, at 18, *Irish 4 Reproductive Health v. U.S. Dep't of Health & Human Servs.*, No. 3:18-cv-491, Dkt. 109-1 (N.D. Ind. Sept. 21, 2020) (quoting Moss Memo, 23 Op. OLC at 142). And it is undisputed that, for

---

[10]   *Available at* https://www.justice.gov/atr/page/file/1124876/download.

[11]   *Available at* http://www.justice.gov/atr/public/press_releases/2011/278076a.pdf.

antitrust matters, the Attorney General's settlement authority is delegated to the Assistant Attorney General in charge of the Antitrust Division. *See* 28 C.F.R. § 0.40(a).

Thus, the Antitrust Division's claim that the prior administration lacked the authority to enter into a settlement constraining the investigatory powers of the current administration is wholly unsupported.

### 4. The Antitrust Division Did Not and Could Not Reserve Its Ability to Pursue Further Investigation in the Closing Letter

The Antitrust Division also tries to modify the plain terms of the agreement by claiming the Antitrust Division reserved the authority to investigate the Participation Rule and Clear Cooperation Policy in its closing letter. But if the Antitrust Division wanted to reserve some right to future investigation, it should have asked for that to be included in the agreement and the parties could have negotiated that term. It never did. Instead, it unconditionally accepted NAR's settlement proposal, which did not include such a limitation, and that means that there was no such reservation in the settlement agreement.

While the Antitrust Division did unilaterally state in the closing letter that "no inference should be drawn . . . from the Division's decision to close its investigation into these rules, policies or practices not addressed by the consent decree," ECF 1-13, NAR Ex. 12, that sentence did not, and cannot, change the plain meaning of the settlement agreement. It only cautions third parties that they should not draw an inference from the Antitrust Division's decision to close the investigation, which is non-controversial. As the Antitrust Division notes, private parties are free to pursue claims relating to conduct investigated by the Antitrust Division that was not challenged by the government. ECF 20 at 2-3.

Moreover, NAR did not negotiate the language of the closing letter and had not even seen the letter before it was transmitted, which means the second sentence of the letter cannot be

considered part of the agreement if it takes on the meaning proposed by the Antitrust Division.  A party cannot introduce a new, material term to a contract after an agreement is reached simply because it no longer likes part of the deal it struck.  *See Williams v. Wash. Metro. Area Transit Auth.*, 537 F. Supp. 2d 220, 222 (D.D.C. 2008) (holding that "misgivings about his acceptance of" a settlement "do not constitute grounds for relieving a party of his obligations to comply with the terms of [it]"); *Ulliman Schutte Constr., Inc. v. Emerson Process Mgmt. Power & Water Sols.*, 2007 WL 1794105, at *7 (D.D.C. June 19, 2007) ("A party cannot avoid the effects of a valid oral settlement agreement because of second thoughts or because one of the company's principals decides to go in a different direction than the other.").

### 5.    NAR Would Be Deprived of the Benefit of Its Bargain if "Close" Did Not Mean "Close"

Finally, the Antitrust Division incorrectly states that, because NAR received *some* benefits from the (now breached) settlement agreement, the Antitrust Division's breach of the agreement should be excused.  But the fact that NAR stands to gain some, but not all, of its benefits from the deal under the Antitrust Division's view is irrelevant.  A party is entitled to receive its full expectation interest under a contract, and a partial breach of contract—particularly on material term—is still a breach of contract.  *See* Restatement (Second) of Contracts § 236 cmt. b ("Although every breach gives rise to a claim for damages, not every claim for damages is one for damages based on all of the injured party's remaining rights to performance under the contract."); *id.* § 241 cmt. b ("Since the purpose of the rules stated in §§ 237 and 238 is to secure the parties' expectation of an exchange of performances, an important circumstance in determining whether a failure is material is the extent to which the injured party will be deprived of the benefit which he reasonably expected from the exchange.").

16

NAR's agreement to enter the consent decree requested by the Antitrust Division was unambiguously conditioned on the Antitrust Division's commitment to close its investigation.  In NAR's October 26 proposal—which was unconditionally accepted by the Antitrust Division—NAR wrote:

> ***NAR will only agree*** to sign a consent decree including this provision [the reservation of rights clause] if DOJ provides written confirmation, prior to the execution of the decree, that it will issue a closing letter to NAR upon execution of the decree that confirms: *[1] the Division has closed its investigation of the Participation Rule; [and] [2] the Division has closed its investigation of the Clear Cooperation Policy.*
>
> . . .
>
> [W]e would like DOJ to please confirm, in writing, that when NAR agrees to sign the consent decree, DOJ will send a closing letter to NAR that will confirm: *[1] the Division has closed its investigation of the Participation Rule; [and] [2] the Division has closed its investigation of the Clear Cooperation Policy . . . . NAR will not agree to the consent decree without prior written assurances* that these provisions will be included in the closing letter from DOJ.

ECF 1-7, NAR Ex. 6, at 1, 15 (emphasis added).

As these communications make clear, without a commitment that the Antitrust Division would close its investigation of the Participation Rule and Clear Cooperation Policy, there would have been no settlement agreement at all.  And NAR is now entitled to receive all of its bargained-benefits to protect its contractual expectations.

## III.    CID Request Nos. 1-9, 12, 14, 15, 17, and 18 Are Facially Overbroad

The Antitrust Division hardly addresses NAR's specific objections to Request Nos. 1-9, 12, 14, 15, 17, and 18.  It just concludes those requests are "appropriately tailored."  ECF 20 at 17.  That is not enough, and it is clear from the face of those requests that they impose unreasonable burdens on NAR.  Such overbroad requests are not permissible under the standards governing grand jury subpoenas, *In re Ingram*, 2012 WL 6840542, at *4 (E.D. La. Feb. 29, 2012), or civil discovery requests, *Equal Emp. Opportunity Comm'n*, 2020 WL 3489478, at *7, both of which

expressly apply to CIDs issued by the Antitrust Division, 15 U.S.C. § 1312(c)(1).  Given their overbreadth, and the burdens these requests would impose on NAR without modification, they should be quashed.

The Antitrust Division claims that it should get credit because it withdrew one of the many facially unenforceable demands in the CID.  ECF 20 at 19.  But the fact that the Antitrust Division withdrew one of its requests, in response to NAR's objection, does not mean the burden has shifted to NAR to rewrite the remainder of the requests.  Instead, by statute, the Antitrust Division has an obligation to modify its requests in accordance with the demands of the statute.  It has made no effort to do so.

## CONCLUSION

NAR respectfully requests that the Court set aside CID No. 30729, in its entirety.

Dated: November 12, 2021                 Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ Ethan C. Glass
Ethan C. Glass (D.C. Bar No. 1034207)
William A. Burck (D.C. Bar No. 979677)
Michael D. Bonanno (D.C. Bar No. 998208)
Peter J. Benson (D.C. Bar No. 1047289)
1300 I Street NW, Suite 900
Washington, District of Columbia 20005-3314
Tel: (202) 538-8000
Fax: (202) 538-8100
ethanglass@quinnemanuel.com
williamburck@quinnemanuel.com
mikebonanno@quinnemanuel.com
peterbenson@quinnemanuel.com

*Attorneys for Petitioner National
Association of REALTORS®*