UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF REALTORS,

*Petitioner*,

v.

UNITED STATES OF AMERICA, et al.,

*Respondents*.

Civil Action No. 21-2406 (TJK)

## MEMORANDUM OPINION

Before the Court is the National Association of Realtors' Petition to Set Aside, or in the Alternative Modify, Civil Investigative Demand No. 30729, which was issued by the Department of Justice's Antitrust Division. Because the civil investigative demand, or CID, violates a settlement agreement executed by the parties, the Court will set it aside.

**I.   Background**

    **A.   The Department of Justice Opens an Investigation into the National Association of Realtors**

In 2019, the Department of Justice's Antitrust Division opened an investigation into certain practices and policies of the National Association of Realtors ("NAR"). *See* ECF No. 1-21 at 2. Among the NAR policies under review were its "Participation Rule" and its "Clear Cooperation Policy." *See* ECF No. 1-7 at 2. As part of its investigation into potentially anticompetitive behavior, the Antitrust Division issued two CIDs seeking certain information from NAR. *See* ECF No. 1-21; ECF No. 1-22. Settlement talks ensued.

### B. The Parties Settle and the Department of Justice Closes its Investigation

In 2020, NAR and the Antitrust Division began negotiating a potential settlement. *See* ECF No. 1-5. At first, the Antitrust Division would not agree that any of NAR's policies, current or otherwise, would be free from further investigation for a decade. *See* ECF No. 20-1 at 6; ECF No. 20-2 at 2. NAR pushed back, seeking reprieve from investigation. *See* ECF No. 1-6 at 2. After exchanging several rounds of emails negotiating settlement terms, the Antitrust Division sent a draft consent judgment including a proposed reservation-of-rights clause, which in sum declared that nothing in the judgment would limit the government's ability to investigate NAR's policies in the future. ECF No. 1-5 at 18.

NAR responded by striking that clause. ECF No. 1-5 at 18. NAR later explained that it would not agree to a consent decree without written assurances—specifically, a letter—confirming that the Antitrust Division had "closed its investigation" into the Participation Rule and Clear Cooperation Policy and providing that NAR "had no obligation" to respond to the still-pending CIDs. ECF No. 1-7 at 2, 19. After a call about the letter that would "give[] [NAR] relief from the investigations," the Antitrust Division conceded, agreeing to confirm in writing that it would close its investigation into those policies. ECF No. 1-8 at 2, 4; *see also* ECF No. 20-6 at 3 ("[W]e will close our investigation into NAR's Participation Rule as a part of this settlement."). But the Antitrust Division would not confirm that certain changes to the policies satisfied its concerns or that it would refrain from challenging any future versions of the rules. *See* ECF No. 20-3 at 2–3; ECF No. 20-2 at 2.

In November 2020, the Antitrust Division filed a Complaint, Stipulation and Order, and Proposed Final Judgment with the Court. ECF Nos. 1-9–1-12. Neither the Complaint nor the Proposed Final Judgment addressed the Participation Rule or Clear Cooperation Policy. *See* ECF

2

No. 1-10; ECF No. 1-12. The Proposed Final Judgment included a reservation of rights provision that read, "Nothing in this Final Judgment shall limit the right of the United States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule or practice adopted or enforced by NAR or any of its Member Boards." ECF No. 1-12 at 16. But neither the stipulation nor the consent judgment featured a merger or integration clause preventing other agreements from restraining the government along these lines. *See* ECF No. 1-11; ECF No. 1-12.

The same day the Antitrust Division filed those papers, it sent a "closing letter" to NAR as agreed. *See* ECF No. 1-13. The letter confirmed "that the Antitrust Division ha[d] closed its investigation into [NAR's] Clear Cooperation Policy and Participation Rule" and that NAR "[a]ccordingly" had "no obligation to respond to" the corresponding CIDs. *Id*. The letter contained a "no inferences" provision, which read, "No inference should be drawn, . . . from the Division's decision to close its investigation into these rules, policies or practices not addressed by the consent decree." *Id*.

### C.     The Department of Justice Reopens its Investigation and Reissues its CIDs

After the parties reached their settlement, NAR began changing its policies to comply with the terms in the Stipulation and Proposed Final Judgment. ECF No. 1-1 at 3–4. The Participation Rule and Clear Cooperation Policy were not a part of the Stipulation and Proposed Final Judgment, though. Thus, those rules "have not been changed, modified, or amended since the Antitrust Division closed its investigation in 2020." ECF No. 21-1 at ¶ 15.

In January 2021, as the consent judgment required, NAR contacted the Antitrust Division to approve its policy changes. ECF No. 1-1 at ¶ 15. After the change in presidential administrations, the government did not respond to NAR until April. *See id.* at ¶ 18. When it did respond,

rather than approving or rejecting the rule changes, the Antitrust Division tried to renegotiate the reservation-of-rights clause in the consent agreement. *Id*. NAR was skeptical. And during later discussions, the Antitrust Division refused to clarify whether the change was intended to modify any aspect of the settlement or its agreement to close its investigation and withdraw the CIDs. *See id*. at ¶ 19.

NAR would not agree to any changes without clarification of their impact on the settlement agreement, creating an impasse. *See* ECF No. 1-1 at 6. In July 2021, the Antitrust Division reopened the investigations it had previously agreed to close and issued a CID against NAR that is similar to the two CIDs addressed in the prior settlement. *See* ECF No. 1-3; ECF No. 1-23. The agency also withdrew its consent to the Proposed Final Judgment and voluntarily withdrew its complaint. ECF No. 1-17; ECF No. 1-18. The Antitrust Division describes these actions as a "resum[ption of] its investigative efforts." ECF No. 20 at 14.

In response, NAR filed the instant petition under 15 U.S.C. § 1314(b)(1)(A) to set aside the new CID as a breach of the 2020 settlement agreement. In the alternative, NAR requests that the Court modify the CID, alleging excessive breadth and burdensomeness.

## II.    Legal Standards

Under the Antitrust Civil Process Act, the Antitrust Division may request, through a CID, the production of documentary material, answers to interrogatories, or the proffer of oral testimony relevant to a civil antitrust investigation. 15 U.S.C. § 1312(a). Any person served with a CID may petition for an order to modify its terms or to have it set aside "based on any failure of [the CID] demand to comply with the provisions of [the Antitrust Civil Process Act], or upon any constitutional or other legal right or privilege of such person." 15 U.S.C. § 1314(b)(2). The petitioner bears the burden of convincing the court that a CID should be set aside. *See United States v. Time*

*Warner, Inc.*, 94-cv-338 (HHG), 1997 WL 118413, at *6 (D.D.C. Jan. 22, 1997); *see also United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991).

CIDs must comply with the standards applicable to grand jury subpoenas and civil discovery. 15 U.S.C. § 1312(c)(1); *see also Time Warner*, 1997 WL 118413, at *3 ("[T]he standard for enforcement of regulatory subpoenas is the same as that applied to grand jury investigations." (citing *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 216 (1946)). To that end, CIDs—like grand jury subpoenas and civil discovery—may be subject to restrictions under a settlement agreement.

Courts generally preclude civil discovery barred by a validly executed settlement. *See, e.g.*, *Blake v. Architect of the Capitol*, No. 19-cv-3409 (TSC-RMM), 2021 WL 5990949, at *3 (D.D.C. Sep. 22, 2021) (considering whether prior settlement agreement barred certain discovery requests). Courts also preclude the government from compelling testimony via grand jury subpoena when doing so conflicts with a plea or settlement agreement. *See United States v. Singleton*, 47 F.3d 1177, at *4 (9th Cir. 1995) (Table); *In re Grand Jury Proc.*, 819 F.2d 984, 987 (11th Cir. 1987); *see also In re U.S. Senate Permanent Subcomm. on Investigations*, 655 F.2d 1232, 1239 (D.C. Cir. 1981) (holding that the government could enforce a legislative subpoena through civil contempt because "[t]he terms of the [witness's] plea bargain agreement plainly [did] not preclude [Congress] from seeking to secure the testimony of [the witness]").

These rules track the general principle that the government must be held to the terms of its contracts. Regardless of the identity of the official that signs a contract, "a settlement contract may not be unilaterally rescinded," and government agencies that enter into settlement agreements are bound by their terms. *Burton v. Adm'r, Gen. Servs. Admin.*, No. 89-cv-2338 (NHJ), 1992 WL 300970, at *3, *6 (D.D.C. July 10, 1992); *see also Village of Kaktovik v. Watt*, 689 F.2d 222, 234 (D.C. Cir. 1982) (Greene, J., concurring in part and dissenting in part) ("There is no question that

a settlement agreement is a contract which, like any other contract, may not be unilaterally rescinded. That principle applies to the government as to any other party, and it applies irrespective of whether or not the agreement has yet been approved by the court." (cleaned up)). Thus, a CID barred by the terms of a settlement agreement is invalid.

Additionally, even if validly issued, CIDs may be neither "unduly burdensome [n]or unreasonably broad." *Time Warner, Inc.*, 1997 WL 118413, at *6 (cleaned up).[1]

### III. Analysis

Because NAR has shown that a validly executed settlement agreement bars the CID at issue, it must be set aside under 15 U.S.C. § 1314(b)(2).

To start, the parties dispute the terms of their settlement agreement. Thus, before the Court can enforce that agreement, it must first determine its terms. This task is essentially one of contract interpretation. As the D.C. Circuit has explained, "An agreement to settle a legal dispute is a contract. Each party agrees to extinguish those legal rights it [had] sought to enforce through litigation in exchange for those rights secured by the contract." *Watt*, 689 F.2d at 230.

The Court must first identify the terms of the parties' agreement. If the parties "executed a completely integrated written agreement, it supersedes all other understandings and agreements with respect to the subject matter of the agreement between the parties, whether consistent or inconsistent." *Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 145 (D.D.C. 2014) (cleaned up). Put another way, when an agreement is completely integrated, that document alone controls. *See*

---

[1] The Court acknowledges that the parties disagree as to whether this is a "summary proceeding" and, in turn, over what standards apply. *See* ECF No. 20 at 6 n.1; ECF No. 21 at 8–13. In the Court's view, this dispute is beside the point. While NAR argues that the Antitrust Division overstates its burden to show the CID should be set aside, the government never disputes that the CID would be invalid if precluded by a settlement agreement. Instead, it argues that it made no such commitment "that would preclude the Division from investigating NAR's potentially anticompetitive practices or issuing new CIDs in connection with any such investigation." ECF No. 20 at 16.

6

*id*.  On the other hand, when parties execute a "partially integrated agreement, where the writing represents the agreement of the parties [only] with respect to the matters stated therein, . . . a court may consider extrinsic terms that are consistent with the partially integrated agreement."  *Id*.  (citations omitted).  To determine whether an agreement is completely integrated, a court "must examine [the parties'] intent by looking to the written contract, the conduct and language of the parties and the surrounding circumstances."  *U.S. ex rel. D.L.I. Inc. v. Allegheny Jefferson Millwork, LLD*, 540 F. Supp. 2d 165, 172 (D.D.C. 2008) (cleaned up).  "In particular, the presence of an integration clause weighs heavily in favor of a complete integration."  *Id.* at 173.

Here, the settlement agreement encompasses several written and oral commitments made by both sides in exchange for consideration.  In other words, it is not a fully integrated written agreement—and neither party contends otherwise.  To begin, the Stipulation and Proposed Final Judgment filed with the Court did not include a merger or integration clause.  And while that alone may not be enough to prove partial integration, the parties' discussions before and after that filing make clear that their agreement extended beyond those documents.  Indeed, the terms of the Stipulation and Proposed Final Judgment alone did not induce an agreement.

As recounted earlier, NAR refused to agree to the consent decree without written assurances that the Antitrust Division would send a letter confirming it "closed its investigation[s]" into the Participation Rule and Clear Cooperation Policy and that NAR "had no obligation" to respond to the still-pending CIDs.  ECF No. 1-7 at 2, 19.  Only when the agency yielded to those demands did the parties settle their dispute.  *See id*.  The parties' communications illustrate that the Stipulation and Proposed Final Judgment were not the only ways their agreement was memorialized.  The Antitrust Division's commitment to close its investigations into the Participation Rule and Clear Cooperation Policy and effectively rescind the CIDs—and to confirm those actions in writing—

was essential to the parties' reaching a settlement and is consistent with the partially integrated written agreement. So those commitments must be considered part of the overall agreement. In fact, the Antitrust Division's own communications show that the government itself understood the broader settlement to require closure of the investigation. *See, e.g.*, ECF No. 20-6 at 3 ("[W]e will close our investigation into NAR's Participation Rule as a part of this settlement.").

With that common-sense interpretation of the parties' settlement in hand, it is not hard to conclude that the new CID violates the agreement. Because the agreement included the Antitrust Division's commitment to close its investigation into NAR's current Participation Rule and Clear Cooperation Policy, the government breached the agreement by reopening the investigation into those same rules and serving the new CID. The word "close" means "to bring to an end." *Close*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/close. The word "open" means "to begin a course or activity." *Open*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/open. Opening an investigation is the opposite of closing one. So by reopening the same investigation it had agreed to close, the Antitrust Division breached the settlement agreement.[2] From there, it follows that the agreement bars enforcement of the new CID, issued to advance the same. *See* 15 U.S.C. § 1312(c).

The government's arguments otherwise do not sway the Court. The government begins by disputing the reach of its agreement to close its investigation. *See* ECF No. 20 at 16–17. The

---

[2] Resisting this outcome, the Antitrust Division at times characterizes its present investigation as a "new investigation." *See* ECF No. 20 at 14, 16. But as the Court sees it, the investigation is not "new," but a reopening—or "resumption"—of the investigation the agency had agreed to close. The Participation Rule and Clear Cooperation Policy have not "been changed, modified, or amended since the Antitrust Division closed its investigation in 2020." ECF No. 21-1 at ¶ 15. Furthermore, the newly issued CID is similar to the CIDs issued previously—the same CIDs to which the agency agreed NAR need not respond. ECF No. 1-23. Indeed, the agency itself has described its actions as "*resum[ing]* its investigative efforts." ECF No. 20 at 14.

government is correct that NAR asked for, and it agreed to provide, a letter confirming closure of its investigation. *See* ECF No. 1-8 at 2. But that does not mean, as the government suggests, that the agreement contemplated only a letter worth nothing but the paper on which it was written. NAR explicitly negotiated for a letter "giv[ing it] relief from the investigations." ECF No. 1-8 at 4. The letter would hardly provide such "relief" if the Antitrust Division was free to reopen the investigations into both the Participation Rule and Clear Cooperation Policy and reissue substantially similar CIDs right after closing the same. In response, the government emphasizes that it refused to stipulate that either rule would not be subject to another investigation in the next decade, and it declined to give them its seal of approval. *See* ECF No. 20 at 17. But these arguments change nothing about the agreement the government eventually struck, which required it to close its investigations into those policies. The agency's reservations, in context, are best understood as relating to any future versions of the policies in question.

Nor can the "no inferences" provision in the closing letter bear the weight the government assigns it. As noted above, that statement reads: "No inference should be drawn, from the Division's decision to close its investigation into these rules, policies or practices [that are] not addressed by the consent decree." ECF No. 1-13. The Antitrust Division suggests that this sentence reinforces its view that the closing letter did not preclude *any* future investigation—even one into the same, unchanged Participation Rule and Clear Cooperation Policy. *See* ECF No. 20 at 17. Not so.

Nothing about the "no inferences" clause changes the Court's view of the parties' bottom-line agreement. The Antitrust Division might have included such a statement in its letter for many reasons that are consistent with the Court's interpretation of the agreement. Most obviously, such a statement would inform *third parties* that the government had not found one way or the other

9

that the Participation Rule and Clear Cooperation Policy were lawful, and so similar policies should not be assumed to pass muster. But more fundamentally, under the law of contract the Antitrust Division was not free to unilaterally change the terms of the settlement agreement by adding an ambiguous sentence to a letter designed to simply confirm that it had upheld its side of the deal. *See Keepseagle v. Vilsack,* 99-cv-3119 (EGS), 2016 WL 9455764, at *6 n.5 (D.D.C. Apr. 20, 2016) ("'To be effective a modification requires assent of all parties to the agreement' because 'there is no such thing as a unilateral modification." (quoting Howard O. Hunter, Modern Law of Contracts § 5.20 (2016 ed.)).

Similarly, the Proposed Final Judgment signed by the parties fits with the Court's interpretation. The reservation-of-rights clause in the document states that nothing *in that final judgment*, which mentioned neither the Participation Rule nor the Clear Cooperation Policy, would restrain the Antitrust Division's future investigations. *See* ECF No. 1-12 at 16. As the Court has already explained, the settlement agreement was not contained exclusively within the four corners of the Proposed Final Judgment. So even though that document said nothing about future investigations, it does not then follow that no such limits were a part of the settlement agreement as a whole.

None of this is to say that the Antitrust Division has agreed to never investigate NAR or some future version or application of NAR's Participation Rule and Clear Cooperation Policy. The Court holds only that the government, in committing to close an investigation into these policies one year and then reopening it the next—when the only intervening change was that in presidential administrations—violated the parties' agreement. For that reason, the CID issued to further that investigation must be set aside.[3]

---

[3] Because the Court is setting aside the CID, it need not resolve NAR's objections to its breadth and burdensomeness.

**IV.     Conclusion**

At bottom, not setting aside the CID at issue would deprive NAR of the benefit for which it bargained: the closure of the Antitrust Division's investigation into its Participation Rule and Clear Cooperation Policy.  The government, like any party, must be held to the terms of its settlement agreements, whether or not a new administration likes those agreements.  For this reason, the CID at issue must be set aside.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 25, 2023

11